**Hearing Date: October 4, 2017 at 10:00 a.m.**
**Objection Deadline: September 27, 2017 at 4:00 p.m.**

**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Chester B. Salomon
csalomon@beckerglynn.com
Alec P. Ostrow
aostrow@beckerglynn.com

*Attorneys for 387 Park South L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ARTISANAL 2015, LLC,<br><br>            Debtor. | Chapter 11<br><br>Case No. 17-12319 (JLG) |

**MOTION OF 387 PARK SOUTH L.L.C. FOR DISMISSAL OF THE BANKRUPTCY CASE WITH A PROHIBITION ON RE-FILING AND FOR A DECLARATION THAT THE AUTOMATIC STAY DOES NOT PREVENT ACTS TO RECOVER POSSESSION OF THE PREMISES OCCUPIED BY THE DEBTOR; OR ALTERNATIVELY FOR (A) RELIEF FROM THE AUTOMATIC STAY, (B) THE APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR (C) CONVERSION OF THE CASE TO CHAPTER 7**

## Table of Contents

Table of Authorities ..................................................................................................... ii

Jurisdiction and Venue ................................................................................................ 1

The Debtor's Current Bankruptcy Filing .................................................................... 1

Summary of Relief Requested ..................................................................................... 3

Background and Facts Leading to the First Chapter 11 Filing .................................... 4

Dismissal of the First Chapter 11 Case ....................................................................... 8

Facts Leading to the Second Chapter 11 Filing ........................................................ 10

Relief Requested ........................................................................................................ 16

Basis for Relief Requested ........................................................................................ 17

    The Current Chapter 11 Filing Was in Bad Faith .............................................. 17

    Limiting the Debtor's Ability to Re-File Is Appropriate .................................... 19

    The Automatic Stay Is Inapplicable ................................................................... 20

        Section 362(b)(10) .......................................................................................... 20

        Section 362(n)(1)(B) ...................................................................................... 22

Basis for the Alternative Relief Requested ............................................................... 23

    Relief from the Automatic Stay .......................................................................... 23

    Waiver of the Rule 4001(a)(3) Stay of Enforcement ......................................... 25

    Appointment of a Chapter 11 Trustee ................................................................ 25

    Conversion of the Case to Chapter 7 .................................................................. 26

Notice ......................................................................................................................... 27

No Previous Request .................................................................................................. 27

Proposed Order .......................................................................................................... 27

Conclusion ................................................................................................................. 28

List of Exhibits .......................................................................................................... 29

List of Accompanying Declarations .......................................................................... 30

# Table of Authorities

## Cases

*Casse v. Key Bank Nat'l Ass'n (In re Casse)*,
    198 F.3d 327 (2d Cir. 1999)........................................................................ 19

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985)................................................................................... 25

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
    113 F.3d 1304 (2d Cir. 1997)............................................................... 17, 18

*First Nat'l Stores v. Yellowstone Shopping Ctr.*,
    21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968)......................... 5

*Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs,*,
    93 N.Y.2d 508, 715 N.E.2d 117, 693 N.Y.S.2d 91 (1999)........................... 5

*Hirsch v. Pa. Textile Corp. (In re Centennial Textiles, Inc.)*,
    227 B.R. 606 (Bankr. S.D.N.Y. 1998)........................................................ 26

*In re 234-6 W. 22nd St. Corp.*,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997)........................................................ 23

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001)................................................. 18, 23

*In re Bowman*,
    181 B.R. 836 (Bankr. D. Md. 1995) ........................................................... 26

*In re China Fishery Grp. Ltd. (Cayman)*,
    No. 16-11895 (JLG), 2016 WL 6875903 (Bankr. S.D.N.Y. Oct. 28, 2016) .............. 26

*In re Keene Corp.*,
    171 B.R. 180 (Bankr. S.D.N.Y. 1994)........................................................ 24

*In re Lakes Region Donuts, LLC*,
    No. BR 13-11823-BAH, 2014 WL 1281507 (Bankr. D.N.H. Mar. 27, 2014) ............. 21

*In re Lyondell Chem. Co.*,
    402 B.R. 596 (Bankr. S.D.N.Y. 2009)........................................................ 24

*In re Policy Realty Corp.*,
    242 B.R. 121 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000) ............. 21

*In re Project Orange Assocs.*
    432 B.R. 89 (Bankr. S.D.N.Y. 2010)............................................................ 5

*In re Tuscan Sun Ristorante, Inc.*,
    No. 8-10-73391–AST, 2010 WL 4929444  (Bankr. E.D.N.Y. Nov. 30, 2010).......... 22

*In re Valid Value Properties, LLC*,
    No. 16-13299 (MG), 2017 WL 123751 (Bankr. S.D.N.Y. Jan. 5, 2017) .................. 19

*In re Velo Holdings, Inc.*,
    475 B.R. 367 (Bankr. S.D.N.Y. 2012)........................................................ 21

*In re Wally Findlay Galleries (New York), Inc.*,
    36 B.R. 849 (Bankr. S.D.N.Y. 1984)........................................................... 17

*Mazzeo v. Lenhart (In re Mazzeo)*,
    167 F.3d 139 (2d Cir. 1999)........................................................................ 24

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994).......................................................................... 16

*Robinson v. Chicago Hous. Auth.*,
   54 F.3d 316 (7th Cir. 1995) .................................................................................... 21
*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
   907 F.2d 1280 (2d Cir. 1990) ........................................................................... 23, 24

**Statutes**
11 U.S.C. § 101(51C). ........................................................................................... 22
11 U.S.C. § 101(51D) ............................................................................................ 22
11 U.S.C. § 102(3) ................................................................................................. 26
11 U.S.C. § 105(a) ........................................................................................... passim
11 U.S.C. § 349(a) ........................................................................................... passim
11 U.S.C. § 362(b)(10) ...........................................................................................21
11 U.S.C. § 362(d) ..................................................................................... 1, 3, 16, 28
11 U.S.C. § 362(d)(1) ...................................................................................... 23, 25
11 U.S.C. § 362(j) .................................................................................................. 21
11 U.S.C. § 362(n)(1)(B) ........................................................................................22
11 U.S.C. § 541(b)(2) ............................................................................................ 20
11 U.S.C. § 1104(a) ................................................................................... 1, 3, 16, 28
11 U.S.C. § 1104(a)(1) ........................................................................................... 25
11 U.S.C. § 1107 ...................................................................................................... 1
11 U.S.C. § 1108 ...................................................................................................... 1
11 U.S.C. § 1112(b) ......................................................................................... passim
11 U.S.C. § 1112(b)(1) ........................................................................................... 26
11 U.S.C. § 1112(b)(4) ........................................................................................... 26
28 U.S.C. § 157(b) ................................................................................................... 1
28 U.S.C. § 1334(b) ................................................................................................. 1
28 U.S.C. § 1409 ...................................................................................................... 1

**Rules**
Fed. R. Bankr. P. 1007(a)(1) ................................................................................... 8
Fed. R. Bankr. P. 4001(a)(1) ................................................................................. 27
Fed. R. Bankr. P. 4001(a)(3) ................................................................................. 25
Local Bankruptcy Rule 1007-1 ............................................................................... 8
Local Bankruptcy Rule 1007-2 ............................................................................... 8
Local Bankruptcy Rule 9006-1(b) ........................................................................ 27

