**Hearing Date: October 4, 2017 at 10:00 a.m.**

**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Chester B. Salomon
csalomon@beckerglynn.com
Alec P. Ostrow
aostrow@beckerglynn.com

*Attorneys for 387 Park South L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ARTISANAL 2015, LLC,<br><br>               Debtor. | Chapter 11<br><br>Case No. 17-12319 (JLG) |

**REPLY OF 387 PARK SOUTH L.L.C. IN FURTHER SUPPORT OF ITS
MOTION FOR DISMISSAL OF THE BANKRUPTCY CASE WITH A
PROHIBITION ON RE-FILING AND FOR A DECLARATION THAT
THE AUTOMATIC STAY DOES NOT PREVENT ACTS TO
RECOVER POSSESSION OF THE PREMISES OCCUPIED
BY THE DEBTOR; OR ALTERNATIVELY FOR
(A) RELIEF FROM THE AUTOMATIC STAY,
(B) THE APPOINTMENT OF A CHAPTER 11 TRUSTEE,
OR (C) CONVERSION OF THE CASE TO CHAPTER 7**

*335040v3*

# Table of Contents

Table of Authorities ............................................................................................ iii

Introduction ...................................................................................................... 1

The Canard About the Alleged Improper Door and the First *Yellowstone* Action ............. 3

The Debtor Should Not Be Permitted to Re-Litigate in this Court the Landlord-
    Tenant Issues Determined by or Pending in the State Court ............................... 11

    The *Rooker-Feldman* Doctrine ........................................................................ 12

    The Full Faith and Credit Act ......................................................................... 13

    Bankruptcy Abstention ................................................................................. 14

    *Younger* Abstention .................................................................................... 16

    Re-Litigation Should Not Be Allowed .............................................................. 17

Relief May Be Granted Without an Evidentiary Hearing ............................................. 17

The Debtor's Other Arguments Are Without Merit ................................................... 21

Conclusion ...................................................................................................... 24

List of Exhibits ................................................................................................. 26

# Table of Authorities

Cases

*1633 Broadway Mars Rest. Corp. v. Paramount Grp., Inc.*
  *(In re Broadway Mars Rest. Corp.)*, 388 B.R. 490 (Bankr. S.D.N.Y. 2008)..............23

*Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156 (2d Cir. 2010)…………………….…..18

*Asbestosis Claimants v. U.S. Lines Reorganization Trust*
  *(In re U.S. Lines, Inc.)*, 318 F.3d 432 (2d Cir. 2003)…………………………………...21

*Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003)…………………………………….…13

*Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*,
  739 F.3d 228 (2d Cir. 2015)…………………………………………………………...18

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
  113 F.3d 1304 (2d Cir. 1997)…………………………………………………1, 12, 17, 19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ………………………………………………………………12, 14

*Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180 (2d Cir. 2002)……………………19

*Gordon v. Tese-Milner (In re Gordon)*, No. 16 Civ. 5387 (ER),
  2017 WL 3531554 (S.D.N.Y. Aug. 17, 2017)………………………………………………18

*Go W. Entertainment, Inc. v. N.Y. State Liquor Authority*
  *(In re Go W. Entertainment, Inc.)*, 387 B.R. 435 (Bankr. S.D.N.Y. 2008)……………16

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)……………….…13

*In re Everest Crossing, LLC*, 416 B.R. 361 (Bankr. D. Mass. 2009)……………………19

*In re GEL, LLC*, 495 B.R. 240 (Bankr. E.D.N.Y. 2012)………………………………...1, 12

*In re M&M Transp. Co.*. 437 F. Supp. 821 (S.D.N .Y. 1977)…………………….…..23

*In re Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015)…………………………………..20

*In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849
  (Bankr. S.D.N.Y. 1984)………………………………………………………………1

*Int'l Christian Broad., Inc. v. Koper (In re Koper)*,
  552 B.R. 208 (Bankr. E.D.N.Y. 2016)………………………………………………...18

*Johnson v. De Grandy*, 512 U.S. 997 (1994)……………………………………….……..12

*Katzenstein v. VIII SV 5556 Lender, LLC (In re St. Vincent's*
  *Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587 (Bankr. S.D.N.Y. 2010)……………………18

*Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*,
  330 F.3d 111(2d Cir. 2003)………………………………………………………………18

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman*
  *(In re Masterwear Corp.)*, 241 B.R. 511 (Bankr. S.D.N.Y. 1999)………………………16

*Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518 (1986)………………………………14

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10 (1987)………………………………………16

*Queens Blvd. Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974)……………22-23

*Sonnax Indus., Inc. v. Tri Component Prods. Corp.*
  *(In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1986)……………………………20, 23

*State of N.Y. Higher Educ. Sevs. Corp. v. Starr*,
  158 A.D.2d 771, 551 N.Y.S.2d 363 (3d Dep't 1990)………………………………………14

*Stivala Invs., Inc. v. Atl. Nat'l Trust LLC (In re Stivala Invs., Inc.)*,
  394 B.R. 778  (Bankr. M.D. Pa. 2008) …………………………………………………..19

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. Howard's Express, Inc.*
  *(In re Howard's Express, Inc.)*, 151 Fed. Appx. 46 (2d Cir. 2005)………………………18

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir.), *cert. denied*, 506 U.S. 1022 (1992)……………………………..19