The motion of 387 Park South L.L.C. ("387 Park South" or the "Landlord"), for dismissal of the bankruptcy case, pursuant to 11 U.S.C. § 1112(b), with a prohibition on re-filing, pursuant to 11 U.S.C. §§ 105(a) and 349(a), and for a declaration that the automatic stay does not prevent acts to recover possession of the premises occupied by Artisanal 2015, LLC (the "Debtor"), pursuant to 11 U.S.C. § 362(b)(10) and (n)(1)(B); or alternatively, (a) for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d),  (b) the appointment of a chapter 11 trustee, pursuant to 11 U.S.C. § 1104(a), or (c) conversion of the case to chapter 7, pursuant to 11 U.S.C. § 1112(b) (the "Motion"), by its attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, respectfully sets forth and represents the following:

## Jurisdiction and Venue

1.      This Court has jurisdiction over the Motion, pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  Venue is proper in this Court, pursuant to 28 U.S.C. § 1409.  The Motion presents a core proceeding, pursuant to 28 U.S.C. § 157(b).  The Landlord consents to the entry of a final order determining the Motion.

## The Debtor's Current Bankruptcy Filing

2.      On August 21, 2017, the Debtor filed a voluntary petition with this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor remains in possession of its property as a debtor in possession with authority to operate its business, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      This case is the Debtor's second chapter 11 case in this Court within six months.  The Debtor's first chapter 11 case, case no. 17-10570 (MKV), was filed on

1

March 9, 2017, and dismissed on the Debtor's own motion by order dated March 24, 2017. The Landlord filed a limited opposition to the Debtor's dismissal motion for the purpose of limiting the Debtor's ability to re-file for chapter 11 relief. The Landlord sought to prevent the abuse discussed at length below caused by the Debtor's second chapter 11 filing. The court overruled the Landlord's limited opposition and imposed no restrictions on the Debtor's re-filing.

4.    The current chapter 11 filing was filed later in the same day that the Debtor had lost a second motion in a New York State Supreme Court for an injunction to prevent the termination of its lease. The Landlord had issued a five-day notice of termination on August 14, 2017, effective August 22, 2017, based on a lapse in the Debtor's insurance coverage. The notice of termination had been preceded by a notice to cure the lapse in insurance coverage, which was issued by the Landlord on May 9, 2017. On June 14, 2017, the Debtor commenced a second action in New York State Supreme Court to stay the cure period (a prior injunction action was already pending), and obtained a stay pending the determination of its motion for an injunction in this second action. Justice Shirley Werner Kornreich denied the injunction in an amended order entered August 10, 2017. Justice Kornreich's order cited the Debtor for "unclean hands . . . repeated bad acts and gamesmanship," as well as the "failure to obtain the required insurance."[1] After the Landlord had issued its notice of termination of the lease, the Debtor made a second attempt for an injunction on August 21, 2017. Justice Kornreich denied this second motion for an injunction that same day. Later that same day the

---

[1] The quoted statements are from Justice Kornreich's amended order entered August 10, 2017, which is quoted at greater length below. A copy of this amended order is annexed hereto as Exhibit V.

Debtor filed the instant chapter 11 case. In accordance with the notice of termination, the Debtor's lease ended the next day.

## <u>Summary of Relief Requested</u>

5.      The Landlord seeks dismissal of this bankruptcy case, pursuant to section 1112(b) of the Bankruptcy Code, as a bad faith filing, whose purpose is merely to frustrate the Landlord when the Debtor lacks any legitimate ability to reorganize, and an order, pursuant to sections 105(a) and 349(a) of the Bankruptcy Code, preventing this serial-filer Debtor from re-filing for bankruptcy for two years. In addition, the Landlord seeks a determination that the automatic stay does not prevent it from taking actions to recover possession of the premises that had been leased to the Debtor, pursuant to section 362(b)(10) of the Bankruptcy Code, which provides an exception to the automatic stay for leases that terminate in accordance with their own terms, including early terminations based on the exercise of a conditional limitation occasioned by a default; and pursuant to section 362(n)(1)(B) of the Bankruptcy Code, which provides that the automatic stay does not take effect if the debtor was a debtor in a small business case that was dismissed within the previous two years.

6.      As alternative relief, the Landlord seeks (a) relief from the automatic stay for cause, pursuant to section 362(d) of the Bankruptcy Code; (b) the appointment of a chapter 11 trustee for cause, including dishonesty, pursuant to section 1104(a) of the Bankruptcy Code; or (c) conversion of the case to chapter 7, pursuant to section 1112(b) of the Bankruptcy Code.

## Background and Facts Leading to the First Chapter 11 Filing

7.      The Landlord is the owner of the commercial building located at 387 Park

Avenue South, New York, New York.  Pursuant to a certain Retail Lease, dated October

5, 2015, between the Landlord and the Debtor, as amended by a certain First Amendment

of Lease, dated September 9, 2016 (collectively, the "Lease"), certain portions of the

ground floor and basement of 387 Park Avenue South (the "Premises") were leased to the

Debtor for the purpose of constructing and then operating a first class, upscale French

bistro and lounge under a trade name that includes the word "Artisanal."  Copies of the

Retail Lease (without exhibits) and the First Amendment are annexed hereto as Exhibits

A and B.  Section 1.16 of the Lease required the Debtor to open its restaurant within one

year of the "Commencement Date."  Pursuant to a Commencement Date Agreement,

dated November 25, 2015, the Landlord and the Debtor agreed that the Commencement

Date was December 1, 2015.  A copy of the Commencement Date Agreement is annexed

hereto as Exhibit C.  Consequently, the restaurant was required to be open by November

30, 2016.  Despite this requirement, the restaurant has not yet opened.  The Premises

remain unfinished and raw.

8.      Pursuant to section 1.6 of the Lease, the term of the Lease extends for 15

years from "the last day of the calendar month immediately preceding the calendar month

in which the Fixed Rent Commencement Date occurs."  Pursuant to the Commencement

Date Agreement, the Fixed Rent Commencement Date occurred on October 26, 2016.

The fixed monthly rent increases each year of the Lease.  The fixed monthly rent is

currently $108,333.33, plus the sum of $818.75 for additional demised space per the First

Amendment of Lease mentioned above.  The principals of the Debtor, Stephanie

Schulman and Sarid Drory, have executed and delivered to the Landlord a Good Guy Guaranty, pursuant to which they have personally guaranteed the obligations of the Debtor through the "Vacate Date" as defined in such Good Guy Guaranty.

9.      On December 22, 2016, the Landlord served upon the Debtor a Notice to Cure, dated December 21, 2016 (the "First Notice to Cure – Rent"). The First Notice to Cure – Rent required the Debtor to cure several defaults in the payment of fixed rent, additional rent, and other charges under the Lease in the amount of $145,359.17, by no later than January 9, 2017. The First Notice to Cure – Rent further provided that if the defaults were not cured by January 9, 2017, the Landlord would elect to terminate the Debtor's tenancy in the Premises in accordance with the terms and conditions of the Lease and applicable law. A copy of the First Notice to Cure – Rent is annexed hereto as Exhibit D.