*Younger v. Harris*, 401 U.S. 37 (1971)……………………………………………………16

Statutes

11 U.S.C. § 105(a)……………………………………………………………………1, 25

11 U.S.C. § 303……………………………………………………………………………18

11 U.S.C. § 349(a)……………………………………………………………………1, 25

11 U.S.C. § 362(b)(10)……………………………………………………………………23

11 U.S.C. § 362(d)……………………………………………………………………1, 25

11 U.S.C. § 362(n)(1)(B) ……………………………………………………………24

11 U.S.C. § 365……………………………………………………………………….13

11 U.S.C. § 365(d)(3)…………………………………………………………………21

11 U.S.C. § 365(e) …………………………………………………………………...23

11 U.S.C. § 1104(a)………………………………………………………………...1, 25

11 U.S.C. § 1112(b)………………………………………………………….……..1, 25

11 U.S.C. § 1123……………………………………………………………………...13

28 U.S.C. § 1331……………………………………………………………………...15

28 U.S.C. § 1332…………………………………………………………………….. 15

28 U.S.C. § 1334(b)………………………………………………………………….15

28 U.S.C. § 1334(c)(1)………………………………………………………………16

28 U.S.C. § 1334(c)(2)………………………………………………………………14

28 U.S.C. § 1738………………………………………………………………… 13-14

## Rules

Fed. R. Bankr. P. 9017………………………………………………………………..17

Fed. R. Civ. P. 43(c)……………………………………………………………….17-18

## Other Authorities

David D. Siegel, *New York Practice* § 448, at 781 (5th ed. 2011) ………………………..14

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,
    Civil 3d*, § 2416 (2008)………………………………………………………..……..18

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice and Procedure 2d* § 4469.1 (2002)…………………………….……12

The reply of 387 Park South L.L.C. ("387 Park South" or the "Landlord"), in further support of its motion for dismissal of the bankruptcy case, pursuant to 11 U.S.C. § 1112(b), with a prohibition on re-filing, pursuant to 11 U.S.C. §§ 105(a) and 349(a), and for a declaration that the automatic stay does not prevent acts to recover possession of the premises occupied by Artisanal 2015, LLC (the "Debtor"), pursuant to 11 U.S.C. § 362(b)(10) and (n)(1)(B); or alternatively, (a) for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d),  (b) the appointment of a chapter 11 trustee, pursuant to 11 U.S.C. § 1104(a), or (c) conversion of the case to chapter 7, pursuant to 11 U.S.C. § 1112(b) (the "Motion"), by its attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, respectfully sets forth and represents the following:

## Introduction

1.      In the Second Circuit's seminal bad faith filing case, *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304 (2d Cir. 1997), the court described a fundamental misuse of chapter 11, stating:

> [T]he "debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating," and that the "debtor is unable to propose a meaningful plan of reorganization . . .  is resolved, [citation omitted], the bankruptcy court then found it "evident that the debtor seeks to use this court not to reorganize, but to relitigate.  This is an impermissible use of Chapter 11."

*Id.* at 1310 (quoting *In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984)); *accord In re GEL, LLC*, 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012).

Based on the Debtor's opposition papers, the exact same scenario is presented in this case.

2.      The centerpiece of the Debtor's response is a complaint it filed against the

Landlord in this Court commencing adversary proceeding 17-01173 (the "Adversary

Complaint") the night before the response to the Motion was due.  The Adversary

Complaint is attached as Exhibit A to the Debtor's response.  The Adversary Complaint

seeks a declaratory judgment with respect to three items:

> i.  the Lease[1] was not terminated prior to
> bankruptcy;

> ii.  the Commencement Date under the
> Lease should be re-established as of March 6, 2017, when
> the door that was allegedly improperly constructed by the
> Landlord was supposedly fully approved; and

> iii.  the Debtor owes no rent under the Lease
> until January 2018, based on the rent deferral under the
> Lease until 330 days after the Commencement Date, and
> that the Debtor should receive a credit or offset for all rent
> previously paid.

*See* Adversary Complaint ¶ 63.  Each of these items has already been decided against the

Debtor in the two *Yellowstone* actions, either finally or provisionally.

3.      With regard to the first item of requested relief, the termination of the

Lease based on the Debtor's default in maintaining proper insurance was the subject of

the Second *Yellowstone* Action.  As set forth at length in the Motion, *see* Motion ¶¶ 20-

32 and Exhibits M-Z, Justice Kornreich twice denied an injunction to prevent the

termination of the Lease based on this default.  The discussion in the Motion will not be

repeated here.  The remaining two items of requested relief were the subjects of the First

*Yellowstone* Action.  As will be set forth at length below, Justice Kornreich heard and

rejected arguments about the allegedly improper door and the Debtor's supposed

entitlement to a deferral of rent.  In particular, Justice Kornreich provisionally rejected

---

[1] Capitalized terms not defined in this reply have the same meaning as defined in the Motion.

the Debtor's rent-deferral argument by requiring the payment of use and occupancy

during the pendency of the action when granting a *Yellowstone* injunction and thereafter

when approving the withdrawal of the Debtor's first attorney in the First *Yellowstone*

Action.  *See* Motion ¶¶ 11-13 and Exhibits F, I.

       4.      This Court is not the place for the Debtor to take issue with these rulings

and attempt to get a different result.  Because there is no other purpose to the Debtor's

chapter 11 case, it should be dismissed, and because the Debtor is a proven re-filer,

further re-filing should be barred.

### The Canard About the Alleged Improper Door and the First *Yellowstone* Action

       5.      In the First *Yellowstone* Action, the Debtor raised the improper door issue

at the outset.  In his affidavit in support of the Debtor's proposed order to show cause for

a *Yellowstone* injunction on January 6, 2017, Mr. Sarid Drory, the Debtor's managing

partner, submitted the following testimony:

> 6.      Plaintiff does not believe that it is in
> violation of its lease in any way because, among other
> things, it has been prevented by defendant from completing
> its construction and operating its restaurant as a result of
> defendant's failure to comply with its obligations under the
> Lease and applicable law.  In particular plaintiff is advised
> by its architect that one of the Building's two principal
> entranceways located on Park Avenue South (as depicted
> on Exhibit C to the Lease) does not appear on the New
> York City Department of Building's records.  As a result,
> plaintiff's architect and designer have been precluded from
> finalizing plans and obtaining permits to complete its multi-
> million dollar construction and open for business.
>
> 7.      Since June 2016, I have inquired with
> defendant as to when it would legalize this critical means of
> ingress/egress without receiving a meaningful response.

*335040v3*

3

Instead, I was told that the defendant had the appropriate documentation and simply had to locate it.

8.    Pursuant to the Lease, Tenant is entitled to a day-for-day rent abatement as it is unable to open for business (*see* Exhibit A at § 9.1).