10.     Rather than curing the defaults, on January 6, 2017, the Debtor commenced an action in the Supreme Court of the State of New York, County of New York entitled *Artisanal 2015, LLC v. 387 Park South L.L.C.*, Index No. 650103/2017 (the "First *Yellowstone* Action"),[2] to obtain what is commonly known as a *Yellowstone* injunction,[3] tolling the cure period under the First Notice to Cure – Rent and preventing the Landlord from terminating the Lease. The same day, Justice Shirley Werner

---

[2] As discussed below, the Debtor filed a second *Yellowstone* action after the dismissal of its first bankruptcy case.

[3] This kind of injunction, aimed at preventing the termination of a lease by tolling the cure period while the parties' dispute is determined by a state court, derives from the New York Court of Appeals decision in *First Nat'l Stores v. Yellowstone Shopping Ctr.*, 21 N.Y.2d 630, 635, 638, 237 N.E.2d 868, 869, 871, 290 N.Y.S.2d 721, 723, 725 (1968), in which the court declared it was powerless to revive a lease that had terminated because the tenant did not obtain a temporary restraining order. *See Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs,*, 93 N.Y.2d 508, 513, 715 N.E.2d 117, 119-20, 693 N.Y.S.2d 91, 94 (1999); *see also In re Project Orange Assocs.,* 432 B.R. 89, 99 n.3 (Bankr. S.D.N.Y. 2010).

Kornreich of the State Supreme Court signed an order to show cause with a temporary restraining order pending the hearing of the Debtor's motion for the *Yellowstone* injunction, and scheduled a hearing for February 8, 2017.  A copy of the order to show cause with the temporary restraining order is annexed hereto as Exhibit E.

11.    Following the hearing on February 8, 2017, Justice Kornreich issued an order that granted the *Yellowstone* injunction on the condition that the Debtor "pay into court the alleged rent owed" through January 1, 2017, and to pay to the landlord "January and February rent (u&o) [use and occupancy charges] pursuant to the lease and continue to pay this u&o throughout" the pendency of the action "without prejudice to either side." A copy of Justice Kornreich's order, signed on February 8, 2017 and entered on February 9, 2017, is annexed hereto as Exhibit F.

12.    Pursuant to a stipulation, so-ordered by Justice Kornreich on February 15, 2017, the Landlord agreed to accept "as a one-time accommodation" the payments directed by Justice Kornreich's prior order from an entity known as "Two Thousand Fifteen Artisanal LLC."   A copy of this so-ordered stipulation is annexed hereto as Exhibit G.  Despite the "one-time accommodation" in the so-ordered stipulation, the Debtor attempted in early March 2017 to pay to the Landlord its ongoing obligations with checks issued by Two Thousand Fifteen Artisanal LLC.  These checks were not initially accepted.  A copy of the emails exchanged between Sarid Drory on behalf of the Debtor and Clare Adams on behalf of TF Cornerstone, Inc., the Landlord's managing agent, on March 2, 2017, is annexed hereto as Exhibit H.[4]

---

[4] The Landlord notes that in his email explaining the checks from "two thousand fifteen LLC" Mr. Drory states that even though "Artisanal 2015 is the company that holds the list [sic]" the other entity, "two thousand fifteen LLC" was set up to act "as the operator."   Needless to say, this separate entity as the "operator" was authorized by neither the Landlord nor the Lease.  Nevertheless, the Landlord agreed to

13.     By order, dated February 21, 2017, Justice Kornreich granted the motion of the Debtor's counsel in the First *Yellowstone* Action, Greenberg Traurig, LLP, for permission to withdraw from the representation of the Debtor, stayed proceedings for a period of 30 days (except with regard to the payment of use and occupancy) to permit the Debtor to retain new counsel, and scheduled a preliminary conference for March 23, 2017.  A copy of February 21, 2017 order is annexed hereto as Exhibit I.

14.     Also, after the commencement of the First *Yellowstone* Action, on or about January 25, 2017, the Landlord served upon the Debtor a Notice to Cure a default based on the filing of a mechanic's lien against the Premises by Joseph Kleinman Architect in the amount of $104,835.25 (the "Second Notice to Cure – Mechanic's Lien").  The Second Notice to Cure – Mechanic's Lien further provided that if the mechanic's lien default was not cured by March 9, 2017, the Landlord would elect to terminate the Debtor's tenancy in the Premises in accordance with the terms and conditions of the Lease and applicable law.  A copy of the Second Notice to Cure – Mechanic's Lien is annexed hereto as Exhibit J.

15.     On or about February 1, 2017, the Landlord served upon the Debtor a Notice to Cure a default based on the filing of a mechanic's lien against the Premises by JSP Electrical Contracting Corp. in the amount of $16,900.00 (the "Third Notice to Cure – Mechanic's Lien").  The Third Notice to Cure – Mechanic's Lien further provided that if the mechanic's lien default was not cured by March 16, 2017, the Landlord would elect to terminate the Debtor's tenancy in the Premises in accordance with the terms and

make a second and final accommodation to the Debtor and ultimately accepted the checks from the other entity.

7

conditions of the Lease and applicable law.  A copy of the Third Notice to Cure –
Mechanic's Lien is annexed hereto as Exhibit K.

16.     On March 9, 2017, the last date to cure the first mechanic's lien default
that was the subject of the Second Notice to Cure – Mechanic's Lien, a representative of
the Debtor first appeared at the office of the Landlord's property manager and then at the
office of counsel for the Landlord in the state court action with a certified check payable
to the TF Cornerstone, Inc. in an attempt to cure the default, even though the Lease and
the Second Notice to Cure provided that the mechanic's lien had to be removed by
bonding or payment to the lienor by such date.  When the Landlord and the Landlord's
counsel declined to accept the non-conforming cure, state court counsel for the Landlord
received communications via telephone and email at the end of the day and after normal
business hours from an attorney representing to be lien counsel for the Debtor who
requested an extension of time to cure the first mechanic's lien.  After the counsel for the
Landlord, who had no authority to grant such extension, offered to convey the request to
the Landlord, the Debtor filed its first chapter 11 case at 9:58 p.m. on March 9, 2017.  A
copy of the Debtor's first chapter 11 petition is annexed hereto as Exhibit L.

**Dismissal of the First Chapter 11 Case**

17.     Notwithstanding the requirements of Rule 1007(a)(1) of the Federal Rules
of Bankruptcy Procedure and Local Bankruptcy Rule 1007-1, the Debtor's petition was
not accompanied by a list of the Debtor's creditors.  No such list was ever filed in the
first case.  Also notwithstanding the requirements of Local Bankruptcy Rule 1007-2, the
Debtor's chapter 11 petition was not accompanied by an affidavit setting forth, among

8

other things, the nature of the debtor's business and the reason for filing chapter 11, the names of the individuals who comprise the debtor's senior management and a summary of their relevant responsibilities and experience, and if the business is to continue, the estimated monthly payroll and cash receipts and disbursements.  No such affidavit was ever filed in the first case.  Indeed no effort was ever made to prosecute the first chapter 11 case by filing the appropriate documentation, such as a list of creditors, the list of the 20 largest creditors, the schedules and statement of financial affairs, or even an application to retain bankruptcy counsel.