9.    Additionally, defendant has deprived plaintiff of approximately 1,300 square feet of space that was demised under the Lease.  This constitutes an actual partial eviction of plaintiff from a portion of the premises and, thus, I am advised that no rent is due.

A copy of Mr. Drory's affidavit is annexed hereto as Exhibit A.

6.    The answer to the Debtor's allegation regarding the deferral of rent is contained in the Lease (Exhibit A to the Motion) and the Commencement Date Agreement (Exhibit C to the Motion).  Section 1.5 of the Lease defines the "Commencement Date" as the "date upon which possession of the Premises is delivered to Tenant, with all of Landlord's Work (as defined herein)[2] Substantially Completed (as defined herein)[3] . . . ."  The Commencement Date Agreement, entered into as of November 25, 2015, contains a statement in Recital B that the "Commencement Date has occurred," and specifically provides:

1.  The Commencement Date is 12/01/2015.

2.  The Fixed Rent Commencement Date is 10/26/2016.

---

[2] Section 1.11 of the Lease defines "Landlord's Work" as the "work to be performed by Landlord as described in Exhibit B to this Lease.  Exhibit B to the Lease is not included in the copy of the Lease attached to the Motion, but is included in the copy of the Lease attached to the Adversary Complaint. Exhibit B to the Lease lists the "Landlord's Work" as:

> Delivery of Premises in broom clean condition,
> Install new floor to ceiling glass storefronts, and
> Furnish an ACP-5 to Tenant.

[3] Section 2.7 contains the definition of "Substantially Completed" and provides that it "shall mean the date when Landlord's Work then remaining to be done, if any, consists of minor 'punch list items' and shall have reached that stage of completion such that Tenant could either use or occupy the Premises for the uses permitted hereunder without substantial interference by reason of those items still required to complete Landlord's Work."


7.       The issue of the supposedly improper door is the Debtor's attempt to get around the Commencement Date Agreement that it had signed.  Notably, in raising the issue of the improper door, the Debtor's submissions in support of its motion for a *Yellowstone* injunction in the First *Yellowstone* Action did not include an affidavit from the Debtor's architect.  The Landlord, by contrast, did submit an affidavit from its architect, Laurence G. Jones, R.A., contradicting the Debtor's allegations.  A copy of the Mr. Jones's affidavit, sworn to on January 26, 2017, is annexed hereto as Exhibit B.

8.       Justice Kornreich heard the motion for the *Yellowstone* injunction in the First *Yellowstone* Action on February 8, 2017.  A copy of the transcript of this hearing is annexed hereto as Exhibit C.  Regarding the allegedly improper door issue, Justice Kornreich had the following colloquy with Hal N. Beerman, Esq., of Greenberg Traurig LLP, the Debtor's first counsel, in the context of the Landlord's Work under the Lease:

> THE COURT:  I see.  Delivery of premises in broom-clean condition, install new floor-to-ceiling glass storefronts, and furnish an ACP-5, whatever that is.
>
> MR. BEERMAN:  That's for asbestos, your Honor.
>
> But the key is the second one:  Install floor-to-ceiling glass storefronts.
>
> THE COURT:  But the landlord turned over the premises, and your client signed off on this.  What date was that?  October of - -
>
> MR. BEERMAN:  Of 2015.
>
> THE COURT:  October 26th of 2016?
>
> MR. BEERMAN: 2015.[4]
>
> THE COURT:  Okay. Even better.

---

[4] As set forth above, the Commencement Date Agreement was entered into as of November (not October) 25, 2015.

MR. BEERMAN:  So prior to the time when the tenant was aware of the door issue.

THE COURT:  How was he not aware?  Didn't he have an architect?

MR. BEERMAN:  He did, but no one knew until June that this storefront was not legalized.  It was landlord's responsibility - -

THE COURT:  Okay.  Let me hear - - wait a second.

First of all, your application, it's your client's hearsay statement.  There is absolutely nothing from an architect submitted by you, but that's number one.

Number two, even if I buy your argument - - which is hearsay because there is nothing from an architect, to show that this is the case, from you, but I'll look at the other architect's letter from the landlord, which seems to indicate, maybe there is a problem and they have now signed off, although that doesn't indicate that that stopped any other work from going forward, and your client has said he's only done $1.2 million of work, there should have been $3.5 million of work done so far, but your client, did your client in June send a written notice?

MR. BEERMAN:  Your Honor, my client in November sent a notice.

THE COURT:  Your client didn't send a notice for six months.

MR. BEERMAN:  Your Honor, the landlord was telling our client that they have the signoffs, they're in the drawer.

THE COURT:  Wait a second.  But your client never did anything for six months, for what I see here, perhaps he continued to do work on the premises.

MR. BEERMAN:  To the extent he could, he continued to do work.

THE COURT:  But he never sent the required written notice.  The contract is clear here.[5]

MR. BEERMAN:  Your Honor, the substantial completion of landlord's work is the landlord's responsibility.  If that is not done, the Commencement Date does not exist.

THE COURT:  If it's not done, the lease requires written notice.

First of all, there's no support from an architect for your claim, plus your client never gave written notice, plus your architect - -  there are mechanic's liens, which I don't know if they've been - - that's not part of this case, but there is - - there are mechanic's liens against your client, as well.

MR. BEERMAN:  Your Honor, there are, and that explains why there's no architect's affidavit,[6] all while we are trying to resolve that dispute.

THE COURT:  But that doesn't mean you couldn't have gotten another architect to submit an affidavit.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit C) at 7-9.

---

[5] Among the provisions of the Lease requiring the Tenant to notify the Landlord, two provisions in Section 9.1 are quoted below:

- Tenant shall promptly deliver to Landlord a copy of any notice, communication or other materials relating to the Premises, the Real Property (including the Building systems), Tenant's Property, Tenant's Work and/or Hazardous Substances (hereinafter defined) received by Tenant from, or sent by Tenant to any Authority.