18.    It should be clear that the first chapter 11 case was filed solely to obtain an automatic stay when the Debtor's eleventh hour attempt to obtain an extension of the time to cure the first mechanic's lien default was not immediately successful.[5]  The Debtor chose to file an incomplete chapter 11 petition rather than cure the default properly in accordance with the Lease and the Second Notice to Cure, or even request an extension of time to do so sufficiently prior the end of business on the last day of the Second Notice to Cure.

19.    Having obtained the desired effect of automatic stay, the Debtor then sought to dismiss its first chapter 11 case.  Its dismissal motion was filed on March 16, 2017.  In a limited opposition filed on March 21, 2017, the Landlord agreed that a case that never should have been filed in the first place should be dismissed.  To prevent this from happening again, the Landlord sought an order preventing the Debtor from re-filing for chapter 11 for two years and declaring that if a case is filed within two years, the

---

[5] Nonetheless, as a courtesy, the Landlord granted the Debtor's request to extend the Debtor's time to resolve the two mechanic's liens that are the subject of the Second and Third Notices – Mechanic's Lien to Cure until March 22, 2017.  These mechanic's liens have since been bonded by the Debtor.

automatic stay does not take effect in the new case.  The Landlord contended that the first

case was filed in bad faith and that limiting the Debtor's ability to re-file was appropriate

under the circumstances. The court overruled the Landlord's limited opposition, and the

dismissal order was entered on March 24, 2017, without any restrictions on re-filing.

## Facts Leading to the Second Chapter 11 Filing

20.     On or about May 9, 2017, the Landlord served upon the Debtor a Notice to

Cure a default based on the lapse of the Debtor's liability insurance coverage (the "Fourth

Notice to Cure – Insurance").  The Fourth Notice to Cure – Insurance further provided

that if the mechanic's lien default was not cured by June 5, 2017, the Landlord would

elect to terminate the Debtor's tenancy in the Premises in accordance with the terms and

conditions of the Lease and applicable law.  A copy of the Fourth Notice to Cure –

Insurance is annexed hereto as Exhibit M.

21.     On or about May 17, 2017, the Landlord served upon the Debtor a Notice

to Cure a default based on the filing of a mechanic's lien against the Premises by AC

Penguin Prestige Corp. in the amount of $104,520.00 (the "Fifth Notice to Cure –

Mechanic's Lien").  The Fifth Notice to Cure – Mechanic's Lien further provided that if

the mechanic's lien default was not cured by June 26, 2017, the Landlord would elect to

terminate the Debtor's tenancy in the Premises in accordance with the terms and

conditions of the Lease and applicable law.  A copy of the Fifth Notice to Cure –

Mechanic's Lien is annexed hereto as Exhibit N.[6]

---

[6] The Landlord believes that the vendor has withdrawn this lien based on the Debtor's promise to pay, but
the vendor remains unpaid, and may file the lien again.  The Landlord has taken no further action to
terminate the Lease based on the Fifth Notice to Cure – Mechanic's Lien.

10

22.     The Landlord extended the time to cure the insurance default under the

Fourth Notice to Cure – Insurance until June 14, 2017.  On that date, the Debtor did not

cure the insurance default, but instead commenced a second action in the Supreme Court

of the State of New York, County of New York entitled *Artisanal 2015, LLC v. 387 Park*

*South L.L.C.*, Index No. 653238/2017 (the "Second *Yellowstone* Action"), to obtain a

*Yellowstone* injunction, tolling the cure period under the Fourth Notice to Cure -

Insurance and preventing the Landlord from terminating the Lease.  The same day,

Justice Kornreich, to whom the Second *Yellowstone* Action had also been assigned,

signed an order to show cause with a temporary restraining order pending the hearing of

the Debtor's motion for the *Yellowstone* injunction, and scheduled a hearing for July 26,

2017.  A copy of the order to show cause with the temporary restraining order is annexed

hereto as Exhibit O.  The deadline for the Landlord to file opposition papers was later

extended to August 4, 2017, and the hearing was adjourned to August 9, 2017.

23.     On July 7, 2017, in the First *Yellowstone* Action, the Landlord moved for

an order vacating the first *Yellowstone* injunction, and granting a judgment of ejectment

against the Debtor.  On July 11, 2017, Justice Kornreich signed the Landlord's order to

show cause bringing such motion on for hearing on August 9, 2017.  A copy of the order

to show cause is annexed hereto as Exhibit P.

24.     On July 10, 2017, in the First *Yellowstone* Action, the Debtor's counsel

moved for leave to withdraw.  On July 11, 2017, Justice Kornreich signed an order to

show cause bringing such motion on for hearing on July 26, 2017, and staying all

proceedings for 30 days, except for the payment of use and occupancy.  A copy of the

order to show cause with a stay is annexed hereto as Exhibit Q.  This stay prevented the

11

Landlord's motion for an order vacating the first *Yellowstone* injunction and granting a judgment of ejectment (the subject of the Landlord's prior order to show cause signed the same day) from being heard on August 9, 2017.

25.     On August 4, 2017, in the Second *Yellowstone* Action, the Landlord filed its opposition papers.  In addition to pointing out the Debtor's defaults under the lease with regard to insurance, mechanic's liens, and delivering rent checks from other entities (as discussed above), as well as the Debtor's pattern of changing counsel, the Landlord brought to Justice Kornreich's attention a particular act of dishonesty by the Debtor, namely a forgery of letter from the Landlord.  The Debtor delivered a letter, purportedly on the Landlord's letterhead, dated July 17, 2017, addressed "To whom it may concern" confirming "on behalf of the Landlord that all Fixed Rent for the above referenced premises has been paid by Tenant to date and Tenant is current therewith."  The letter bears a signature purporting to be that of Michael Garcia, the property manager.  A copy of the July 17, 2017 letter, which was Exhibit ZZ to the Landlord's opposition papers, is annexed hereto as Exhibit R.  Michael Garcia submitted an affidavit in the Second *Yellowstone* Action, sworn to August 3, 2017, testifying that he neither prepared nor signed such letter, did not authorize the Debtor or anyone else to affix his signature to it, and that the letter is a forgery.  A copy of Mr. Garcia's affidavit is annexed hereto as Exhibit S.  Gadi Ben Hamo of Palisades Dealer Funding LLC also submitted an affidavit in the Second *Yellowstone* Action, sworn to July 24, 2017, testifying that he had received this forged letter from Sarid Drory, the Debtor's principal, on July 17, 2017, after requesting documentary evidence from the Landlord that the Debtor was current on its rent obligations.  A copy of Mr. Hamo's affidavit is annexed hereto as Exhibit T.

26.     On August 9, 2017, Justice Kornreich held a hearing on the motion in the First *Yellowstone* Action on the motion of the Debtor's counsel to withdraw and on the motion in the Second *Yellowstone* Action on the motion of the Debtor for a *Yellowstone* injunction to toll the time to cure the insurance default to prevent the termination of the Lease based on this default.  A copy of the Transcript of the August 9, 2017 hearing (the "Transcript of the August 9 Hearing") is annexed hereto as Exhibit U.