- If Tenant is unable to obtain any required permit or approval required by Laws in order to commence Tenant's Initial Work or is unable to open for business in the Premises solely as a result of the existence of any violation issued by any Authority against the Premises or any other portion of the Building and not caused by Tenant or required to be discharged by Tenant or any subtenant of Tenant or any of their respective agents, employees or contractors and not required to be discharged by Tenant pursuant to any other provision of this Lease, Tenant shall immediately notify Landlord of any delay in obtaining any such permit or approval or opening for business and Landlord, at its expense, shall use commercially reasonable efforts to cause any such violation to be promptly discharged or to otherwise enable Tenant to lawfully obtain such permit or approval or open for business.

[6] The Debtor's architect, Joseph Kleinmann Architect, filed a mechanic's lien on January 17, 2017, which is the subject of the Landlord's Second Notice to Cure – Mechanic's Lien, dated January 25, 2017 (Exhibit J to the Motion).

*335040v3*

9.       Following the argument of the Landlord's counsel, Justice Kornreich has

the following additional colloquy with counsel for the Debtor:

>       MR. BEERMAN:  Your Honor, under 2.7,
>       landlord's work has be delivered substantially complete.
>       There was nothing that we had to notify the landlord about
>       that didn't substantially complete its work.  Annexed to
>       landlord's papers - -
>
>       THE COURT:  But the lease specifically says that if
>       you have a problem, you notify the landlord.  And instead
>       of notifying them that they didn't substantially complete
>       the work, and you had an architect at that point; instead,
>       you accepted substantial completion back in October of
>       2015.  Then you claim you found out about a problem in
>       June.  The lease requires that as soon as you become aware
>       of the problem, in two days you send written notice.   You
>       did not send any written notice.  Then you stopped paying
>       the rent, you send a notice in November which - - and there
>       are already mechanic's liens, there are all kinds of issues
>       here.  I mean, all of this really militates against granting
>       this <u>Yellowstone</u>.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit C) at 14-15.

10.      The final colloquy with the Debtor's counsel leading to Justice

Kornreich's ruling is set forth below:

>       THE COURT:  This is supposed to be a summary
>       proceeding when a landlord - -
>
>       You know, your client has been in these premises
>       for over a year.  The landlord granted a build-out period but
>       the build-out period has passed.  There is no rent being
>       paid.
>
>       MR. BEERMAN:  Your Honor, the build-out
>       period has been stymied by the fact that there is, quote,
>       irregularity which the landlord recognizes as an illegal
>       door.  Therefore, we respectfully request that, if anything,
>       grant the <u>Yellowstone</u> subject to a bond.  We'll put up a
>       bond.  We are willing to do that.

THE COURT:  You know what?  You want me to
grant the <u>Yellowstone</u>?  I'll grant the <u>Yellowstone</u> subject
to the tenant paying past rent and ongoing rent pursuant to
paying you U & O, without - - this is without prejudice to
either side.

I am granting the <u>Yellowstone</u> subject - - this like a
bond to your client paying the $114,000, or whatever is
owed in rent, and paying ongoing rent to the landlord.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit C) at 17-18.

11.    Justice Kornreich's order, granting a *Yellowstone* injunction is annexed to

the Motion as Exhibit F.  It required the Debtor to "pay into court the alleged rent owed

until January 1, 2017, and to pay to landlord defendant January and February rent (u&o)

pursuant to the lease, and continue to pay this u&o throughout this proceeding without

prejudice to either side."

12.    Although no complaint had been filed in the First *Yellowstone* Action at

the time of the February 8, 2017, a Verified Complaint was later filed on April 3, 2017.

A copy of the Verified Complaint is annexed hereto as Exhibit D.  The Verified

Complaint contains the same improper door allegations that were the subject of the

February 8, 2017 hearing, and also the subject of the Debtor's Adversary Complaint and

its response to the Motion.  In particular, the Verified Complaint in the First *Yellowstone*

Action contains the following allegations:

14.    Sometime in or around June, 2016, Tenant
became aware for the first time that one of the two
principal entranceways to the Premises located on Park
Avenue South, and the only doorway to the retail portion of
the Premises, did not appear in the records of the New York
City Department of Buildings ("DOB"), is illegal, and
thereby represents a default by Defendant under the Lease.

17.    The legalization of the door was necessary
for Landlord's Work to have been completed, which

completion was required as aforesaid prior to defendant's delivery of the Premises to plaintiff and the activation of the Commencement Date.

24.    Thus, defendant failed "to deliver the Premises to plaintiff with Landlord's Work Substantially Completed."

39.    Defendant failed to deliver the Premises to plaintiff in "legal" condition until March 6, 2017 and also deprived plaintiff of valuable substantial square footage of the Premises, all as aforesaid, and defendant is estopped from raising its claimed defaults.

48.    Under §9.1 of the Lease, as aforesaid, plaintiff is entitled to a rent abatement until defendant provides a legal second entranceway to the Premises, as aforesaid.

49.    Thus, plaintiff is entitled from defendant to a credit for, abatement, or payment back of all the months rent plaintiff paid while the second doorway issue remained unsatisfied.

13.    As discussed in paragraphs 23-24 of the Motion, on July 7, 2017, the Landlord moved for an order vacating the *Yellowstone* injunction and granting a judgment of ejectment in the First *Yellowstone* Action – based upon, *inter alia*, the Debtor's failure to pay directed use and occupancy.  This motion was stayed by Justice Kornreich when she granted the motion of the Debtor's second counsel for leave to withdraw.  The order staying all proceedings in the First *Yellowstone* Action for thirty days upon the withdrawal of counsel, a copy of which is attached to the Motion as Exhibit Q, specifically excepted the requirement to pay u&o.  A status conference before Justice Kornreich that had been scheduled for September 13, 2017, was cancelled because of the automatic stay from the Debtor's second chapter 11 filing on August 21, 2017.

*335040v3*

## The Debtor Should Not Be Permitted to Re-Litigate in this Court the Landlord-Tenant Issues Determined by or Pending in the State Court

14.      By this point, it should be crystal clear that the Debtor's response to the Motion, including its new Adversary Complaint, is essentially comprised of allegations made and rejected, finally or provisionally, by Justice Kornreich in the two *Yellowstone* actions.  The Debtor, having lost before Justice Kornreich, is now seeking another round of the same litigation in a different forum.