27.     During the August 9, 2017 hearing, Justice Kornreich made the following observations regarding the Debtor's conduct:

> THE COURT:  I think this is a case, a rare case where an unclean hands may well be an issue, and I'd like you to address the fact that, number one, to begin with, which is not even in the brief, but which just strikes the Court that what Rozenholc's [the Debtor's prior counsel] substitution in this case, which I thought was and -- then getting another attorney and surprising us all with another attorney, when Rozenholc himself said he couldn't represent this client, there was a stay of the other case based upon that, which is really the same as this case and affected the landlord's motion to vacate the Yellowstone and for ejectment, and to me seems like gamesmanship when Rozenholc then comes in, after getting a stay in that Yellowstone motion, comes in and substitutes on this one, number one.
>
> Number two, there have been four additional cure notices since the original cure notice, and based upon violations of the lease, repeatedly, the tenant here has, either not timely paid its rents, or paid through another entity time and time again when both the Court and the landlord has said that should not be done.
>
> The landlord has had three mechanic's liens filed against the building because of this tenant. The tenant has filed a frivolous bankruptcy case only because – and stated when he moved to dismiss the bankruptcy, he did it only to extend his time to discharge the mechanic's lien and to stop the landlord from doing anything in terms of ejectment or anything else.

13

> There have been two stop orders from the DOB
> [Department of Buildings] in regard to the work in this
> building. I'm not even going to touch the fact that you are
> the fourth attorney.  There have been – there is more.
>
> There are allegations that the principal of the tenant,
> Mr. Drory, D-R-O-R-Y, has been verbally abusive and
> harassed the landlord's employees. I don't know the truth of
> that, but that is an allegation here.
>
> There is more. The most recent, which is probably
> among the more egregious issues, is the tenant has
> submitted a forged letter from the lender to the landlord.
> The landlord has submitted affidavits to show that the letter
> was, indeed, forged, saying that the tenant here is up on its
> rent, is not in default, et cetera, et cetera, and the letter and
> the affidavits are part of the record.[7]

Transcript of August 9 Hearing (Exhibit U) at 18-20.

28.     Following the hearing, Justice Kornreich granted the attorney withdrawal

motion because substitute counsel had appeared for the Debtor in both *Yellowstone*

Actions.  Significantly, the motion for a *Yellowstone* injunction in the Second

*Yellowstone* Action was denied.  An amended order denying this motion (the "Amended

Order Denying Motion for Injunction") was entered on August 10, 2017.[8]  The Amended

Order Denying Motion for Injunction states in relevant part:

> **ORDERED** that this motion is denied both due to the
> unclean hands of the tenant whose repeated bad acts and
> gamesmanship militate in favor of denying equitable relief.
> Moreover, the plaintiff-tenant's failure to obtain the
> required insurance, even until today, also requires denial of
> the Yellowstone application.  All stays are lifted.

---

[7] The letter and the affidavits that Justice Kornreich referred to in the quoted portion of the transcript are annexed hereto as Exhibits R, S and T.

[8] The order bears the date August 8, 2017, but this appears to be an error, since the hearing was held the following day, and an original order was dated August 9, 2017.  The original order, which is handwritten, reads the same as the amended order, which is typewritten, except that it states at the outset that the motion is "granted" instead of "denied."  Based on Justice Kornreich's ruling, the amended order made the appropriate correction.

14

A copy of the Amended Order Denying Motion for Injunction is annexed hereto as Exhibit V.

29.     On August 10, 2017, in the both *Yellowstone* Actions, Justice Kornreich signed a Compliance Conference Order with a schedule for the Landlord's motion for summary judgment in the Second *Yellowstone* Action.  The motion was required to be made by August 23, 2017.  A status conference in both *Yellowstone* Actions was scheduled for September 13, 2017.  A copy of the Compliance Conference Order is annexed hereto as Exhibit W.  After being notified of the Debtor's bankruptcy filing, all proceedings in both *Yellowstone* Actions have been suspended.

30.     On or about August 14, 2017, following the denial of the *Yellowstone* injunction and the lifting of all stays relating to the Fourth Notice to Cure – Insurance, the Landlord issued a Five (5) Day Notice of Termination, terminating the Lease effective August 22, 2017.  A copy of the Five (5) Day Notice of Termination is annexed hereto as Exhibit X.

31.     On August 21, 2017, in the Second *Yellowstone* Action, the Debtor filed a motion with a proposed order to show cause seeking, among other things, to renew and/or reargue the denial of its prior motion for a *Yellowstone* injunction and to toll the Landlord's termination of the Lease.  A copy of the Debtor's proposed order to show cause is annexed hereto as Exhibit Y.

32.     On August 21, 2017, after hearing the Debtor and the Landlord, Justice Kornreich signed an order (the "Order Denying Renewal and Reargument"), stating in

relevant part, "it is ordered that this application for renewal and reargument is denied." A copy of the Order Denying Renewal and Reargument is annexed hereto as Exhibit Z.[9]

33.    Later the same day, at 6:54 p.m., the Debtor filed its second chapter 11 petition, commencing this case. A copy of the Debtor's second chapter 11 petition is annexed hereto as Exhibit AA.

## Relief Requested

34.    The Landlord seeks dismissal of this bankruptcy case, pursuant to section 1112(b) of the Bankruptcy Code, as a bad faith filing, and an order, pursuant to sections 105(a) and 349(a) of the Bankruptcy Code, preventing this serial-filer Debtor from re-filing for bankruptcy for two years. In addition, the Landlord seeks a determination that the automatic stay does not prevent it from taking actions to recover possession of the premises that had been leased to the Debtor, pursuant to section 362(b)(10) and (n)(1)(B) of the Bankruptcy Code.

35.    As alternative relief, the Landlord seeks (a) relief from the automatic stay, pursuant to section 362(d) of the Bankruptcy Code; (b) the appointment of a chapter 11 trustee, pursuant to section 1104(a) of the Bankruptcy Code; or (c) conversion of the case to chapter 7, pursuant to section 1112(b) of the Bankruptcy Code.

---

[9] That the order was entered on August 23, 2017 does not affect its validity. The order was signed on August 21, 2017, at the conclusion of hearing the parties at the State Supreme Court. The second chapter 11 petition was filed at 6:54 p.m., following the signing of the Order Denying Renewal and Reargument. The post-petition entry of a pre-petition judicial decision is a ministerial act that is not precluded by the automatic stay. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 528 (2d Cir. 1994).

## Basis for Relief Requested

### The Current Chapter 11 Filing Was in Bad Faith

36.    Section 1112(b) of the Bankruptcy Code authorizes the Court to dismiss a chapter 11 case for "cause." 11 U.S.C. § 1112(b).  A petition filed in bad faith constitutes such cause.  *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310-11 (2d Cir. 1997).   Here, the Debtor exhibits both objective and subjective bad faith.  In light of the termination of the Lease, as sanctioned by the state court, the Debtor "has no reasonable probablity of emerging from the bankruptcy proceedings and no realistic chance of reorganizing." *Id.* at 1310.   Moreover, it is clear that the Debtor "filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating." *Id.* (quoting *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984)).  The filing of the Debtor's current chapter 11 petition under circumstances described above constitutes an abusive filing.