15.      As discussed at length in the Motion, the Debtor has sought to prevent the termination of its Lease on the basis of the insurance default twice in the Second *Yellowstone* Action:  once after the notice to cure was issued, and the second time after the termination notice was issued.  On both occasions, Justice Kornreich denied the Debtor's requested injunction.  As a practical matter, the denial of the injunction after the five-day termination notice was issued, finally determined the issue of the validity of the termination notice, subject only to appeal.  Indeed, Justice Kornreich's order denying the application for renewal and reargument of this injunction is marked at the foot of the order (Exhibit Z to the Motion) as "Case Disposed."  The Debtor has appealed the orders denying the injunction to the Appellate Division.  This Court is not an appellate court to the state court.

16.      In addition, as discussed at length above, the Debtor has sought to avoid paying rent and the consequences of the Commencement Date Agreement by raising the issue of the allegedly improper door in the First *Yellowstone* Action.  Justice Kornreich has rejected the notion that the Debtor can remain in the Premises without paying rent or use and occupancy, by requiring the payment of use and occupancy on an ongoing basis.

*335040v3*

11

Moreover, Justice Kornreich has ruled that the Debtor's allegation of an improper door
was based on hearsay, that the Debtor signed the Commencement Date Agreement with
the acknowledgment that the Landlord's Work was Substantially Completed, and in any
event, that the Debtor failed to comply with its contractual obligation, pursuant to, *inter
alia*, Section 9.1 of the Lease, to notify the Landlord promptly, having waited from June
to November 2016 before notifying the Landlord of the issue.  This Court is not the
appropriate forum to re-hear these matters and revisit these rulings.

17.     The Debtor cannot reorganize without the Lease for the Premises, and the
fate of the Lease is the subject two *Yellowstone* actions in state court.  Filing for chapter
11 to re-litigate matters decided by and pending in the state court is filing for an improper
purpose and a prime indication of a bad faith filing.  *C-TC*, 113 F.3d at 1310; *GEL, LLC*,
495 B.R. at 246.  Moreover, there are several applicable doctrines or statutes that prevent
the Debtor from re-litigating state court matters in this Court.

**The *Rooker-Feldman* Doctrine**

18.     The *Rooker-Feldman* doctrine has as its foundation the lack of jurisdiction
of any federal court other than the United States Supreme Court to review a decision of a
state court.  18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal
Practice and Procedure 2d* § 4469.1 (2002).  This doctrine "bars a losing party in state
court 'from seeking what in substance would be appellate review of the state judgment in
a United States district court, based on the losing party's claim that the state judgment
itself violates the loser's federal rights.'"  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280, 287 (2005) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06
(1994)).  Here the allegation is that, notwithstanding Justice Kornreich's denial of a

*Yellowstone* injunction preventing termination of the Lease, the Debtor retains a right to cure defaults under 11 U.S.C. §§ 365, 1123. *See* Adversary Complaint ¶ 63. Following the Supreme Court's *Exxon Mobil* decision, the Second Circuit has prescribed four requirements for application of the *Rooker-Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must be complaining of injuries caused by the state court judgment; (3) the plaintiff must invite district court review and rejection of the state court judgment; and (4) the state court judgment must have been rendered before the district court proceeding commenced. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

19.    The satisfaction of the first and fourth of these requirements is beyond dispute. It does not matter for purposes of the *Rooker-Feldman* doctrine whether there is a final state court judgment or a ruling that is law of the case. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003). As to the second and third requirements, although the Debtor does not in so many words allege that its injuries were caused by Justice Kornreich's rulings or invite this Court to review and reject such rulings, the practical effect of what the Debtor seeks is the same. The Debtor asks this Court to hold that the state court's decision not to enjoin the termination of the Lease does not count. That is enough to prevent this Court from entertaining the Debtor's requested relief.

**The Full Faith and Credit Act**

20.    The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." This Act "requires the federal court to 'give the same

preclusive effect to a state-court judgment as another court of the State would give.'"

*Exxon Mobil*, 544 U.S. at 293 (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S.

518, 523 (1986)).

21.     Justice Kornreich's second order denying the injunction against the

termination of the lease in the Second *Yellowstone* Action has the attributes of a final

judgment, including the indication that it disposed of the case.  But even if it is an

interlocutory judgment, it is nevertheless appealable, and under the New York law of the

case doctrine, "no other judge of coordinate jurisdiction may undo the decision."  David

D. Siegel, *New York Practice* § 448, at 781 (5th ed. 2011) (citing *State of N.Y. Higher*

*Educ. Sevs. Corp. v. Starr*, 158 A.D.2d 771, 551 N.Y.S.2d 363 (3d Dep't 1990)).  By

virtue of 28 U.S.C. § 1738, this federal Court must treat this judgment the same as a New

York state court would treat it, and therefore, may not undo the decision of the state court

of coordinate jurisdiction.

**Bankruptcy Abstention**

22.     The bankruptcy jurisdiction statute contains both mandatory and

permissive abstention provisions.  The mandatory abstention provision, 28 U.S.C. §

1334(c)(2), provides:

> Upon a timely motion of a party in a proceeding
> based upon a State law claim or State law cause of action,
> related to a case under title 11 but not arising under title 11
> or arising in a case under title 11, with respect to which an
> action could not have been commenced in a court of the
> United States absent jurisdiction under this section, the
> district court shall abstain from hearing such proceeding if
> the action is commenced, and can be timely adjudicated, in
> a State forum of appropriate jurisdiction.