37.    The Second Circuit has cited the following factors as indicative of a bad faith filing:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action'
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

17

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including
payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*Id.* at 1311.  Moreover, in considering whether to dismiss a bankruptcy case for bad faith,

courts engage in "special scrutiny" when the case is a repeat filing.  *In re AMC Realty*

*Corp.*, 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001).  This case, of course, is a repeat filing.

38.    Although the *C-TC* case presented a fact pattern with secured creditors

and a mortgage foreclosure action, by substituting the Landlord for the secured creditors

and the two *Yellowstone* Actions and the mechanic's lien and insurance coverage defaults

under the Lease for the mortgage foreclosure action, this case presents a fairly typical bad

faith filing scenario.  Indeed, the Debtor's sole tangible asset is the Lease.[10]  Moreover,

the Debtor has not listed any creditors, its sole tangible asset is the subject of two state

court actions, the case is in essence a two-party dispute, the case was filed to frustrate the

legitimate efforts of the Landlord to enforce its rights to terminate the Lease, the Debtor

has no cash flow (since the restaurant has not opened), the Debtor cannot meet current

expenses (as evidenced by the filing of mechanic's liens), and the Debtor has no known

employees.

39.    Significantly, the Debtor's dishonesty, as exemplified by its forging a

letter from the Landlord and delivering it to a supplier, clearly demonstrates subjective

---

[10] The Debtor also has the intangible asset of its trade name, "Artisanal."  The Landlord notes that a prior
restaurant with the same trade name at a different location was the subject of yet another chapter 11 case, *In
re Artisanal Fromagerie & Bistro LLC*, Case No. 16-12337 (JLG).  That case was dismissed by order dated
April 13, 2017, on the debtor's motion after having surrendered its premises at 2 Park Avenue to the
landlord in that case.  The other *Artisanal* debtor had the same bankruptcy counsel as the current Debtor,
and also ran a restaurant with the name "Artisanal."  The principals of the Debtor were also involved in the
other case.

bad faith.  Indeed, Justice Kornreich has held that the Debtor has "unclean hands" and

has committed "repeated bad acts."  Its chapter 11 case must be dismissed.

**Limiting the Debtor's Ability to Re-File Is Appropriate**

40.     It is respectfully submitted that, under the circumstances, dismissal of the

Debtor's chapter 11 case, by itself, is an insufficient remedy.  Section 349(a) of the

Bankruptcy Code provides that, "[u]nless the court, for cause, orders otherwise, the

dismissal of a case . . . [does not] prejudice the debtor with regard to a subsequent

petition . . . ."  11 U.S.C. § 349(a).  It is respectfully submitted that in this case, this Court

can and should order otherwise for several reasons.

41.     First, section 105(a) of the Bankruptcy Code not only gives this Court the

power to "issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions" of the Bankruptcy Code; it also gives this Court the ability to take

action "to prevent an abuse of process."  11 U.S.C. § 105(a).  The Second Circuit has

held that the combination of sections 105(a) and 349(a) give this Court the ability to

enjoin future filings in appropriate cases.  *Casse v. Key Bank Nat'l Ass'n (In re Casse)*,

198 F.3d 327, 341-42 (2d Cir. 1999).

42.     In the case of *In re Valid Value Properties, LLC*, No. 16-13299 (MG),

2017 WL 123751, at *7-9 (Bankr. S.D.N.Y. Jan. 5, 2017) (unpublished), Bankruptcy

Judge Martin Glenn held that a bad faith filing also merited a two-year prohibition on re-

filing.  In that case, the debtor also failed to file schedules and a statement of financial

affairs or a retention application for its counsel.  *Id.* at *8.  The facts also demonstrated

that the filing was part of a scheme to hinder, delay or defraud the enforcement of

property rights by a non-debtor.  *Id.* at *9.  In this case, there was certainly at least an

intent to hinder or delay the Landlord by the filing. Moreover, as demonstrated above, the Debtor has exhibited dishonesty, and Justice Kornreich has held that the Debtor has "unclean hands" and has committed "repeated bad acts."

43.     As a result, the Landlord respectfully submits that upon dismissing the case, this Court should limit re-filing of a chapter 11 case by the Debtor for a period of two years, and further provide that in the event the Debtor does file a chapter 11 case in the next two years, or in the event an involuntary petition is filed against the Debtor by an insider of the Debtor during such two-year period, the automatic stay will not take effect in such subsequent case.

**The Automatic Stay Is Inapplicable**

**Section 362(b)(10)**

44.     Section 362(b) of the Bankruptcy Code provides exceptions to the automatic stay, and in particular, states that it does not operate as a stay –

> (10) under subsection (a) of the this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property.

11 U.S.C. § 362(b)(10). Similarly, the Bankruptcy Code excludes from property of the estate a lease of nonresidential real property that has terminated at the expiration of its stated term. *Id.* § 541(b)(2).

45.     Significantly, these Code provisions, which remove a lease from property of the estate and the protection of the automatic stay, apply to an early termination of a lease under applicable state law, based on the exercise of a conditional limitation, even if that conditional limitation is based on a default on the part of the tenant. *In re Policy*

*Realty Corp.*, 242 B.R. 121, 127-28 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000)
(table); *see Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 320 (7th Cir. 1995); *In re
Lakes Region Donuts, LLC*, No. BR 13-11823-BAH, 2014 WL 1281507, at *4 (Bankr.
D.N.H. Mar. 27, 2014); *see also In re Velo Holdings Inc.*, 475 B.R. 367, 382 (Bankr.
S.D.N.Y. 2012) (recognizing that properly invoked conditional limitation provisions may
effectively terminate any executory contract prior to bankruptcy).

46.     Here, the Debtor defaulted in permitting its liability insurance coverage to
lapse.  The Landlord properly exercised its rights under the Lease upon such default and
the failure to cure after receiving appropriate notice, to terminate the Lease.  The Five (5)
Day Notice of Termination was served prior to the bankruptcy filing to be effective on
August 22, 2017.  The state court denied a stay.  The automatic stay does not operate to
extend the life of the Lease beyond the stated date in the Five (5) Day Notice of
Termination.  Consequently, section 362(b)(10) renders the automatic stay inapplicable to
the Landlord's efforts to recover possession of the Premises.

47.     Although no express provision of the Bankruptcy Code authorizes this
Court to issue an order declaring that the automatic stay does not bar certain actions,
based on the exceptions provided in section 362(b).[11]  11 U.S.C. § 105(a), gives this
Court the authority to "issue any order, process, or judgment that is necessary or
appropriate to carry out the provisions" of the Bankruptcy Code.  An order declaring that
the automatic stay does not apply, based on other provisions of the Bankruptcy Code, is
an appropriate exercise of the section 105(a) authority.

---

[11] 11 U.S.C. § 362(j) provides express authority for the court to issue an order that the automatic stay has
been terminated as provided in § 362(c).

48.     As a result, the Landlord is entitled to an order declaring that the automatic stay does not apply to prevent it from taking actions to recover possession of the Premises that had been leased to the Debtor.