23.     In this case, although the Debtor alleges that it maintains federal rights to cure the Lease, the challenge to the Lease termination has nothing to do with federal law. Rather, it is based on two non-federal law contentions:  first, that the notice to terminate violated the *Yellowstone* injunction in the First *Yellowstone* Action;[7] and second, that the Debtor had cured the insurance default under the Lease.[8]  Adversary Complaint ¶¶ 54-55. Both such contentions invoke state law, the interpretation of a state court injunction and the interpretation of the Debtor's Lease.  Certainly, no provision of the Bankruptcy Code is cited as a basis to invalidate the termination of the Lease.  Therefore, there is no "arising under" jurisdiction under 28 U.S.C. § 1334(b).  Also, these challenges are independent of and exist separate from the Debtor's bankruptcy case.   Therefore no "arising in" jurisdiction exists under the same statute.  No other federal law is invoked as a basis to invalidate the termination of the Lease.  Hence, there is no federal question jurisdiction.  *See id.* § 1331. There is also no basis for diversity jurisdiction, since both parties are New York limited liability companies.  *See id.* § 1332.  Consequently, there is no basis for federal jurisdiction other than "related to" bankruptcy jurisdiction. Significantly, the two *Yellowstone* Actions were commenced prior to bankruptcy, and as demonstrated by the record of those actions, they can be (or have been) timely adjudicated in the state court.  Indeed, an appearance on the Landlord's motion to vacate the *Yellowstone* injunction and for a judgment of ejectment in the First *Yellowstone*

---

[7] Obviously, Justice Kornreich did not think that the Landlord was violating her own injunction when she refused to enjoin the notice to cure the insurance default that the Landlord had issued, and lifted all stays on such notice.  Indeed, her order denying the first *Yellowstone* injunction in the Second *Yellowstone* Action (Exhibit V to the Motion) expressly provides:  "All stays are lifted."

[8] Again, Justice Kornreich rejected this contention, stating in the same order, "plaintiff-tenant's failure to obtain the required insurance, even until today, also requires denial of the Yellowstone application."

Action had been scheduled when the Debtor's second chapter 11 petition was filed. Consequently, all the requirements of mandatory abstention are met.

24.    Even if the requirements of mandatory abstention are not satisfied, this Court may permissively abstain. *Id.* § 1334(c)(1). Among the factors that courts consider are the extent to which state law issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, and the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties. *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999). These factors are certainly present. Based on the amount of litigation that has already occurred in the two *Yellowstone* actions, this Court should abstain from hearing any proceeding that traverses the same ground covered in those actions.

### *Younger* **Abstention**

25.    In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court enunciated an abstention doctrine preventing federal court interference in ongoing state court criminal proceedings. The Supreme Court extended *Younger* abstention to civil proceedings in *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10 (1987), when it held that the federal courts should abstain from a constitutional challenge to a Texas appellate bond requirement. In bankruptcy cases, Judge Gropper applied the *Younger* abstention principles in refusing to enjoin the termination of a debtor's state liquor license after a state appellate court had twice refused to enjoin such termination prior to bankruptcy. *Go W. Entertainment, Inc. v. N.Y. State Liquor Authority (In re Go W. Entertainment, Inc.)*, 387 B.R. 435, 442-46 (Bankr. S.D.N.Y. 2008). Such precedent is particularly applicable

in this case, where a state court has twice refused to enjoin the termination of the

Debtor's Lease prior to bankruptcy.

**Re-Litigation Should Not Be Allowed**

26.     For present purposes, this Court need not determine whether any of these

doctrines prevents this Court from hearing the merits of the Debtor's challenge to the

termination of its Lease.  It is sufficient to observe that the Debtor seeks to use chapter 11

to re-litigate what it lost in state court.  That purpose is improper in the Second Circuit

under *C-TC*, 113 F.3d at 1310, and demonstrates that the chapter 11 was filed in bad faith

and should be dismissed.

**Relief May Be Granted Without an Evidentiary Hearing**

27.     The Debtor has raised certain factual issues in its response, and argues that

an evidentiary hearing is required.  That is not the case.  This Court may grant relief

without the need for an evidentiary hearing based on documentary facts that are not the

subject to a genuine dispute.  Indeed, in *C-TC*, the Second Circuit approved the

bankruptcy court's determination to dismiss the chapter 11 case as a bad faith filing

without an evidentiary hearing.  The court of appeals stated:  "Thus we find that the

bankruptcy court's election to decide the bad faith issue without a formal evidentiary

hearing was within its discretion; the record provided ample evidence on which the court

could make such a decision."  *Id.* at 1313.

28.     Rule 9017 of the Federal Rules of Bankruptcy Procedure makes applicable

Rule 43 of the Federal Rules of Civil Procedure, subdivision (c) of which states:

> **(c) Evidence on a Motion.**  When a motion relies
> on facts outside the record, the court may hear the matter

> on affidavits or may hear it wholly or partly on oral
> testimony or on depositions.

Fed. R. Civ. P. 43(c); *see Int'l Christian Broad., Inc. v. Koper (In re Koper)*, 552 B.R. 208, 219 n.11 (Bankr. E.D.N.Y. 2016).  This rule provides the Court with discretion to dispense with an evidentiary hearing.  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 3d*, § 2416 (2008).   The Court need not hold an evidentiary hearing if the documentary evidence is sufficient to resolve the motion.  *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 & n.5 (2d Cir. 2003)[9]; *accord Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 739 F.3d 228, 235 (2d Cir. 2015); *Gordon v. Tese-Milner (In re Gordon)*, No. 16 Civ. 5387 (ER), 2017 WL 3531554, at *6 (S.D.N.Y. Aug. 17, 2017).

29.    In the present case, the record before this Court, including what the Debtor has filed in terms of its petition [ECF Doc. 1], and its filing on September 5, 2017, combing, among other things, its schedules, statement of financial affairs, and affidavit pursuant to Local Rule 1007-2 [ECF Doc. 12], and this Court's files concerning the Debtor's prior bankruptcy case filed and dismissed earlier this year, case no. 17-10570 (MKV),[10] together with the undisputed copies of decisions and orders in the state court *Yellowstone* actions, demonstrate the presence of many of the *C-TC* factors (substituting the state court *Yellowstone* actions for a mortgage foreclosure action):

---

[9] The Second Circuit's holding in this case that the requirements of 11 U.S.C. § 303 are jurisdictional in nature has been abrogated by *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 167 (2d Cir. 2010).  Such abrogation, however, has no effect on the proposition for which the Landlord cites the *BDC 56* case, namely, the absence of a need for an evidentiary hearing.  Indeed, the *BDC 56* case continues to be cited for this proposition, as demonstrated by the two cases cited in the text immediately following *BDC 56*.