**Section 362(n)(1)(B)**

49.     Second, it is apparent from the Debtor's petition in the first case (Exhibit L), which checked the box estimating its liabilities between $0 and $50,000 (and the lack of any other filing by the Debtor to contradict the petition) that that Debtor was a "small business debtor" as defined in section 101(51D) of the Bankruptcy Code, 11 U.S.C. § 101(51D).[12]  Because the Debtor was a "small business debtor," its case was a "small business case."  *Id.* § 101(51C).  Section 362(n)(1)(B) of the Bankruptcy Code provides that the automatic stay does not apply when the debtor "was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief" with respect to the second petition.  11 U.S.C. § 362(n)(1)(B).[13]

50.     Consequently, because the Debtor has re-filed within two years after the dismissal of a case in which it was in a small business case, the automatic stay does not apply.   The Landlord is entitled to an order declaring that the automatic stay does not

---

[12] A "small business debtor" is engaged in commercial or business activities, except where the primary activity is owning and operating real property and activities incidental thereto, has aggregate debts of less than $2.5 million, and the United States Trustee has not appointed a creditors' committee.  A restaurant qualifies as the kind of business that may be a "small business debtor."  *See In re Tuscan Sun Ristorante, Inc.*, No. 8-10-73391–AST, 2010 WL 4929444, at *1 (Bankr. E.D.N.Y. Nov. 30, 2010).

[13] The Landlord notes that in the Debtor's second chapter 11 petition (Exhibit AA), it checked a different box for the estimate of its liabilities, the box for $10,000,001 - $50 million.  Checking this box for its second case should have no effect on its status as a "small business debtor" in its first case, which is the applicable test in the statute.  Moreover, it is patently absurd that the Debtor in the less than six months between the two filings could have increased its liabilities by $10 million, especially since it has not opened its restaurant.  The only liabilities that the Landlord is aware of are the liabilities to it and to the filers of the mechanic's liens.  These fall well short of the $2.5 million threshold.  Having already demonstrated its dishonesty with the forged letter, the Debtor cannot rely on a self-serving assertion as to the size of its liabilities.

apply to prevent it from taking actions to recover possession of the Premises that had

been leased to the Debtor.

## **Basis for the Alternative Relief Requested**

### **Relief from the Automatic Stay**

51.    As alternative relief, the Landlord respectfully submits that it should be

granted relief from the automatic stay to continue the two *Yellowstone* Actions.  First,

courts have recognized that the same conduct that constitutes bad faith for purpose of

dismissing a chapter 11 case also constitute cause for relief from the automatic stay under

section 362(d)(1) of the Bankruptcy Code.  *AMC Realty Corp.*, 270 B.R. at 140-41; *In re*

*234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).   If the Court

decides not to dismiss the case, the conduct of the Debtor recited above serves as the

basis for relief from the automatic stay.

52.    Second, a proper weighing of the twelve factors set forth in the seminal

case of *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,

907 F.2d 1280 (2d Cir. 1990), which concerns litigation in a non-bankruptcy forum,

establishes its entitlement to stay relief for cause, under section 362(d)(1) of the

Bankruptcy Code.

53.    The *Sonnax* factors are:

> (1) whether relief would result in a partial or complete
> resolution of the issues; (2) lack of any connection with or
> interference with the bankruptcy case;  (3) whether the
> other proceeding involves the debtor as a fiduciary; (4)
> whether a specialized tribunal with the necessary expertise
> has been established to hear the cause of action; (5)
> whether the debtor's insurer has assumed full responsibility
> for defending it; (6) whether the action primarily involves

23

third parties; (7) whether litigation in another forum would
prejudice the interests of other creditors; (8) whether the
judgment claim arising from the other action is subject to
equitable subordination; (9) whether movant's success in
the other proceeding would result in a judicial lien
avoidable by the debtor; (10) the interests of judicial
economy and the expeditious and economical resolution of
the litigation; (11) whether the parties are ready for trial in
the other proceedings; and (12) impact of the stay on the
parties and the balance of harms.

907 F.2d at 1286.

54.    Not all the factors are relevant in every case, *Mazzeo v. Lenhart (In re
Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and a court need not assign equal weight to
each factor.  *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).  The most
important factors have been described as the interests of judicial economy and the
expedition and economical resolution of the litigation (factor 10), and the impact of the
stay on the parties and the balance of harms (factor 12).  *In re Lyondell Chem. Co.*, 402
B.R. 596, 609-10 (Bankr. S.D.N.Y. 2009).

55.    It is respectfully submitted that the following *Sonnax* factors also
manifestly support stay relief:  (Factor 1) Allowing the two *Yellowstone* Actions to reach
their natural conclusions would completely resolve the issue of possession of the
Premises; (factor 3) the two *Yellowstone* Actions do not involve the Debtor in a fiduciary
capacity (such as trustee of a trust); (factor 7) the Landlord's recovery of possession of
the Premises in the two *Yellowstone* Actions would not prejudice any other entity's
pecuniary interests; (factor 8) a judgment granting ejectment of the Debtor in the two
*Yellowstone* Actions would not be subject to equitable subordination, since it is not a
money judgment; (factor 9)  the Landlord's success in the two *Yellowstone* Actions
would not result in a judicial lien on any property of the estate; (factor 10) judicial

24

economy is served by not relitigating the issues already determined and awaiting

determination in the two *Yellowstone* Actions; (factor 11) the determination of the

Landlord's motion for ejectment is ripe – no trial is necessary; and (factor 12) failing to

allow the Landlord to recover possession of the Premises of a terminated Lease in the two

*Yellowstone* Actions would substantially prejudice and harm the Landlord.

56.    Therefore, either as a result of the Debtor's bad faith or by giving proper

weight to the relevant *Sonnax* factors the Landlord is clearly entitled to stay relief for

cause, under section 362(d)(1) of the Bankruptcy Code.

**Waiver of the Rule 4001(a)(3) Stay of Enforcement**

57.    The Landlord also seeks relief from the 14-day stay of enforcement of an

order granting relief from the automatic stay, as provided in Rule 4001(a)(3) of the

Federal Rules of Bankruptcy Procedure.  This Rule also empowers this Court to order

that such stay shall not be applicable.  The Landlord respectfully submits that, based on

the foregoing, especially the fact that the Debtor is a repeat filer and has been found to

have "unclean hands" and have engaged in "repeated bad acts," if the Court grants the

relief requested, the Landlord should be allowed to effectuate such relief immediately,

without having to wait an additional 14 days.

**Appointment of a Chapter 11 Trustee**

58.    Section 1104(a)(1) of the Bankruptcy Code authorizes the Court to direct

the appointment of a chapter 11 trustee, "for cause, including . . . dishonesty."  11 U.S.C.

§ 1104(a)(1).  Since a management of a debtor in possession owes the same fiduciary

duties as a trustee, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355

(1985); and these fiduciary duties include duties of care, loyalty and impartiality, *In re*

*Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995); courts recognize that the "willingness to leave the debtor in possession of its assets rests upon the assurance that is managers will carry out [their] fiduciary responsibilities." *Hirsch v. Pa. Textile Corp. (In re Centennial Textiles, Inc.)*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998); *see In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2016 WL 6875903, at *14 (Bankr. S.D.N.Y. Oct. 28, 2016).  In the present case, the management of the Debtor falls far short of this standard.