[10] This Court can and should take judicial notice of its dockets and records.  *Katzenstein v. VIII SV 5556 Lender, LLC (In re St. Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010); *Koper*, 552 B.R. at 716; *see Teamsters Nat'l Freight Indus. Negotiating Comm. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 Fed. Appx. 46, 48 (2d Cir. 2005).

- The debtor has only one asset.[11]
- The asset is the subject of a state court lease termination proceedings.
- The filing evidences an intent to delay or frustrate the state court creditor's legitimate rights.
- The debtor has no cash flow.
- The debtor cannot meet its current expenses.
- The debtor has no employees.

*See C-TC*, 113 F.3d at 1311.  There are no genuine factual disputes here.  *Stivala Invs., Inc. v. Atl. Nat'l Trust LLC (In re Stivala Invs., Inc.)*, 394 B.R. 778, 783 (Bankr. M.D. Pa. 2008) (record of state court actions attached to affidavits "obviated any need for an evidentiary hearing" on a motion to dismiss an adversary proceeding based on the *Rooker-Feldman* doctrine).  Certainly, none of these facts, nor the Debtor's status as a repeat chapter 11 filer this year, requires any oral testimony or an assessment of the credibility of any witness.  *See Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180, 183 (2d Cir. 2002) (rejecting the requirement of oral testimony in the absence of factual questions not readily ascertainable from the declarations of witnesses or questions of credibility of witnesses) (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir.), *cert. denied*, 506 U.S. 1022 (1992)).

30.    Similarly, on the issue of the lease termination, the relevant facts are found in the Lease, the Five (5) Day Notice of Termination, and the state court's refusal to enjoin such notice in the second *Yellowstone* action.  No evidentiary hearing is required to establish these facts, which cannot be the subject of a genuine dispute.  *See In re Everest Crossing, LLC*, 416 B.R. 361, 362 (Bankr. D. Mass. 2009) ("Given that the material facts concerning termination, or attempted termination, of the Lease are not in dispute, there is no need for an evidentiary hearing at this time.").

---

[11] The Debtor's schedules actually list three assets:  the lease, the security deposit under the lease, and cash of $250.  It is respectfully submitted that the security deposit under the lease should not be considered as a separate asset from the lease for this purpose, and $250 is too small an amount to have any significance.

31.     Consequently, for the principal relief sought in the Motion, namely dismissal of the case as a bad faith filing, with a bar on re-filing, and a determination that the automatic stay is not applicable based the lease was terminated prior to bankruptcy, an evidentiary hearing is not necessary.

32.     Moreover, an evidentiary hearing is not required for granting the Landlord relief from the automatic stay, based on the factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1986). No testimony is required for the Court to determine that: Allowing the two *Yellowstone* actions  to reach their natural conclusions would completely resolve the issue of possession of the Premises (factor 1); the two *Yellowstone* actions do not involve the Debtor as a fiduciary (factor 3); the Landlord's recovery of possession of the Premises would not prejudice any other pecuniary interest (factor 7); a judgment granting ejectment would not be subject to equitable subordination (factor 8);  the Landlord's success in the two *Yellowstone* actions would not result in a judicial lien on any property of the estate (factor 9); judicial economy is not served by relitigating issues already determined or awaiting determination in the two *Yellowstone* actions (factor 10); the Landlord's motion for ejectment is ripe for determination without the need for a trial (factor 11); and failing to allow the Landlord to recover possession of the Premises of a terminated Lease in the two *Yellowstone* actions would substantially prejudice the Landlord (factor 12).  This Court "is not required to hold a full-blown evidentiary hearing on a motion to lift the automatic stay where it is unnecessary to do so."  *In re Sterling*, 543 B.R. 385, 392 (Bankr. S.D.N.Y. 2015).

33.      Therefore, this Court should determine the issues regarding stay relief without the need for an evidentiary hearing, and at a minimum, grant the Landlord relief from the automatic stay to continue the two *Yellowstone* actions and recover the Premises.

34.      To the extent that the Court determines that an evidentiary hearing is necessary, the Landlord respectfully requests that the Court direct the Debtor to produce its members for prompt depositions and to produce in advance of such deposition the documents that the Landlord has requested in subpoenas issued to Sarid Drory and Stephanie Schulman, which the Landlord's process server has been unable to serve.

## The Debtor's Other Arguments Are Without Merit

35.      Besides attempting to re-litigate its state court losses in this Court, the Debtor seeks to remain in the Premises without having to pay rent, based on its canard regarding the improper door and its contention that the Commencement Date Agreement should be reformed.  Justice Kornreich rejected the notion that the Debtor should be allowed to remain in the premises rent-free by requiring the payment of use and occupancy in granting the *Yellowstone* injunction in the First *Yellowstone* Action.  This Court should reject this notion as well.  The Debtor should not be able to contend simultaneously that it has a valid lease and cannot ignore the mandate of 11 U.S.C. § 365(d)(3) that all postpetition obligations be timely performed.  Moreover, in seeking an equitable remedy, the Debtor must be prepared to do equity.  *Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432, 437 (2d Cir. 2003).  The Debtor currently owes the Landlord $371,849.62, including use and

occupancy charges through October 2017.  A copy of the most recent open item

statement, dated September 28, 2017 which has not been sent to the Debtor, is annexed

hereto as Exhibit E.

36.    The Debtor also argues that termination based on the failure to maintain

insurance for workers' compensation and property insurance was inapplicable because

the restaurant was not open for business and there was no property to insure.

Nevertheless, Section 11.1(b)-(c) of the Lease requires both kinds of insurance.

Moreover, the certificates of insurance that the Debtor has produced, those attached as

Exhibits F and G to Declaration of Sarid Drory in support of the Debtor's response to the

Motion, do not comply with the this Lease provision.  Neither certificate names as

additional insureds the "Landlord, its managing agent, Mortgagee, Superior Landlord and

any other person designated by the Landlord" as required by Section 11.1.  In addition,

the property insurance of $125,000 (*see* Exhibit G to Sarid Drory Declaration) belies the

Debtor's contention that it has put millions of dollars of improvements into the Premises.