59.     Significantly, the Debtor's dishonesty has already been demonstrated. The Debtor forged a letter purportedly from the Landlord and delivered it to a supplier. Moreover, Justice Kornreich has held that the Debtor has "unclean hands" and has committed "repeated bad acts."  Moreover, it is a repeat filer and exhibits many of the indicia of bad faith.  This Debtor cannot be trusted to carry out its fiduciary responsibilities of care, loyalty and impartiality.  If the Court does not dismiss the case, it should order the appointment of a chapter 11 trustee.

## Conversion of the Case to Chapter 7

60.     Section 1112(b)(1) of the Bankruptcy Code provides that the Court shall convert or dismiss a case for "cause."  11 U.S.C. § 1112(b)(1).  Although section 1112(b)(4) of the Bankruptcy Code, *id.* § 1112(b)(4), provides a list of items that constitute "cause," that list is not exhaustive, because the list is preceded by the word "includes," and section 102(3) of the Bankruptcy Code states that "includes" is not limiting.  *Id.* § 102(3).

61.     It is respectfully submitted that same grounds for the appointment of a chapter 11 trustee, dishonesty, also constitutes "cause" for the conversion to chapter 7,

when no rehabilitation of the Debtor is possible.  As set forth above, in light of the

termination of the Debtor's Lease, which the state court has refused to stay, no

rehabilitation is possible.  Consequently, if the case is not dismissed, it should be

converted to chapter 7.


**Notice**

62.    The Landlord will give notice of the Motion in accordance with Rule

4001(a)(1) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy 9006-

1(b), including the service of this Motion at least 14 days prior to the scheduled hearing

date, on (i) counsel for the above-captioned Debtor; (ii) the Office of the United States

Trustee; (iii) all persons having filed notices of appearance or requests for notice; and (iv)

the creditors appearing on the list of the 20 largest creditors filed by the Debtor, if the

Debtor has filed such list on or before the filing of this Motion.


**No Previous Request**

63.    No previous request for the relief sought herein has been made to this or

any other Court.


**Proposed Order**

64.    A proposed order granting the principal relief requested is attached hereto

as Exhibit BB.

## Conclusion

WHEREFORE, for the foregoing reasons, the Landlord respectfully requests that the Court grant its Motion for dismissal of the bankruptcy case, pursuant to 11 U.S.C. § 1112(b), with a prohibition on re-filing, pursuant to 11 U.S.C. §§ 105(a) and 349(a), and for a declaration that the automatic stay does not prevent acts to recover possession of the premises occupied by the Debtor, pursuant to 11 U.S.C. § 362(b)(10) and (n)(1)(B); or alternatively, (a) for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), (b) the appointment of a chapter 11 trustee, pursuant to 11 U.S.C. § 1104(a), or (c) conversion of the case to chapter 7, pursuant to 11 U.S.C. § 1112(b); and that this Court grant the Landlord such other and further relief as is just.

Dated: New York, New York
      August 31, 2017

                       BECKER, GLYNN, MUFFLY, CHASSIN &
                       HOSINSKI LLP

                       By:   */s/ Alec P. Ostrow*
                           Alec P. Ostrow
                           aostrow@beckerglynn.com
                           299 Park Avenue, 16th Floor
                           New York, NY 10171
                           Telephone: (212) 888-3033
                           Facsimile: (212) 888-0255

                           *Attorneys for 387 Park South L.L.C.*

28

**List of Exhibits**

| | |
|---|---|
| Exhibit A | Retail Lease (without exhibits), dated October 5, 2015 |
| Exhibit B | First Amendment to Retail Lease, dated September 9, 2016 |
| Exhibit C | Commencement Date Agreement, dated November 25, 2015 |
| Exhibit D | First Notice to Cure – Rent, dated December 21, 2016 |
| Exhibit E | Order to Show Cause with Temporary Restraining Order of January 6, 2017 (First *Yellowstone* Action*)* |
| Exhibit F | Order of February 8, 2017 (First *Yellowstone* Action) |
| Exhibit G | So-Ordered Stipulation of February 15, 2017 (First *Yellowstone* Action) |
| Exhibit H | Exchange of Emails of March 2, 2017 |
| Exhibit I | Order of February of February 21, 2017 (First *Yellowstone* Action) |
| Exhibit J | Second Notice to Cure – Mechanic's Lien, dated January 25, 2017 |
| Exhibit K | Third Notice to Cure – Mechanic's Lien, dated February 1, 2017 |
| Exhibit L | Debtor's First Chapter 11 Petition, filed March 9, 2017 |
| Exhibit M | Fourth Notice to Cure – Insurance, dated May 9, 2017 |
| Exhibit N | Fifth Notice to Cure – Mechanic's Lien, dated May 17, 2017 |
| Exhibit O | Order to Show Cause with Temporary Restraining Order of June 14, 2017 (Second *Yellowstone* Action) |
| Exhibit P | Order to Show Cause of July 11, 2017 (Landlord's Motion to Vacate *Yellowstone* Injunction and for Judgment of Ejectment in First *Yellowstone* Action) |
| Exhibit Q | Order to Show Cause with a Stay of July 11, 2017 (Debtor's Counsel's Motion to Withdraw in First *Yellowstone* Action) |
| Exhibit R | Letter, dated July 17, 2017, Purporting to Be from the Landlord Bearing a Signature Purporting to Be that of Michael Garcia, filed as an Exhibit in the Second *Yellowstone* Action |

| | |
|---|---|
| Exhibit S | Affidavit of Michael Garcia, sworn to August 3, 2017, submitted in the Second *Yellowstone* Action |
| Exhibit T | Affidavit of Gadi Ben Hamo, sworn to July 24, 2017, submitted in the Second *Yellowstone* Action |
| Exhibit U | Transcript of August 9 Hearing (both *Yellowstone* Actions) |
| Exhibit V | Amended Order Denying Motion for Injunction, entered August 10, 2017 (Second *Yellowstone* Action) |
| Exhibit W | Compliance Conference Order, entered August 10, 2017 (both *Yellowstone* Actions) |
| Exhibit X | Five (5) Day Notice of Termination, dated August 14, 2017 |
| Exhibit Y | Proposed Order to Show Cause, filed August 21, 2017 (Second *Yellowstone* Action) |
| Exhibit Z | Order Denying Motion for Renewal and Reargument, dated August 21, 2017 (Second *Yellowstone* Action) |
| Exhibit AA | Debtor's Second Chapter 11 Petition, filed August 21, 2017 |
| Exhibit BB | Proposed Order |

## List of Accompanying Declarations

Declaration of Ricardo M. Vera

Declaration of Denisse Recinos

Declaration of Clare Adams

30

**Certificate of Service**

I hereby certify that on August 31 2017, a copy of the foregoing Motion of 387 Park South L.L.C. for Dismissal of the Bankruptcy Case with a Prohibition on Re-Filing and for a Declaration that the Automatic Stay Does Not Prevent Acts to Recover Possession of the Premises Occupied by the Debtor; or Alternatively for (A) Relief from the Automatic Stay, (B) the Appointment of a Chapter 11 Trustee, or (C) Conversion of the Case to Chapter 7 was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Alec P, Ostrow*
Alec P. Ostrow

31