The requirement of property insurance in Section 11.1(b) of the Lease is for "an amount

equal to one hundred (100%) of full replacement value (with a deductible not exceeding

five thousand ($5,000) dollars) covering Tenant's Work (including improvements and

betterments . . .)."  As a result, the Debtor still has not provided the proper insurance

required by the Lease.

37.    The Debtor contends that the conditional limitation that permitted the

termination of the Lease for the insurance default is unenforceable, citing *Queens Blvd.*

*Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 205 (2d Cir. 1974).  But this Bankruptcy

Act case concerned a bankruptcy *ipso facto* clause that permitted the landlord to

terminate a lease upon bankruptcy. *Id.* at 203.  The other Bankruptcy Act case cited by

the Debtor, *In re M&M Transp. Co.*. 437 F. Supp. 821, 823 (S.D.N .Y. 1977), similarly

deals with a bankruptcy *ipso facto* clause.  The invalidation of *ipso facto* clauses in leases

has been codified in 11 U.S.C. § 365(e).  These cases do not render unenforceable

conditional limitation clauses in general.  The Debtor does not provide authority under

the Bankruptcy Code for the invalidation of non-*ipso facto* conditional limitation clauses

that are invoked prior to bankruptcy to terminate a lease.

   38. The Debtor's reliance on *1633 Broadway Mars Rest. Corp. v. Paramount*

*Grp., Inc. (In re Broadway Mars Rest. Corp.)*, 388 B.R. 490, 504 (Bankr. S.D.N.Y.

2008), is misplaced.  In that case, the purported conditional limitation, the construction of

a cooling tower, was incorporated into a stipulation in the debtor's first bankruptcy case,

which resulted in a confirmed plan, and the deadline to construct the cooling tower had

not expired at the time of the filing of the second bankruptcy case. *Id.* at 497.  Therefore,

there was no pre-bankruptcy termination based on such conditional limitation.  Moreover,

the Debtor does not take issue with the authorities cited in the Motion ¶ 45 that enforce

conditional limitation clauses that are triggered prior to bankruptcy.  As a result, the

Lease has terminated, and the automatic stay is inapplicable.  11 U.S.C. § 362(b)(10).

   39. The Debtor's contention that the *Sonnax* factors weigh in favor of the

Debtor is laughable.  The two *Yellowstone* actions would completely resolve the issue of

the continued vitality of the Debtor's lease, the First *Yellowstone* Action has been

pending since January 2017, and the two actions have resulted in multiple hearings and

orders.  The Second *Yellowstone* Action has resulted in denials of injunctions, which are

on appeal.  The state court is fully familiar with the remaining issues in the First

*Yellowstone* Action.  The Landlord has moved to vacate the *Yellowstone* injunction and

for a judgment of ejectment.  The issues are state law landlord-tenant issues.  Judicial

economy is not served by starting over from the beginning in this Court, which as

discussed above, may well be precluded from entertaining the merits.  If the Court does

not dismiss the Debtor's case or determine that the automatic stay is inapplicable, the

*Sonnax* factors mandate that stay relief be granted.

40.     The Debtor's unsupported contention that its first chapter 11 filing was not

a small business case should be rejected.  The Debtor argues that its first filing was an

emergency and that no schedules were filed.  Nevertheless, the first petition was filed

under penalty of perjury, and there is no declaration from the person signing the first

petition, Stephanie Schulman, that it contained an error.  That the Debtor's schedules in

the second bankruptcy case contain $7.4 million in liabilities is of no moment, because

there is no analysis of which liabilities are to insiders, such as the $4.5 million owed to

Stephanie Schulman, which are excluded in determining whether a debtor is a small

business, and which liabilities were incurred after the filing of the first petition.  The only

relevant evidence is that of the first petition, which establishes that the Debtor was a

small business at the time of its filing.  Consequently, the automatic stay is inapplicable

under 11 U.S.C. § 362(n)(1)(B).

### Conclusion

WHEREFORE, for the foregoing reasons, and for the reasons set forth in the

Motion, the accompanying declarations and the supplemental declaration of Denisse

Recinos, the Landlord respectfully requests that the Court grant its Motion for dismissal

of the bankruptcy case, pursuant to 11 U.S.C. § 1112(b), with a prohibition on re-filing,

pursuant to 11 U.S.C. §§ 105(a) and 349(a), and for a declaration that the automatic stay

does not prevent acts to recover possession of the premises occupied by the Debtor,

pursuant to 11 U.S.C. § 362(b)(10) and (n)(1)(B); or alternatively, (a) for relief from the

automatic stay, pursuant to 11 U.S.C. § 362(d),  (b) the appointment of a chapter 11

trustee, pursuant to 11 U.S.C. § 1104(a), or (c) conversion of the case to chapter 7,

pursuant to 11 U.S.C. § 1112(b); and that this Court grant the Landlord such other and

further relief as is just.

Dated: New York, New York
      October 2, 2017

                    BECKER, GLYNN, MUFFLY, CHASSIN &
                    HOSINSKI LLP

                    By:   */s/ Alec P. Ostrow*
                          Alec P. Ostrow
                          aostrow@beckerglynn.com
                          299 Park Avenue, 16th Floor
                          New York, NY  10171
                          Telephone: (212) 888-3033
                          Facsimile:  (212) 888-0255

                          *Attorneys for 387 Park South L.L.C.*

### List of Exhibits

| | |
|---|---|
| Exhibit A | Affidavit of Sarid Drory , sworn to January 6, 2017, submitted in First *Yellowstone* Action |
| Exhibit B | Laurence G. Jones, R.A. sworn to January 26, 2017, submitted in First *Yellowstone* Action |
| Exhibit C | Transcript of February 8, 2017 Hearing in First *Yellowstone* Action |
| Exhibit D | Verified Complaint, dated April 3, 2017 in First *Yellowstone* Action |
| Exhibit E | Landlord's Open Item Statement to Debtor, dated September 28, 2017 |