NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
In re:                                                  :
                                                        :    Chapter 11
                                                        :
ARTISANAL 2015, LLC,                                    :
                                                        :    Case No. 17-12319 (JLG)
                                                        :
               Debtor.                                  :
                                                        :
------------------------------------------------------- x

**MEMORANDUM OF DECISION GRANTING IN PART, AND DENYING IN
PART, MOTION OF 387 PARK SOUTH L.L.C. FOR DISMISSAL OF THE
BANKRUPTCY CASE WITH A PROHIBITION ON RE-FILING AND FOR A
DECLARATION THAT THE AUTOMATIC STAY DOES NOT PREVENT
ACTS TO RECOVER POSSESSION OF THE PREMISES OCCUPIED BY
THE DEBTOR; OR ALTERNATIVELY FOR (A) RELIEF FROM THE
AUTOMATIC STAY, (B) THE APPOINTMENT OF A CHAPTER 11
TRUSTEE, OR (C) CONVERSION OF THE CASE TO CHAPTER 7**

**A P P E A R A N C E S :**

BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
299 Park Avenue, 16th Floor
New York, New York 10171
By:    Alec P. Ostrow, Esq.
       Chester B. Salomon, Esq.
*Attorneys for 387 Park South L.L.C.*

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022
By:    Steven B. Eichel, Esq.
       A. Mitchell Greene, Esq.
*Proposed Attorneys for the Debtor*

-and-

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway, 22nd Floor
New York, New York 10036
By:    Kevin J. Nash, Esq.
*Proposed Special Litigation Counsel for Debtor/Plaintiff*

HON. JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE:

The sole asset of Artisanal 2015 (the "**Debtor**") is a Retail Lease dated October 5, 2015

with 387 Park Avenue LLC (the "**Landlord**"), as amended by a certain First Amendment of

Lease, dated September 9, 2016 (collectively, the "**Lease**"), for certain portions of the ground

floor and basement (the "**Premises**") of a building located at 387 Park Avenue South, New York,

New York (the "**Building**").  The Landlord contends, and the Debtor denies, that the Debtor is in

default under the Lease based upon its alleged failure to pay rent and maintain requisite

insurance coverage.  Prior to the commencement of this case, and in an effort to prevent the

Landlord from terminating the Lease based on those alleged defaults, the Debtor commenced

two actions in the New York State Supreme Court (the "**State Court**") – each addressing

different alleged Lease defaults – seeking a determination that it is not in default under the Lease

and that the Landlord cannot terminate the Lease based upon those alleged defaults.[1]  In each

case, the Debtor petitioned the State Court for a "*Yellowstone* injunction"[2] barring the Landlord

from terminating the Lease and preserving its rights to cure the alleged default pending the

resolution of that action.  The State Court issued a *Yellowstone* injunction in the first action

(predicated on the Debtor's alleged failure to pay rent), but on or about August 9, 2017, it denied

the Debtor's request to enjoin the Landlord from terminating the Lease based upon the Debtor's

alleged failure to maintain insurance coverage as required under the Lease.  Thereafter, on

August 14, 2017, the Landlord issued a Five (5) Day Notice of Termination to terminate the

---

[1]    Both State Court actions are pending before the Hon. Shirley Werner Kornreich, Supreme Court of New York, Commercial Division, New York, NY.

[2]    *See* n.9 *infra.*

1

Lease effective August 22, 2017.  On August 21, 2017, the Debtor unsuccessfully petitioned the

State Court to reargue the denial of the *Yellowstone* injunction.  Later that day (the "**Petition**

**Date**"), the Debtor commenced this voluntary case under chapter 11 of the Bankruptcy Code.

The matter before the Court is the Landlord's motion (the "**Motion**") for an order

pursuant to § 1112(b) of the Bankruptcy Code dismissing this chapter 11 case on the grounds

that the Debtor filed it in bad faith, with a prohibition on re-filing pursuant to §§ 105(a) and

349(a) of the Bankruptcy Code, and for a declaration that, pursuant to § 362(b)(10) and/or §

362(n)(1)(B) of the Bankruptcy Code, the automatic stay does not apply to prevent acts to

recover possession of the Premises occupied by the Debtor.  In the alternative, the Landlord

seeks relief from the automatic stay pursuant to § 362(d)(1) to go forward in the State Court

actions, and either the appointment of a chapter 11 trustee pursuant to § 1104(a) or § 1104(c) of

the Bankruptcy Code, or the conversion of the case to one under chapter 7 of the Bankruptcy

Code, pursuant to § 1112(b).[3]

The Debtor opposes the Motion.[4]  In addition, it has commenced an adversary proceeding

in this Court seeking a declaratory judgment that: (i) the Lease was not terminated pre-petition,

and remains property of the Debtor's estate; (ii) the Commencement Date (defined below) be re-

---

[3]     *See* Motion of 387 Park Avenue South L.L.C. for Dismissal of the bankruptcy Case with a Prohibition on Re-Filing and for a Declaration that the Automatic Stay Does Not Prevent Acts to Recover Possession of the Premises Occupied by the Debtor; or Alternatively for (A) Relief from the Automatic Stay, (B) the Appointment of a Chapter 11 Trustee, or (c) Conversion of the Case to Chapter 7 [ECF No. 9], ¶¶ 5-6.

[4]     *See* Response to Motion of 387 Park South L.L.C. for Dismissal of the Bankruptcy Case with a Prohibition of Re-Filing and for a Declaration that the Automatic Stay Does Not Prevent Acts to Recover Possession of the Premises Occupied by the Debtor; or Alternatively for (A) Relief from the Automatic Stay, (B) the Appointment of a Chapter 11 Trustee, or (C) Conversion of the Case to Chapter 7 [ECF No. 30] (the "**Debtor's Objection**").

In response to the Debtor's Objection, the Landlord filed the Reply of 387 Park South L.L.C. in Further Support of Its Motion for Dismissal of the Bankruptcy Case with a Prohibition on Re-Filing and for a Declaration that the Automatic Stay Does Not Prevent Acts to Recover Possession of the Premises Occupied by the Debtor; Or Alternatively for (A) Relief from the Automatic Stay, (B) the Appointment of a Chapter 11 Trustee, or (C) Conversion of the Case to Chapter 7 [ECF No. 34] (the "**Landlord's Reply**").

established as of March 6, 2017; and (iii) the Debtor's obligation to pay rent begins in January

2018, and the Debtor is entitled to credits and offsets for all rents previously paid. *See* Adv.

Proc. 17-01173, ECF No. 1 (the "**Bankruptcy Complaint**").  In that action, the Debtor is

essentially asking this Court to adjudicate the same issues that are pending before the State Court

in the *Yellowstone* Actions (defined below).

At its core, this is a single asset, two party case pitting the Debtor against the Landlord.

The Debtor is a repeat bankruptcy filer who commenced this and an earlier chapter 11 case as

part of its litigation strategy in addressing its many disputes with the Landlord arising out of its

alleged defaults under the Lease.  At bottom, in filing this case, the Debtor seeks to have this

Court stay the proceedings that the Debtor initiated and that are pending in the State Court—

some on appeal—and substitute its judgment for that of the State Court in regard to the matters at

issue therein.  In light of the totality of the circumstances, and for the reasons discussed below,

the Court denies the Landlord's motion to dismiss this case pursuant to §1112(b) of the

Bankruptcy Code, but grants the Landlord relief from the automatic stay pursuant to § 362(d)(1)

of the Bankruptcy Code to permit the *Yellowstone* Actions to proceed in State Court through

final judgments.  In accordance with the Landlord's unopposed request, the order granting stay

relief will not be subject to the 14-day stay of enforcement under Rule 4001(a)(3) of the Federal

Rules of Bankruptcy Procedure.  The Court denies the Landlord's request for a declaration that

pursuant to § 362(b)(10) and/or § 362(n)(1)(B) of the Bankruptcy Code, the automatic stay does

not apply to prevent acts by the Landlord to recover possession of the Premises.  Finally, the

Court defers consideration of the Landlord's request for the appointment of a chapter 11 trustee

pursuant to § 1104(a) or § 1104(c) of the Bankruptcy Code, or the conversion of the case to one

under chapter 7 of the Bankruptcy Code, pursuant to § 1112(b), pending an evidentiary hearing

3

on those matters.  Counsel are directed to contact Chambers to schedule a pre-hearing conference

on those matters with the Court.

JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and

(b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United

States District Court for the Southern District of New York, dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).  This

memorandum of decision constitutes the Court's findings of fact and conclusions of law pursuant

to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable here pursuant to Rules

7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

FACTS[5]

The Lease calls for the Debtor to construct and operate an upscale French bistro and

lounge at the Premises.  *See* Lease § 1.17 (Permitted Use).[6]  The agreement provides that a

condition precedent to the Landlord's delivery of possession of the Premises to the Debtor, and

thus the commencement of the Lease (i.e., the Lease "**Commencement Date**"), is that the

Landlord must "Substantially Complete" the "Landlord's Work" at the Premises.  *See* Lease §

1.5.[7]  Once in possession of the Premises, the Debtor has one-year to build out and open the

---

[5]    Except where noted, the relevant facts are generally not disputed, and are derived from the parties' respective pleadings and the record of the Debtor's bankruptcy cases before the Court.

[6]    Copies of the Lease (without exhibits) and the First Amendment of Lease are annexed to the Motion as Exhibits A and B.

[7]    Section 1.5 of the Lease defines "Commencement Date" as:

> [t]he date upon which possession of the Premises is delivered to Tenant, with all of Landlord's Work [as defined and described in § 11.1 of the Lease, and Ex. B to the Lease, respectively] Substantially Completed [as defined in § 2.7 of the Lease], subject to the provisions of Section 2.7 [of the Lease],

4

restaurant—*see id.* § 1.16 (Opening Date); § 1.30 (Tenant's Work Completion Date)—although

its obligation to pay fixed rent does not begin until the date that is 330 days after the

Commencement Date (the "**Fixed Rent Commencement Date**").  *Id.* § 1.9.  That is also the date

on which the 15-year term under the Lease begins to run.  *Id.* § 1.6.

        Article 16 addresses "Defaults" under the Lease.  In part, it provides that the Debtor's

failure to pay rent when due is a default if it continues for seven (7) days following the

Landlord's notice of the default, *id.* § 16.1(a), and that the Debtor's failure to comply with

certain other terms of the Lease is a default if it continues for twenty (20) days following the

Landlord's default notice.  *Id.* § 16.1(c).  Those terms include the Debtor's obligations (i) to

remove mechanics' liens or financing statements filed by its licensees, employees, contractors or

agents against the Landlord and the Building, *id*. § 5.4, and (ii) to obtain such insurance as shall

be required by the Landlord.  *Id*. § 11.1.  The Lease also includes a "Conditional Limitation"

clause that authorizes the Landlord to terminate the Lease, in the event of a default under § 16.1,

on no less than five (5) days' notice to the Debtor.[8]  *Id*. § 16.2.

        Pursuant to that certain "Commencement Date Agreement" dated November 25, 2015,

the Debtor and the Landlord stipulated that under the Lease: (i) the Commencement Date is

December 1, 2015; (ii) the Fixed Rent Commencement Date is October 26, 2016; and (iii) the

Lease Expiration Date is September 30, 2031.  *See* Motion, Ex. C (Commencement Date

Agreement).  The Landlord maintains that following the Fixed Rent Commencement Date, the

---

        provided that [387 Park South] shall have delivered not less than five (5) days' prior notice to
        [Debtor] informing [Debtor] that Landlord's Work is Substantially Completed and the Premises are
        available to [Debtor] for possession.

[8]    The Debtor's obligations under the Lease are personally guaranteed by the Debtor's principals—Sarid Drory
("**Drory**") and Stephanie Schulman ("**Schulman**").  *See* Motion ¶ 8.

Debtor was almost immediately in default under the Lease.  In December 2016, the Landlord

served the first of five "Notices to Cure Default" pursuant to the Conditional Limitation

provisions of § 16.2 of the Lease, seeking to terminate the Lease based upon the Debtor's alleged

defaults thereunder.  Those alleged defaults included the failure to pay rent, the filing of

mechanics' liens against the Landlord and the Building, and the failure to maintain insurance

coverage.

Specifically, on December 22, 2016, the Landlord served the Debtor with a Notice to

Cure Default (the "**First Notice to Cure Default–Rent**") based upon the Debtor's alleged failure

to pay rent, additional rent, and other charges under the Lease totaling $145,359.17.  The notice

provided that unless the Debtor cured the default by January 9, 2017, the Landlord would elect to

terminate the Lease.  *See* Motion, Ex. D (First Notice to Cure Default–Rent).  In response to that

notice, on January 6, 2017, the Debtor commenced an action in the State Court (the "**First**

*Yellowstone* **Action**"),[9] seeking to obtain a so-called "*Yellowstone* injunction" tolling the cure

period under the First Notice to Cure Default–Rent, and enjoining the Landlord from terminating

the Lease.[10]  That day, at the Debtor's request, the State Court issued an Order to Show Cause

with a temporary restraining order pending a February 8, 2017 hearing on the Debtor's motion

for a *Yellowstone* injunction.  *See* Motion ¶ 9; Ex. E (Order to Show Cause, Index No.

650103/17).  Following the February 8th hearing, the State Court granted the *Yellowstone*

injunction (the "**First** *Yellowstone* **Injunction**"), on the condition that the Debtor pay to the

---

[9]    A "*Yellowstone*" action is an action based on the New York case *First Nat'l Stores v. Yellowstone Shopping Ctr.*, 21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (N.Y. 1968).  "The purpose of a *Yellowstone* injunction is to allow a tenant confronted by a threat of termination of the lease to obtain a stay tolling the running of the cure period so that after a determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold." *Long Island Gynecological Service, P.C. v. 1103 Steward Ave. Assocs. Ltd. P'ship*, 224 A.D. 2d 591, 593, 638 N.Y.S. 2d 959 (2d Dep't 1996) (internal citations omitted).

[10]    *See Artisanal 2015 v. 387 Park South L.L.C.*, Index No. 650103/2017.

6

Landlord the rent due for January and February 2017 and to pay use and occupancy during the
pendency of those proceedings, "without prejudice to either side." *See* Motion ¶ 10; Ex. F
(2/8/17 Order Granting Injunction, Index No. 650103/17).

By order dated February 21, 2017, the State Court granted the motion of Greenberg
Traurig, LLP, the Debtor's counsel in the First *Yellowstone* Action, for permission to withdraw
as Debtor's counsel, and in doing so, stayed proceedings in that action for a period of 30 days
(except with regard to the payment of use and occupancy) to permit the Debtor to retain new
counsel, and scheduled a preliminary conference for March 23, 2017. Motion ¶ 13; Ex. I
(2/21/17 Order).  Thereafter, the Debtor retained David Rozenholc Associates (the "**Rozenholc
Firm**") as its new counsel in the First *Yellowstone* Action and subsequently filed a Verified
Complaint dated April 3, 2017 in that action (the "**First *Yellowstone* Complaint**"), seeking: (i)
an injunction against the termination of the Lease; (ii) a declaratory judgment that the Debtor is
not in default under the Lease; (iii) damages in excess of $5 million based upon the Landlord's
alleged (a) failure to deliver the Premises in legal condition, and (b) breach of the implied
covenant of good faith and fair dealing; (iv) an extension of the Commencement Date and a rent
abatement pending the Landlord's completion of certain "Landlord's Work" under the Lease;
and (v) damages, to be determined a trial, suffered as a result of allegedly being improperly
charged for additional space and being deprived of substantial square footage at the Premises.
*See* Landlord's Reply, Ex. D (First *Yellowstone* Complaint, Index No. 650103/17).  Central to
that complaint is the Debtor's assertion that the Commencement Date Agreement is not
enforceable because the Landlord misrepresented that the Landlord's Work was "Substantially
Completed" as of December 1, 2015.  The Debtor also contends that although it commenced its
"Tenants' Initial Work" under the Lease and expended approximately $1.2 million in doing so,

the Landlord's alleged misconduct prevented it from completing the work.  *Id.* ¶ 13.

Specifically, the Debtor alleges that in or around June 2016, it "became aware for the first time

that one of the two principal entranceways to the Premises located on Park Avenue South and the

only doorway to the retail portion of the Premises [(the "Door")], did not appear in the records of

the New York City Department of Buildings (the "DOB"). . . ."  *See* First *Yellowstone* Complaint

¶ 14.  The Debtor asserts that: (i) the Door was illegal; (ii) the Landlord added the Door prior to

delivering the Premises to the Debtor; (iii) the Landlord misrepresented that it had DOB approval

of the Door; and (iv) that Landlord did not get DOB approval of the Door until March 6, 2017.

*See id.* ¶¶ 14-18.  It contends that until March 6, 2017, it "had been prohibited and prevented

from finalizing its design plans and performing its buildout/improvements of the Premises[.]"

*Id.* ¶ 19.  It alleges that the "Landlord's Work" includes installing the Door and that, as such, the

Landlord failed to deliver the Premises to the Debtor with "Landlord's Work Substantially

Completed" on December 1, 2015.  *Id.* ¶¶ 23, 24. Thus, in substance, the Debtor contends that

the Commencement Date under the Lease is the date that is 330 days after March 6, 2017, not

December 1, 2015, as set forth in the Commencement Date Agreement.  From that, the Debtor

contends that it is not in default for failing to pay rent, is entitled to an extension of the

Commencement Date, and is entitled to a credit for the rent it had paid to date under the Lease.

*See id.* ¶¶ 39, 49-50.

On April 21, 2017, the Landlord filed an answer to the First *Yellowstone* Complaint, and

on July 7, 2017, the Landlord moved the State Court for an order vacating the First *Yellowstone*

Injunction and granting a judgment of ejectment against the Debtor.  By order dated July 11,

2017, the State Court scheduled the hearing on the Landlord's motion for August 9, 2017.  *See*

Motion ¶ 23; Ex. P (Order Scheduling August 9th Hearing).  That day, the Rozenholc Firm

moved the State Court for an order authorizing it to withdraw as Debtor's counsel in the First

*Yellowstone* Action and the court scheduled the hearing for July 26, 2017. In doing so, the court

also stayed all proceedings in that action for 30 days, except for the payment of use and

occupancy by the Debtor.

While the First *Yellowstone* Action was proceeding in the State Court, and on or about

January 25 and February 1, 2017, the Landlord served Notices to Cure Defaults on the Debtor

predicated on the filing of mechanics' liens by Joseph Kleinman Architect (the "**Second Default**

**Notice to Cure–Kleinman**") and JSP Electrical Contracting Corp. (the "**Third Notice to Cure**

**Default–JSP**") in the sums of $104,835.25 (the "**Kleinman Lien**") and $16,900 (the "**JSP**

**Lien**"), respectively. *See* Motion ¶ 14; Ex. J (Second Notice to Cure Default–Kleinman); ¶ 15;

Ex. K (Third Notice to Cure Default–JSP). The notices called for the Debtor to cure the

Kleinman and JSP Liens by March 9 and 16, 2017, respectively. *See id.* On March 9, 2017, the

Debtor attempted to cure the Kleinman Lien by tendering a certified check to the Landlord,

payable to "TF Cornerstone, Inc." The Landlord rejected the check and purported cure on the

grounds that the Lease and Second Notice to Cure Default–Kleinman provided that the

mechanic's lien had to be removed by bonding or payment to the lienor. *See* Motion ¶ 16. The

parties were unable to reach agreement on an extension of the cure deadline under the Second

Notice to Cure Default–Kleinman. This time, in response to the alleged Lease defaults, the

Debtor did not seek relief in the State Court. Rather, on March 9, 2017 at 9:58 p.m., the Debtor

filed a "bare-bones" petition in this Court commencing a case under chapter 11 of the

Bankruptcy Code. *See In re Artisanal 2015, LLC*, Case No. 17-10570-MKV [ECF No. 1] (the

"**First Bankruptcy Case**"). That case was short-lived because soon after it commenced the

case, the Debtor was able to bond the Kleinman and JSP Liens, and thereby cure the Lease

9

defaults. *See* Motion ¶ 18, n.5.  On March 16, 2017, the Debtor moved the Court, by order to

show cause, for an order dismissing the First Bankruptcy Case. *See* Debtor's Motion Pursuant to

Sections 105(a), 305(a) and 1112(b) of the Bankruptcy Code for Entry of an Order Dismissing

Chapter 11 Case (Case No. 17-10570, ECF No. 7); Order to Show Cause to Schedule an

Emergency Hearing for Motion for Motion to Dismiss Chapter 11 Case (Case No. 17-10570,

ECF No. 8).  The Landlord maintains that the First Bankruptcy Case was filed in bad faith and,

as such, did not oppose dismissing the case.  However, it contended that the dismissal should be

with prejudice to the Debtor's right to file another bankruptcy case for two years. *See*

Landlord's Limited Opposition to Debtor's Motion to Dismiss Chapter 11 Case for Purposes of

Limiting Debtor's Ability to Re-File for Chapter 11 Relief [Case No. 17-10570, ECF No. 11]

(the "**Limited Objection**").  Briefly, in support, the Landlord asserted that the Debtor never

intended to prosecute the case and plainly filed it solely to obtain the benefit of the automatic

stay as an eleventh hour attempt to obtain an extension of the time to cure the Kleinman Lien, as

evidenced by the fact that the Debtor made no effort to comply with the filing requirements

associated with the commencement of a case set forth in the Bankruptcy Rules and this Court's

Local Rules. *See id.* ¶¶ 11-12.[11]  Moreover, it contended that the facts of the case fell within the

---

[11]    The Landlord contended, as follows:

> Notwithstanding the requirements of Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 1007-1, the Debtor's petition was not accompanied by a list of the Debtor's creditors. No such list has been filed. Also notwithstanding the requirements of Local Bankruptcy Rule 1007-2, the Debtor's chapter 11 petition was not accompanied by an affidavit setting forth, among other things, the nature of the debtor's business and the reason for filing chapter 11, the names of the individuals who comprise the debtor's senior management and a summary of their relevant responsibilities and experience, and if the business is to continue, the estimated monthly payroll and cash receipts and disbursements. No such affidavit has been filed. Indeed no effort has been made to prosecute the chapter 11 case by filing the appropriate documentation, such as a list of creditors, the list of the 20 largest creditors, the schedules and statement of financial affairs, or even an application to retain bankruptcy counsel.

Limited Objection ¶ 11.

four corners of *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304

(2d Cir. 1997), the leading case for bad faith filings in the Second Circuit—namely, that the case

was essentially a two party dispute, the Debtor had no cash flow and could not meet its expenses,

the Debtor's sole asset is the Lease, which is subject to litigation in the State Court, and the

Debtor has no employees. *See id.* ¶ 14.  The Landlord maintained that the Debtor's bad faith was

further evidenced by the Debtor's failure to prosecute the First Bankruptcy Case.  Ultimately, the

Court granted the Debtor's motion and overruled the Landlord's Limited Objection.  *See* Order

Granting Motion to Dismiss Case (Case No. 17-10570, ECF No. 14).

By May, the Debtor was again allegedly in default under the Lease.  On May 9, 2017, the

Landlord served the Debtor with a notice to cure defaults based upon the Debtor's alleged failure

to provide the Landlord with, among other things, certifications of insurance, policies and/or

documentation evidencing that the Debtor has continuously maintained the insurance required by

the Lease (the "**Fourth Notice to Cure Default–Insurance**").  *See* Motion, Ex. M (Fourth

Notice to Cure Default–Insurance).  On May 17, 2017, the Landlord served the Debtor with

another notice to cure default under the Lease (the "**Fifth Notice to Cure Default–AC**

**Penguin**").  This time it was based upon the filing of a mechanics' lien against the Building by

AC Penguin Prestige Corp. in the amount of $104,520.00; the notice fixed a cure deadline of

June 26, 2017.  *See* Motion ¶ 21; Ex. N (Fifth Notice to Cure Default–AC Penguin).[12]

By agreement, the parties fixed the cure deadline under the Fourth Notice to Cure

Default–Insurance as June 14, 2017.  That day, in response to that notice, the Debtor commenced

---

[12]    The Landlord believes that the vendor has withdrawn this lien based on the Debtor's promise to pay, but contends that the vendor remains unpaid, and may file the lien again.  The Landlord advises that it has taken no further action to terminate the Lease based on the Fifth Notice to Cure Default–AC Penguin.  *See* Motion ¶ 21, n.6.

a second action in the State Court (the "**Second *Yellowstone* Action**")[13] to obtain a *Yellowstone* injunction (the "**Second *Yellowstone* Injunction**") tolling the cure period under the Fourth Notice to Cure Default–Insurance and preventing the Landlord from terminating the Lease.  *See* Second *Yellowstone* Complaint, Index No. 653238/2017 [ECF No. 40].  The State Court issued an Order to Show Cause with a temporary restraining order pending a hearing on the Debtor's motion for a *Yellowstone* injunction which the State Court scheduled for July 26, 2017.  In the Second *Yellowstone* Complaint, the Debtor seeks: (i) a declaration that it is not in default of the Lease in that it has already fully complied with the Notice to Cure; (ii) a temporary restraining order, a preliminary injunction, a permanent injunction, and a *Yellowstone* inunction, tolling the period that the Debtor may cure until the merits of the complaint are adjudicated; and (iii) an order vacating, striking, and nullifying the Notice to Cure in its entirety.  In essence, as support for that relief, the Debtor asserts that all of the insurance-related defaults alleged in the Fourth Notice to Cure Default–Insurance have been cured in that: (a) the lapsed period under its commercial general liability policy was deemed retroactively effective; and (b) it has procured prospective property insurance and Workers' Compensation/Employers' Liability insurance. The Debtor also maintains that although it has obtained the insurance, it was not required to do so because it had no employees and had not opened the restaurant.  *See* Second *Yellowstone* Complaint ¶¶ 43-64.

On August 9, 2017, the State Court held a hearing on the Rozenholc Firm's motion to withdraw as counsel in the First *Yellowstone* Action and the request for the *Yellowstone* injunction in the Second *Yellowstone* Action.  (The First and Second *Yellowstone* Actions collectively will be referred to as the "***Yellowstone* Actions**" or the "**State Court Actions**.")  The

---

[13]    *See Artisanal 2015, LLC v. 387 Park South L.L.C.*, Index No. 653238/2017.

State Court granted the Rozenholc Firm's motion because substitute counsel had appeared for the Debtor in both *Yellowstone* Actions, but denied the Debtor's request for a Second *Yellowstone* Injunction.  During that hearing, the State Court found that the Debtor had "unclean hands" and had committed bad acts, as evidenced by, among other things: (i) the Debtor's gamesmanship in delaying the proceedings by substituting multiple attorneys in the *Yellowstone* Actions, (ii) the Landlord's issuance of four additional notices to cure default based upon the Debtor's violations under the Lease, as well as the Debtor's failure to tender rent properly, notwithstanding the stipulation to do so as a condition of granting the First *Yellowstone* Injunction; (iii) the filing of three mechanics liens against the Premises arising out of the Debtor's build-out of the Premises, and the Debtor's admission that the First Bankruptcy Case had been a frivolous filing to extend the deadline to cure the mechanic's lien violation and stay the termination of the Lease; (iv) the issuance of two stop orders by the DOB with regard to construction work at the Building; and (v) allegations that Drory had been verbally abusive towards the Landlord's employees and had forged a letter, purportedly from the Landlord, on the Landlord's letterhead, to a third party, stating that the Debtor was current with rent obligations under the Lease.  *See* Motion ¶ 27; Ex. U (8/9/17 Hr'g Tr.).

The next day, the State Court entered an order denying the request for the Second *Yellowstone* Injunction, which states, in part, that:

> this motion is denied both due to the unclean hands of the tenant whose repeated bad acts and gamesmanship militate in favor of denying equitable relief.  Moreover, the plaintiff-tenant's failure to obtain the required insurance, even until today, also requires denial of this Yellowstone application.  All stays are lifted.

Motion, Ex. V (Amended Order dated 8/8/17).[14]  The Debtor has appealed that Order.  *See*

Debtor's Objection ¶ 38.  In the wake of that ruling, and on or about August 14, 2017, the

Landlord issued a Five (5) Day Notice of Termination (the "**Notice of Termination**"),

terminating the Lease effective August 22, 2017.  *See* Motion, Ex. X (Notice of Termination).

On August 21, 2017, in the Second *Yellowstone* Action, the Debtor filed a motion with a

proposed order to show cause seeking, among other things, to renew and/or reargue the denial of

its prior motion for a *Yellowstone* injunction and to toll the Landlord's termination of the Lease.

*See* Motion, Ex. Y (Proposed Order to Show Cause).  That day, after hearing the Debtor and the

Landlord, the State Court denied the motion.  *See* Motion, Ex. Z (Order Denying Renewal and

Reargument dated 8/21/17).  The Debtor has appealed that Order.  *See* Debtor's Objection ¶ 38.

Thereafter, the Debtor commenced this case, thereby staying the prosecution of the *Yellowstone*

Actions.[15]  *See* Motion ¶ 29; Debtor's Objection ¶ 41.

　　In its bankruptcy petition, signed by Drory as the managing member,[16] the Debtor listed

its estimated liabilities as $1,000,001–$10 million, and estimated assets as $10,000,001–$50

million.  The Debtor's bankruptcy schedules, subsequently filed on September 5, 2017 (*see* ECF

No. 12), reflect that other than $250 of cash on hand, the Debtor's sole asset is the Lease, valued

at $15,000,000, along a security deposit under the Lease of $541,667.00.  *See* Schedule A/B.

The Debtor's schedules and the LBR 1007-2 Affidavit of Drory also show that the Lease is the

subject of the Debtor's only legal actions—the two *Yellowstone* Actions before the State Court

---

[14]    The Landlord notes that the Amended Order's date of August 8, 2017 is a clerical error, and should be "August
10, 2017" instead because the hearing on the Second *Yellowstone* Injunction was held on August 9, 2017.

[15]    At the time of the filing, a status conference for both *Yellowstone* Actions in the State Court had been scheduled
for September 13, 2017, and the Landlord's motion for a vacatur of the First *Yellowstone* Injunction and judgment of
ejectment in the First *Yellowstone* Action was still pending.  *See* Motion ¶ 29.

[16]    The First Bankruptcy Case petition was signed by Schulman as the Managing Member.

and a mechanic's lien action asserted by JSP Electrical Contracting Corp., also pending in the

State Court.  *See* Debtor's Statement of Financial Affairs for Non-Individuals Filing for

Bankruptcy ("SOFA").  From the Debtor's list of creditors with the 20 largest claims, the

Debtor's principal creditors consist of contractors, attorneys, law firms, utility companies, and

various investors/individuals.  Schulman is listed as the largest creditor with a general unsecured

claim of $4.5 million.  She is also listed as a member of the Debtor with a 95% equity interest,

along with members Drory (with a 4% equity interest) and Shimon Pariente (with a 1% equity

interest).  *See* Debtor's SOFA; List of Equity Holders.  Finally, the Debtor's schedules, SOFA,

and the LBR 1007-2 Affidavit of Drory confirm that the Debtor has not opened the restaurant at

the Premises (which is still unfinished and raw) and has no employees or cash flow.

On September 28, 2017, the Debtor filed the Bankruptcy Complaint herein against the

Landlord, seeking, in effect, the same relief it is seeking in the *Yellowstone* Actions in the State

Court.  In so doing, the Debtor essentially asserts the same claims in the Bankruptcy Complaint

against the Landlord, and bases its claims upon the same factual allegations, as in the First and

Second Yellowstone Complaints—*to wit*, that (i) the Landlord had not "Substantially

Completed" "Landlord's Work" and delivered possession of the Premises to the Debtor by the

Commencement Date, which was agreed to by the Debtor only because it had been misled by the

Landlord's misrepresentations as to the legality of the second "Door," and (ii) that the Debtor

was not in default of its insurance obligations under the Lease because it had obtained the

necessary insurance coverage retroactively and/or the other insurance coverage under the Lease

was not applicable.  Specifically, in the Bankruptcy Complaint, the Debtor seeks a declaratory

judgment that:

15

(i)     The Lease was not terminated prior to the bankruptcy and remains property of the estate because the Landlord's termination based upon the alleged insurance default was invalid. *See* Bankruptcy Complaint ¶¶ 55, 63.

(ii)    The Commencement Date under the Lease should be re-established as March 6, 2017. *See id.* ¶ 63.

(iii)   The Fixed Rent Commencement Date under the Lease should be re-established as January 2018, and that it is entitled to credits for rent already paid under the Lease. *See id.* ¶¶ 39, 59, 63.

The adversary proceeding is currently pending before the Court. The Landlord has not answered or moved with respect to the Bankruptcy Complaint.

DISCUSSION[17]

As a preliminary matter, the Debtor argues that the Court must deny the Landlord's motion to dismiss the case as "premature" since the case is in its early stages and "a possibility of reorganization" exists. *See* Debtor's Objection ¶ 44. The Debtor seems to contend that it is entitled to some unquantified period of time, or a "breathing space" in which to go forward with its case, unburdened by a motion to dismiss, akin to the exclusivity period under § 1121 of the

---

[17]   In its objection to the Motion, the Debtor asserted that the Court should hold an evidentiary hearing on the Motion "based on numerous material facts that are in dispute." *See* Debtor's Objection ¶ 4. At the hearing on the Motion the Landlord conceded that the Debtor is entitled to an evidentiary hearing on the Landlord's request for (i) the appointment of a chapter 11 trustee, and (ii) the conversion of the case to one under chapter 7 of the Bankruptcy Code. Accordingly, the Court deferred consideration of those matters. However, counsel maintained that the Court could proceed on the other matters raised in the Motion, based solely upon the papers submitted in support of, and in opposition to, the Motion. The Debtor's counsel did not challenge that position. That is how the Court proceeded, and heard argument on the Landlord's request to dismiss the case and for stay relief, based upon the facts set forth in the record. In any event, where, as here, the material facts relevant to the Landlord's contention that this case must be dismissed pursuant to § 1112(b) are not in dispute, there was no need for the Court to conduct an evidentiary hearing. *See generally C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997) (noting that the bankruptcy court's election to decide the bad faith issue without a formal evidentiary hearing was within its discretion). *Cf. Gordon v. Tese-Milner (In re Gordon)*, No. 16 Civ. 5387 (ER), 2017 WL 3531554, at *6 (S.D.N.Y. Aug. 17, 2017) (noting that the bankruptcy court did not abuse its discretion in denying an evidentiary hearing on a motion for sanctions where there were no disputed facts or issues of credibility to decide.) Likewise, the facts relevant to the Court's determination of the applicability of the automatic stay under §§ 362(b)(10) and 362(n) are not in dispute, and it is well-settled that lift stay motions are summary proceedings that do not require an evidentiary hearing. *See, e.g.*, *In re Sterling*, 542 B.R. 385, 392 (Bankr. S.D.N.Y. 2015); *Froman v. Fein (In re Froman)*, 566 B.R. 641, 654 (S.D.N.Y. 2017).

16

Bankruptcy Code.  There is no merit to that assertion.  The cases that the Debtor cites in support

of that assertion are inapposite.[18]  More significantly, as discussed below, neither § 1112(b), nor

the well-settled standards governing motions to dismiss applicable here, and set forth in *C-TC*

*9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304 (2d Cir. 1997) ("***C-***

***TC***"), limit or otherwise condition the timing of the filing of motions to dismiss.

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a case under

chapter 11.  It states, in part, that:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss
> case under this chapter, whichever is in the best interests of creditors and the estate,
> for cause unless the court determines that the appointment under section 1104(a) of
> a trustee or examiner is in the best interests of creditors and the estate.

---

[18]   As support, the Debtor cites *In re Cardinal Congregate I*, 113 B.R. 371 (Bankr. S.D. Ohio 1990) and *In re Foundry of Barrington P'ship*, 129 B.R. 550 (Bankr. N.D. Ill. 1991).  In *Cardinal Congregate*, the debtor owned a congregate housing facility for senior citizens that, as of the commencement of its chapter 11 case, was the subject of a state court foreclosure action brought by the debtor's mortgagee.  113 B.R. at 373.  The mortgagee moved the bankruptcy court for an order dismissing the case under §§ 1112(b)(1)-(3) of the Bankruptcy Code and on the grounds that the case was filed in bad faith and, alternatively, for stay relief under § 362(d).  *Id.* at 374.  As relevant to this case, in denying the mortgagee's request to dismiss the case on the grounds of the debtor's "bad faith" in filing it, the court applied the factors enunciated by the Sixth Circuit in *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985).  Those factors are: (i) whether the debtor has any assets; (ii) whether the debtor has an ongoing business to reorganize, and (iii) whether there is a reasonable probability of a plan being proposed and confirmed.  113 B.R. at 375.  The court found that the first two criteria were met.  *Id.*  On the issue of whether the debtor had shown that there was a "reasonable probability" of a plan being confirmed, the court found that because the exclusive period had not run, and the debtor had not submitted a plan, that last issue "would be more appropriately addressed at a later time."  *Id.*  The case is inapposite since, as discussed below, in this Circuit, the "probability of a plan being proposed and confirmed" is not a factor relevant to the determination of whether to dismiss a case on the grounds that it was filed in bad faith.

For a similar reason, the Debtor misplaces its reliance on *In re Foundry of Barrington Partnership*.  There, in assessing whether the debtor had filed its case in good faith, the court was "primarily concerned with . . . whether reorganization is the proper course of action in a particular debtor's case."  129 B.R. at 555 (internal quotations and citations omitted).  Based upon the evidence submitted, the court found that it was not a foregone conclusion that the debtor could not reorganize, and, for that reason, denied the secured creditor's motion to dismiss the case on the grounds that it was filed in bad faith.  *Id.* at 556-57.  Like *Cardinal Congregate*, *Barrington Partnership* relied on a factor that is not relevant to this Court's assessment of the merits of the Landlord's motion to dismiss.  It provides no support for the Debtor's opposition to the Motion.

11 U.S.C. § 1112(b)(1).  Subsection (b)(4) sets forth sixteen examples of "cause" for relief under

§ 1112(b).  "It is important to note that this list is illustrative, not exhaustive." *C-TC,* 113 F.3d at

1311.  Although "bad faith" is not among the examples listed therein, "[i]t is well settled that the

filing of a bankruptcy petition in bad faith constitutes 'cause' for dismissal or conversion of a

case under the Bankruptcy Code section 1112(b)."  *In re Ancona,* No. 14-10532, 2016 Bankr.

LEXIS 4114, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016); *In re Kaplan Breslaw Ash, LLC*, 264 B.R.

309, 334 (Bankr. S.D.N.Y. 2001) ("Cause, for either dismissal or relief from the stay, may be

found based on unenumerated factors, including 'bad faith[.]'").  *See also In re Reyes*, No. 14-

13233, 2015 WL 4624156, at *4 (Bankr. S.D.N.Y. Aug. 4, 2015) (noting that under § 1112(b),

"the court may convert or dismiss a case that was filed in bad faith."); *In re Schur Mgmt. Co.,*

*Ltd.,* 323 B.R. 123, 127 (Bankr. S.D.N.Y. 2005) ("It is not contested . . . that there exists a

general good faith requirement under which Chapter 11 petitions can be dismissed for having

been filed in bad faith.").  The rationale for dismissing a case filed in bad faith "is that if a

petition is not filed in good faith, it is an abuse of judicial process or of the jurisdiction of the

bankruptcy court."  *In re Kingston Square Assocs.,* 214 B.R. 713, 724 (Bankr. S.D.N.Y. 1997)

(citations omitted).  This Court "has wide discretion to determine if cause exists [under

§1112(b)] and how to ultimately dispose of the case."  *In re Gucci*, 174 B.R. 401, 404 (Bankr.

S.D.N.Y. 1994).

A petition is filed in bad faith "if it is clear that on the filing date there was no reasonable

likelihood that the debtor intended to reorganize and no reasonable probability that it would

eventually emerge from bankruptcy proceedings."  *Baker v. Latham Sparrowbush Assocs. (In re*

*Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991); *accord In re General Growth*

*Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (noting that "'[t]he standard in this Circuit

18

is that a bankruptcy petition will be dismissed if *both* objective futility of the reorganization

process *and* subjective bad faith in filing the petition are found.'") (quoting *In re Kingston*

*Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).  The moving party bears the burden

of establishing "cause" under § 1112(b).  *See, e.g.*, *In re Adbrite Corp.,* 290 B.R. 209, 214

(Bankr. S.D.N.Y. 2003); *In re Pulp Finish 1 Co*., 12-13774, 2013 WL 5487933, at *1 (Bankr.

S.D.N.Y. October 2, 2013).  "Once the movant has met both the objective and subjective prongs,

a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good

and sufficient reasons why the relief should not be granted.'"  *Squires Motel, LLC v. Gance,* 426

B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon Enters., Inc.,* 39 B.R. 919, 921 (Bankr. C.D.

Cal. 1984)).  That is to say that the "debtor must demonstrate that 'unusual circumstances' exist

establishing that 'dismissal is not in the best interests of creditors and the estate.'"  *Id*. at 35

(quoting 11 U.S.C. § 1112(b)(1)-(2)).

      The objective futility standard "is designed to ensure that the debtor actually has a

potentially viable business in place to protect and rehabilitate.  Lacking this, the chapter 11 case

has lost its *raison d'etre.*"  *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200

B.R. 514, 520 (Bankr. S.D.N.Y. 1996) (citation omitted).  The Debtor contends that the Lease

has significant value and explains that its strategy in filing the case is that it will assume and

assign the Lease (at a premium), and distribute the Lease assignment proceeds in payment of the

claims of its creditors, pursuant to a chapter 11 plan that will call for the Debtor to open a new

restaurant at a different location.  *See* Debtor's Objection ¶ 45.  In contrast, the Landlord

contends that the Lease is of no value to the Debtor because it has terminated in accordance with

the conditional limitation provisions of § 16.2 of the Lease.  As such, it seeks to move forward in

the *Yellowstone* Actions and eject the Debtor from the Premises.  Section 365(c) of the

19

Bankruptcy Code prohibits a debtor from assuming a lease of nonresidential real property that

"has been terminated under applicable nonbankruptcy law prior to the order for relief." 11

U.S.C. § 365(c). The Lease is the Debtor's sole asset. In light of the Debtor's proposed

restructuring plan, a threshold matter for the Court to consider in assessing whether the Debtor's

resort to chapter 11 is "objectively futile" is the nature and extent of the Debtor's interest in the

Lease.

A "conditional limitation" is a lease clause that "clearly provides that upon the

occurrence of an event the lease shall expire as if the lease by its terms had been limited to that

time[.]" 2 J. Rasch, *New York Landlord and Tenant* § 752 (2d ed. 1971). For these purposes,

"[i]t is immaterial whether the event is an objective contingency, or an event set in motion by the

landlord, or an event which depends upon the volition of the landlord." *Id.* It is sufficient if the

clause has "the effect of definitely fixing an earlier date for the expiration of the lease than the

original term prescribed by the lease . . . ." *Id. See also In re Yachthaven Rest., Inc.*, 103 B.R.

68, 74 (Bankr. E.D.N.Y. 1989) ("A conditional limitation is a term of art which can only be

created by precise language and the words actually used by the parties are given paramount

importance and override their intent."). There is no dispute that § 16.2 of the Lease creates a

conditional limitation, and that if properly exercised, among other things, the term of the Lease

"shall expire and come to an end on the date set forth in that notice as if said date were the date

originally fixed in this lease as the Expiration Date[.]" Lease § 16.2.[19] The automatic stay under

---

[19]    Section 16.2 is labelled "Conditional Limitation" and provides, as follows:

> If a default occurs, this lease is subject to the conditional limitation that Landlord may, at any time,
> give notice to Tenant that this lease shall terminate on the date specified in that notice, which date
> shall not be less than five (5) days after Landlord gives such notice to Tenant. If landlord gives such
> notice, this lease and the Term shall expire and come to an end on the date set forth in that notice as
> if said date were the date originally fixed in this lease as the Expiration Date and Tenant shall quit
> and surrender the Premises to Landlord (but Tenant shall remain liable as provided in this lease).

§ 362(a) of the Bankruptcy Code "does not toll a time limitation."  *In re Realty Policy Corp.*, 242

B.R. 121, 126 (S.D.N.Y. 1999), *aff'd* 213 F.3d 626 (2d Cir. 2000).  Thus, it is settled that the

stay does not extend the life of a lease or toll the running of time under a lease.  *See In re*

*Margulis*, 323 B.R. 130, 133 (Bankr. S.D.N.Y. 2005) (stating that the stay does not stop or toll

the natural termination of a contract or lease in accordance with its own terms "as long as the

termination does not depend on a post-petition 'act.'" (citing *Moody v. Amoco Oil Co.*, 734 F.2d

1200, 1213 (7th Cir. 1984)).  *See also In re Compass Dev.*, 55 B.R. 260, 262 (Bankr. D.N.J.

1985) ("§ 362[a] was not intended to act as a toll on leases, contracts, and the like, but only on

actual proceedings and similar acts against the debtor.").  Nor does it toll the running of a

conditional limitation that is triggered prior to the commencement of the bankruptcy case.  *In re*

*Policy Realty*, 242 B.R. at 127-28; *In re Musikahn Corp.*, 57 B.R. 938, 940 (Bankr. E.D.N.Y.

1986).  The Debtor does not dispute that § 16.2 of the Lease is a conditional limitation.

However, it contends that it is not enforceable in this bankruptcy case, since "enforcement of

[the] clause could lead to a lease forfeiture."  Debtor's Objection ¶ 66.  The Court finds no merit

to that assertion since, in making the argument, the Debtor is misplacing its reliance on *Queens*

*Blvd. Wine & Liquor Corp., v. Blum*, 503 F.2d 202 (2d Cir. 1974) and *In re M & M Transp. Co.*,

437 F. Supp. 821 (S.D.N.Y. 1997).  Both cases are decided under the Bankruptcy Act and

addressed conditional limitation clauses where the trigger is the lessee/debtor's filing of a

bankruptcy petition.  *See Blum*, 503 F.2d at 203 ("The bankruptcy clause, as amended, permitted

the landlord to terminate the lease within a reasonable period after institution of bankruptcy

proceedings by or against its tenant...."); *M&M Transp. Co.*, 437 F. Supp. at 821 (the

---

Lease § 16.2.

conditional limitation stated: "[i]n the event that . . . (c) Lessee [M & M] shall dissolve or become insolvent (however evidenced) or make a general assignment for the benefit of creditors, or any proceeding under any bankruptcy or insolvency statute or any laws relating to the relief of debtors be commenced . . . Lessor [Nelson] may, without notice or demand (i) immediately terminate this Lease and Lessee's rights hereunder. . . .").[20]  The invalidation of *ipso facto* clauses, like the ones at issue in those cases, has been codified in § 365(e) of the Bankruptcy Code.  Here, the Lease termination under §16.2 was not triggered by the commencement of this case.  It was triggered pre-petition by the Debtor's alleged failure to obtain insurance on the Premises as required under the Lease.  Defaults like that are beyond the scope of § 365(e).[21]

---

[20]     The Debtor also misplaces its reliance on *1633 Broadway Mars Rest. Corp. v. Paramount Grp., Inc. (In re 1633 Broadway Mars Rest. Corp.)*, 388 B.R. 490 (Bankr. S.D.N.Y. 2008).  In that case, the Debtor entered into a stipulation with its landlord in connection with the confirmation of its plan in the debtor's first chapter 11 bankruptcy case.  The stipulation contained a conditional limitation (which was incorporated into its lease by amendment) that required the debtor to install a cooling tower by December 31, 2007, the failure of which would result in the immediate termination of the Lease.  *See id.* at 494.  Three days before that deadline, the debtor commenced a second chapter 11 case, and concurrently moved to vacate the conditional limitation clause in the stipulation.  The landlord responded with a motion for relief from the stay, but both motions were denied.  Roughly two month later, the landlord filed a motion to dismiss the (second) chapter 11 case based on the debtor's bad faith, contending that the debtor had filed the second petition for the impermissible purpose of modifying its confirmed plan (i.e., the conditional limitation in the stipulation).  *See id.* at 497-99.  In denying dismissal, the bankruptcy court found that (i) the case did not evidence most of the usual indicia of bad faith under the *C-TC* factors, (ii) the conditional limitation was not an integral part of the debtor's first chapter 11 plan, (iii) equitable considerations of the facts and circumstances there (including the doctrine of good faith) supported denying dismissal, and (iv) if the case was sustained, the bankruptcy court could minimize harm to the landlord.  *See id.* at 498-505.  By focusing narrowly on the court's discussion of equitable considerations the Debtor ignores the fact that, unlike in *1633 Broadway*, virtually all of the *C-TC* factors are present here, demonstrating the existence of bad faith, as discussed below.  Moreover, in its consideration of the equities and parties' good faith, the bankruptcy court emphasized that the landlord in *1633 Broadway* had waited two months to file its motion to dismiss, during which time the debtor continued to expend sums towards constructing the cooling tower.  In contrast, such considerations are not relevant here in that there was no delay by the Landlord in making the Motion, and the Debtor has not expended any additional sums since the Petition Date in respect of the alleged insurance default.  The equitable considerations in *1633 Broadway* were unique to the specific facts of that case and do not apply to the Debtor's position here.

[21]     In any event, the Debtor denies that the Lease has been terminated and says that the Fourth Notice to Cure Default–Insurance is void and unenforceable because the First *Yellowstone* Injunction effectively enjoins the Landlord from taking any action to terminate the Lease, even for reasons unrelated to the Debtor's alleged failure to pay rent.  Debtor's Objection ¶ 60.  Next, it maintains that even if the default notice was not in violation of the First *Yellowstone* Injunction, the Lease cannot be terminated because (i) the insurance default was cured by obtaining retroactive coverage which the Landlord refused to accept; (ii) the Debtor has procured Workers' Compensation insurance and property insurance even though it should not be required to do so; and (iii) the Landlord sat on its rights relating to the insurance default.  *See* Objection ¶¶ 61-65.  It contends that "[t]here has been no determination

As noted, on August 9, 2017, the State Court denied the Debtor's request for the Second *Yellowstone* Injunction and on August 21, that court rejected its request to renew and/or reargue the denial of the injunction. Thus, on August 22, 2017, the cure period under the Fourth Notice to Cure–Insurance lapsed without the Debtor curing the default. The Landlord contends that because the Lease terminated by its terms, by application of § 541(b)(2), it is not "property of the estate," and pursuant to § 362(b)(10), the commencement of the case does not stay any act by the Landlord to obtain possession of the Premises. Motion ¶¶ 44-48.[22] To be sure, under New York state law, a lease may be terminated by operation of a conditional limitation. *In re Musikahn Corp.*, 57 B.R. 938, 940 (Bankr. E.D.N.Y. 1986). However, in arguing that such is the case here, the Landlord overlooks the fact that the Second *Yellowstone* Action is pending in the State Court, and that the State Court's denial of the request for the Second *Yellowstone* Injunction did not conclude that litigation. To obtain a *Yellowstone* injunction, the plaintiff must prove the following elements: (1) it holds a commercial lease; (2) it has received notice of default; (3) the application for a temporary restraining order was made and granted prior to the termination of the lease; and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises. *See, e.g.*, *Stuart v. D & D Assocs., Inc.*, 160 A.D.2d 547, 548, 554 N.Y.S.2d 197 (1st Dep't 1990). If a plaintiff is successful, the *Yellowstone* injunction will

---

on the merits upholding the existence of an uncured insurance default," and, as such, "that issue is alive and well for purposes of bankruptcy." Debtor's Objection ¶ 59. Those are the matters at issue in the Second *Yellowstone* Action and which the Debtor asks this Court to resolve in the Bankruptcy Complaint. Resolution of the merits of those matters is beyond the scope of the Motion.

[22]   Section 541(b)(2) of the Bankruptcy Code states: "Property of the estate does not include . . . any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case. . . ." 11 U.S.C. § 541(b)(2).

Section 362(b)(10) of the Bankruptcy Code provides that the filing of a petition does not stay "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the Lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10).

"maintain the *status quo* so that a commercial tenant, when confronted by a threat of termination

of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period

so that upon an adverse determination on the merits the tenant may cure the default and avoid a

forfeiture." *Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs.*, 93

N.Y.2d 508, 514 (1999).  In denying the Debtor's request for the Second *Yellowstone* Injunction,

the State Court was dismissive of the defenses asserted by the Debtor in the face of the alleged

defaults, and refused to toll the running of the conditional limitation.  However, as in any other

instance where a party is seeking a preliminary injunction under New York state law, the grant or

denial of a *Yellowstone* injunction, "does not constitute the law of the case, nor does it serve as

an adjudication of the merits of the underlying claim."  *In re Hotel Syracuse, Inc.*, 155 B.R. 824,

833 (Bankr. S.D.N.Y. 1993) (citing *Park East Apts., Inc. v. 233 East 86th Street Corp.*, 139

Misc.2d 806, 529 N.Y.S.2d 674, 676 (Sup. Ct. 1988), *aff'd*, 143 Misc.2d 60, 543 N.Y.S.2d 610

(1st Dep't 1989); *Ratner v. Fountain Clove Road Apts., Inc.,* 118 A.D.2d 843, 500 N.Y.S.2d 329,

330 (2d Dep't 1986)).  While the State Court's denial of the Debtor's request for the Second

*Yellowstone* Injunction means that the Debtor failed to maintain what was then the *status quo*

and thereby lost its right to cure the defaults alleged in the Fourth Notice to Cure Default–

Insurance, the matters at issue in the notice, and in the Second *Yellowstone* Action, have not been

rendered academic.  In that action, the Debtor is seeking a determination that it is not in default

under the Lease and that the Lease has not been terminated.  The State Court has yet to resolve

those matters.  *See, e.g., La Lanterna, Inc. v. Fareri Enterprises, Inc.*, 37 A.D.3d 420, 423-24

(App. Div. 2d Dep't 2007) (noting that tenant's failure to obtain a *Yellowstone* injunction means

that if it is determined that the tenant breached its lease, it will not have preserved any right to

cure the default, but that it does not render litigation on the substantive issues academic).  It is

24

not until these matters are resolved that it can be determined whether the Lease will be
terminated by its terms. *See First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr., Inc.*, 21
N.Y.2d, 630, 637, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968) ("Here, the lease had been
terminated in strict accordance with its terms. The tenant did not obtain a temporary restraining
order until after the landlord acted. . . . Once the Appellate Division determined that the tenant
had in fact defaulted by not installing the sprinkler system, the conclusion had to be drawn that
the lease was terminated in accordance with its terms.").[23] This Court "should reach the
conclusion that [the Debtor has] no demonstrable ability to reorganize only upon the strongest
evidentiary showing." *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R.
514, 520 (Bankr. S.D.N.Y. 1996). The Landlord has not made such a showing and likely will
not be able to do so until it is finally determined whether the Lease has been terminated. Thus,
as of the Petition Date, it was not "objectively futile" for the Debtor to initiate the reorganization
process.

"The subjective bad faith standard is meant to insure that the Debtor actually intends to
use chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to
its creditors by invoking the automatic stay." *In re RCM Global Long Term Capital
Appreciation Fund, LTD,* 200 B.R. at 522. "Debtors rarely admit to their own bad faith[,]" *In re
Reyes*, No. 14-13233, 2015 WL 4624156, at *5 (Bankr. S.D.N.Y. Aug. 4, 2015), and the Debtor
has not done so here. To the contrary, the Debtor insists that it filed this case in good faith. *See,
e.g.*, Debtor's Objection ¶ 3 (stating that case was commenced to "utilize the protections afforded

---

[23]    Even if the effect of the State Court's denial of the Debtor's request for the Second *Yellowstone* Injunction is
that the Lease terminated pursuant to the conditional limitations clause in the Lease, the Debtor nonetheless retains
an interest in the Lease. The State Court decisions are on appeal and if the Debtor is successful in its appeals, the
appellate court could "reinstate" the tenancy and the Lease. *See In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392,
398 (Bankr. S.D.N.Y. 2001).

to it under the Bankruptcy Code to maximize the value of the Lease for the benefit of the

Debtor's estate and its creditors."); ¶ 41 (contending that it filed the case "to preserve its valuable

Lease for the benefit of its estate and creditors."); ¶ 49 (noting that findings of "unclean hands"

and "gamesmanship" were in the context of the State Court litigation and not in this case); ¶¶ 39,

49, 58 (asserting that good faith in commencing this case is evidenced by the fact that, in contrast

to the First Bankruptcy Case, the Debtor has filed required statements and schedules and sought

to retain counsel).  In *C-TC*, the Second Circuit identified the following eight factors, or

"badges," (the "***C-TC* Factors**"), the presence of which would be indicative of subjective bad

faith:

(1)    The debtor has only one asset;
(2)    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
(3)    The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4)    The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
(5)    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
(6)    The debtor has little to no cash flow;
(7)    The debtor can't meet current expenses including the payment of personal property and real estate taxes; and
(8)    The debtor has no employees.

113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832

(W.D. Ky. 1992).  As a preliminary matter, the Debtor contends that the *C-TC* analysis is

irrelevant to this case because application of those factors is limited to single asset real estate

cases where the debtor has filed the bankruptcy petition to delay a secured creditor seeking to

foreclose on the real property.  There is no merit to that argument.  "[T]he principles articulated

by the Circuit [in *C-TC*] go substantially beyond cases filed merely to delay foreclosures."  *In re*

*Murray*, 543 B.R. 484, 491 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017).

Indeed, courts routinely apply the *C-TC* factors in considering the merits of motions to dismiss

cases, like this one, where the debtor's sole or principal asset is a lease and the landlord is

seeking to dismiss the case. *See, e.g.*, *In re Project Orange Assocs.*, 432 B.R. 89 (Bankr.

S.D.N.Y. 2010); *In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001).

In considering the application of the *C-TC* Factors in this case, the Court will not engage

in a "mechanical counting exercise," *see In re Century/ML Cable Venture*, 294 B.R. 9, 35

(Bankr. S.D.N.Y. 2003), and may consider "any or all" of them. *See In re Hampton Hotel*

*Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). It will not consider the factors in

isolation, since "a determination of bad faith requires a full examination of all the circumstances

of the case." *C-TC*, 113 F.3d at 1312. In the final analysis, the Court has broad discretion in

determining whether the Landlord has established bad faith. *See generally, Squires Motel, LLC*

*v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (stating "a dismissal for bad faith, which involves a

bankruptcy court's exercise of equitable discretion, is reviewed for abuse of discretion." (citing

*In re First Conn. Consulting Group, Inc.*, 254 Fed. Appx. 64, 68 (2d Cir. 2007))); *cf. In re*

*Hampton Hotel Inv'rs, L.P.*, 270 B.R. at 359 (noting that the decision to grant or deny a

dismissal or conversion under section 1112(b) is within the sound discretion of the bankruptcy

court) (citations omitted).

Under the circumstances of this case, application of nearly all the *C-TC* Factors, or a

reasonable modification thereof, proves that the Debtor filed this case in bad faith. To that end,

the Debtor acknowledges that the Lease is its sole asset, and that it is the subject of the two State

Court *Yellowstone* Actions, both of which are predicated on different alleged defaults under the

Lease. Although the Debtor has other creditors, its financial condition is, in essence, a two-party

dispute between the Debtor and the Landlord, which can be resolved in the pending State Court

Actions.  Moreover, the Debtor admits that it has not constructed the restaurant and that it has no

operations, cash flow or employees, and that it cannot meet its current expenses.  Finally, the

timing of the Debtor's bankruptcy filing, in light of the history of its litigation with the Landlord,

demonstrates that the Debtor's intent in commencing the case is to hinder, delay and frustrate the

Landlord's efforts to enforce its rights under the Lease.  The Debtor invoked this Court's

jurisdiction in the First Bankruptcy Case, quickly abandoned it when it no longer needed the

protection of the automatic stay of §362(a), and thereafter, invoked the State Court's jurisdiction

– for a second time – to resolve its new dispute with the Landlord.  The Debtor then filed this

case immediately following the State Court's denials of the Debtor's requests for a Second

*Yellowstone* Injunction, and on the eve of the termination date set forth in the Fourth Notice to

Cure Default–Insurance (i.e., August 22, 2017).  "[W]here, as here, the timing of the filing of a

Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the

filings was a litigation tactic, the petition may be dismissed as not being filed in good faith."  *In*

*re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988).  There are additional factors

evidencing the Debtor's bad faith in commencing this case.  First, the Debtor is a repeat filer

whose prior case bore all the characteristics of a bad faith filing.  *Cf. In re AMC Realty Corp.,*

270 B.R. 132 141 (Bankr. S.D.N.Y. 2001).  To be sure, "a bankruptcy filing intended in part to

gain relief from a state-court action does not necessarily constitute bad faith," but where, as here,

the Debtor has a single asset, and no going concern, "the bankruptcy filing may have as its only

purpose a hope to relitigate a state court action."  *Sonnax Indus., Inc. v. Tri Component Prods.*

*Corp., (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1287 (2d Cir. 199).  That is the case here.  It is

plain that in filing this case, the Debtor is "forum shopping" since in the Bankruptcy Complaint

it seeks to adjudicate substantially the same matters that are pending before the State Court.[24]

*See, e.g.*, *In re Briarpatch Film Corp.*, 281 B.R. 820, 833-34 (Bankr. S.D.N.Y. 2002) (dismissing

---

[24]    Even a cursory review of the Bankruptcy Complaint confirms that the Debtor is forum shopping, as the Debtor is seeking the same relief in the State Court *Yellowstone* Actions, based upon the same operative facts.  As noted, in the Bankruptcy Complaint, the Landlord seeks a declaratory judgment:

(i)      That the Lease was not terminated prior to the bankruptcy and remains property of the estate because the Landlord's termination based upon the alleged insurance default was invalid.  *See* Bankruptcy Complaint ¶¶ 55, 63.

The Debtor contends, as it did in the Second *Yellowstone* Verified Complaint, that it is entitled to that relief because it cured the insurance defaults by procuring the necessary insurance coverage retroactively and/or that such coverage was not required because the Debtor had no employees or operations.  *See, e.g.*, Second Verified Complaint ¶¶ 44-45 ("Since the Premises has not been built out yet in light of the Defendant's breach of the Lease and the parties' ongoing legal battles, [the Debtor] doesn't have employees.  Accordingly, there is no legal basis to force [the Debtor] to obtain either property insurance, as there is essentially nothing to insure against, or Workers' Compensation/Employers' Liability insurance, as there are no employees to cover.").  *Compare* Bankruptcy Complaint ¶ 50(b), (c) ("The Debtor is not yet operating a business in the Premises. Accordingly, there are no employees requiring Workers' Compensation/Employers' Liability insurance.  The Premises are still under construction and remain vacant. Accordingly, the Debtor has no property to insure.").

(ii)     The Commencement Date under the Lease should be re-established as of March 6, 2017.  *See* Bankruptcy Complaint ¶ 63.

To that end, the Debtor's contentions that the Commencement Date should be extended to the date that the allegedly unlawful second entranceway to the Premises had been approved by DOB, and that the Debtor had been misled by the Landlord as to the legality of the second "Door," are virtually identical to its contentions in the First Verified Complaint—*see, e.g.*, First Verified Complaint ¶ 16 ("[Landlord] further misled [Debtor] by asserting for months that it, in fact, did have proper DOB sign-offs regarding this door."); ¶ 39 ("[Landlord] failed to deliver the Premises to [Debtor] in 'legal' condition until March 6, 2017…"); ¶ 49 ("… [Debtor] is entitled to an extension of the Commencement Date.").  Compare Bankruptcy Complaint ¶ 36 ("Given the misrepresentation in the diagram, March 6, 2017 (the date the second door was certified), should be deemed the actual Commencement Date for purposes of the Lease."); ¶ 58 ("An actual controversy exists between the Debtor and the Landlord with regard to . . . the proper Lease Commencement Date thereunder.") ¶ 59 ("Given the Landlord's failure to legalize the second entrance door from Park Avenue South until March 7, 2017, the Commencement Date should be re-set as of this date . . . .").

(iii)    The Fixed Rent Commencement Date under the Lease should be re-established as January 2018, and that it is entitled to credits for rent already paid under the Lease.  *See* Bankruptcy Complaint ¶ 63.

This request for relief seeks the same relief, based upon the same claims set forth in the First Verified Complaint—namely, that the Landlord did not deliver legal possession of the Premises to the Debtor and thus, Debtor's obligation to pay rent did not begin.  *See, e.g.*, First Verified Complaint ¶ 25 ("Therefore, not only has [Debtor] been otherwise damaged by [Landlord's] delay in legalizing the door, as aforesaid, but [Debtor] is entitled to have the Commencement Date moved back, thereby providing an extended rent abatement period for [Debtor] for which it

case as bad faith filing where debtor had admitted fundamental purpose of filing was to re-litigate matters before state court and there was no other reason evident for the petition; appropriate remedy was to seek appeal in the state court); *In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010) ("Using a chapter 11 case as a platform to attack final orders of other courts constitutes Other Cause [under 11 U.S.C. § 1112(b)]."); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 850 (Bankr. S.D.N.Y. 1984) (dismissing petition filed contemporaneously with the state court entry of "judgments on [certain] ... promissory notes," as "debtor filed ... to avoid the consequences of adverse state court decisions while it continues litigating," and the "debtor is unable to propose a meaningful plan of reorganization until its litigation ... is resolved").  The facts here plainly support a finding that the Debtor filed this case in bad faith, and the Court so holds.[25]

Although the Landlord has established the Debtor's subjective bad faith in filing this chapter 11 case, as discussed above, the Landlord has not carried its burden of demonstrating that the Debtor's reorganization efforts would be objectively futile, and accordingly, the Landlord has not established "cause" under § 1112(b) to dismiss this case.  Thus, the Court will consider the Landlord's alternative request that it be granted relief from the automatic stay for

---

improperly was charged, and paid rent to [Landlord]).  *Compare* Bankruptcy Complaint ¶ 37 (". . . the Debtor should not be obligated to begin paying rent until 330 days thereafter, or January, 2018."); ¶ 59 (". . . the Commencement Date should be reset . . . with a corresponding extension of the Rent Payment Date and proper credits to the Debtor for all rents previously paid.").

[25]    The Debtor's principal contention regarding the application of the *C-TC* Factors in this case is that "[t]his is not a case where the Debtor has few creditors[,]" noting that "[t]he Debtor has approximately $7.4 million in liabilities spread across over approximately 20 creditors, consisting of loans made to the Debtor, contractors and other professionals."  Debtor's Objection ¶ 55.  The Court notes that the Debtor's largest unsecured creditor is also its largest equity holder.  Schulman holds a 95% equity interest in the Debtor and is listed as an unsecured creditor with a claim of $4.5 million.  There certainly may be reason to question the nature of that claim.  However, even assuming, *arguendo*, that the all of the claims are valid, application of that *C-TC* Factor does not alter the Court's conclusion that application of the *C-TC* Factors in the totality of the circumstances proves that the Debtor filed this case in bad faith.

cause, pursuant to §362(d)(1) of the Bankruptcy Code, to move forward in the *Yellowstone*

Actions.  *See* Motion ¶¶ 6, 35, 51.  The Landlord contends that the same bad faith which

constitutes "cause" for dismissal, and which this Court has found in this case, is also sufficient

"cause" for relief from the stay.  *Id.* ¶ 52.  The Court agrees.  It is well-settled that "the standards

for bad faith as evidence of cause, whether in the context of dismissal or relief from the stay are

not substantively different from each other."  *In re Project Orange Assocs., LLC*, 432 B.R. 89,

112-13 (Bankr. S.D.N.Y. 2010) (citing, *In re Éclair Bakery Ltd.*, 255 B.R. 121, 138 (Bankr.

S.D.N.Y. 2000) (internal quotation marks omitted)).  Thus, the Debtor's bad faith in filing this

chapter 11 case warrants granting the Landlord stay relief pursuant to §362(d)(1) of the

Bankruptcy Code to prosecute the *Yellowstone* Actions.  *See, e.g.*, *In re Eclair Bakery, Ltd.*, 255

B.R. at 140 (granting relief from the automatic stay due to debtor's bad faith in filing petition);

*In re 234-6 West 22nd Street*, 214 B.R. 751, 761 (Bankr. S.D.N.Y. 1997) (granting creditor relief

from the stay based upon finding of the debtor's bad faith filing).

Moreover, and in any event, the Landlord has demonstrated that application of the

twelve-factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax*

*Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), manifestly weighs in favor of granting the Landlord

relief from the stay.  In *Sonnax*, the Second Circuit enumerated the following factors (the

"*Sonnax* **Factors**") that courts should consider in determining whether to grant stay relief to

permit litigation to continue in another forum:

(1)    Whether relief would result in a partial or complete resolution of the issues;
(2)    The lack of any connection with or interference with the bankruptcy case;
(3)    Whether the other proceeding involves the debtor as a fiduciary;
(4)    Whether a specialized tribunal with the necessary expertise has been established
       to hear the cause of action;
(5)    Whether the debtor's insurer has assumed full responsibility for defending the
       action;

31

(6)    Whether the (non-bankruptcy) action primarily involves third parties;

(7)    Whether litigation in another forum would prejudice the interests of other creditors;

(8)    Whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    The interests of judicial economy and the expeditious and economical resolution of the (non-bankruptcy) litigation;

(11)    Whether the parties are ready for trial in the other proceedings; and

(12)    The impact of the stay on the parties and the balance of harms.

*Id.* at 1286 (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).  "The decision of whether to lift the stay is committed to the discretion of the bankruptcy judge."  *In re Syndicom*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001).  Not all of the *Sonnax* Factors will be relevant in every case and the Court need not accord equal weight to the relevant factors.  *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999).  *See also, In re AMR Corp.,* 730 F.3d 88, 112 (2d Cir. 2013) (holding that the bankruptcy court was within its discretion to deny claimant's motion to lift automatic say based upon evaluation of two relevant factors); *In re Worldcom, Inc*., 2007 WL 841948, at *5 (noting that "[a]ll twelve Sonnax Factors will not be relevant in every case, nor will a court accord equal weight to each element."); *In re Project Orange Assocs. LLC*, 432 B.R. at 104 (noting that "[a] court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight." (citing *In re Burger Boys*, 183 B.R. at 688)).

Application of the first *Sonnax* Factor weighs in favor of granting stay relief because allowing the *Yellowstone* Actions to reach their natural conclusions would resolve the issue of possession of the Premises.  In considering the second *Sonnax* Factor, courts frequently consider whether lifting the stay might invite similar motions from similarly situated creditors.  *See In re Northwest Airlines, Corp.,* No. 05-17930-ALG, 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar.

10, 2009) (describing concern that lifting the stay to allow antitrust action "would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11."). There is no threat of that here because as of the Petition Date, the *Yellowstone* Actions were just two (2) of the three (3) actions pending against the Debtor. Thus, application of the second *Sonnax* Factor weighs in favor of granting stay relief. So does application of the fourth and tenth *Sonnax* Factors. Although the State Court is not necessarily a "specialized tribunal" it has familiarity with the matters at issue in the *Yellowstone* Actions and, as such, judicial economy will be served by granting the Landlord stay relief. There is not dispute that the matters can be promptly resolved in the State Court and, as such, application of the eleventh *Sonnax* Factor favors granting stay relief. The Landlord is not seeking monetary damages in the *Yellowstone* Actions and, as such, a judgment in its favor would not be subject to equitable subordination. Nor would it give rise to a judicial lien on estate property. Accordingly, application of the eighth and ninth *Sonnax* Factors weigh in favor of granting the Landlord relief from the stay. Application of the twelfth *Sonnax* Factor likewise supports granting stay relief. The Debtor will not be adversely impacted if the *Yellowstone* Actions go forward since the matters at issue in the *Yellowstone* Actions must be resolved before the Debtor will be in a position to determine whether it has adopted a feasible restructuring plan, and in granting stay relief, they will be resolved in the court that is most familiar with the underlying issues. For that same reason, the Landlord will be prejudiced if it is not granted stay relief. The remaining *Sonnax* Factors are not applicable in this case. On balance, the Court finds that application of the relevant *Sonnax* Factors supports the Landlord's request for stay relief. For that additional reason, the Court finds that the Landlord has established cause under §362(d)(1) for the stay relief it has requested. In the Motion, the Landlord request that if the

33

Court granted stay relief, it also grant the Landlord relief from the 14-day stay of enforcement of a lift stay order provided for in Bankruptcy Rule 4001(a)(3).[26]  *See* Motion ¶ 57.  The Debtor did not object to that request and the Court grants it.

The Court finds no merit with the Landlord's contention that by application of § 362(b)(10) of the Bankruptcy Code, the automatic stay does not apply to the *Yellowstone* Actions because the Lease terminated when the 5 day period in the Notice of Termination lapsed.  *See* Motion ¶¶ 45-46.  As support for that contention, the Landlord cites *In re Realty Policy Corp.*, 242 B.R. 121, 126 (S.D.N.Y. 1999), *aff'd* 213 F.3d 626 (2d Cir. 2000).  In that case, the debtor ("**Policy**") was a subtenant under a lease.  Prepetition, the landlord terminated that lease for failure to pay rent and sent a termination notice to its tenant.  242 B.R. at 123-24.  In response, Policy, as subtenant, commenced an action by order to show cause in state court, seeking monetary damages and injunctive relief to prevent the landlord from terminating the lease.  It also sought a temporary restraining order ("**TRO**") pending a hearing on its motion.  *Id.* at 124.  The state court issued the TRO, scheduled a hearing on Policy's motion for September 16, 1998, and tolled the landlord's termination notice pending a hearing on the motion.  The landlord moved in the Appellate Division, First Department, to vacate the toll.  *Id.*  On September 3, 1998, the First Department granted the application to vacate the toll, unless Policy posted a $500,000 bond by September 9, 1998.  Policy was unable to post the bond and filed for

---

[26]    Bankruptcy Rule 4001(a)(3) states, as follows:

> An order granting a motion for relief from the automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise.*

Fed. R. Bankr. P. 4001(a)(3) (emphasis added).

bankruptcy on September 9, 1998, just before the TRO was scheduled to expire.  On September 16, 1998, Policy withdrew its motion for injunctive relief.  *Id.*

On September 23, 1998, the landlord moved the bankruptcy court by order to show cause for (i) a declaration that the automatic stay was inapplicable in respect to the landlord's actions under the lease; and (ii) alternatively, an order vacating the automatic stay to permit the landlord to take such action as it deemed necessary in respect of the lease.  *Id.*  The bankruptcy court denied the motion.  On appeal, the district court reversed, concluding that the automatic stay did not apply to the toll.  *Id*. at 127.  The court found that the state court's tolling of the termination notice was not a judicial action or proceeding covered by § 362(a), but rather was analogous to any other time limitation toll and was not stayed by the automatic stay.  The court also held that the exception to the automatic stay under § 362(b)(10) applied, because the termination notice sent by the landlord constituted an expiration of "the stated term of the lease."  *Id.* at 128.  The court reasoned that under New York law, a termination based on a conditional limitation satisfied § 362(b)(10), because "the lease is terminated when the time expires, rather than on any further act by the landlord."  *Id.*  The state court's TRO merely tolled the termination date, and did not in any way impact the landlord-tenant relationship.  The court therefore concluded that the sublease was not property of the estate under § 541(b) and was not subject to the automatic stay under § 362(a) and § 362(b)(10).  *Id.*

*Policy Realty* is distinguishable on a number of grounds and, as such, does not support the Landlord's contentions.  First, in *Policy Realty*, the debtor was not a party to the lease that the landlord was seeking to terminate.  Here, in contrast, the Debtor is a party to the Lease with the Landlord and is thus directly impacted by the Landlord's actions.  Second, Policy was not in possession of the premises as of the bankruptcy filing and thus, had no equitable possessory

35

interest in the premises. *Id.* at 129. Here, the Debtor remains in possession and control of the Premises pursuant to the Lease, but subject to the State Court Actions. Finally, in *Policy Realty*, the debtor abandoned its request for an injunction preventing the termination of the lease, and did not challenge the landlord's assertion that the lease had terminated based upon the tenant's rent default. Here, as previously noted, the validity of the Landlord's purported termination of the Lease is at issue in the Second *Yellowstone* Action.

The Court also finds no merit to the Landlord's assertion that, pursuant to § 362(n)(1)(B) of the Bankruptcy Code, the automatic stay does not apply in this case. That section provides, in substance, that the automatic stay under §362(a) does not apply in a case in which the debtor was a debtor in a small business case that was dismissed for any reason by an order that became final during the two-year period ending on the date of the order for relief entered in the subsequent case.[27] The Landlord contends that because the chapter 11 petition filed by the Debtor in the First Bankruptcy Case checked the box on the petition estimating its liabilities between $0 and $50,000 (and the lack of any other filing by the Debtor to contradict the petition), the Debtor was a "small business debtor" and its case was a "small business case," as defined in §101(51D) and § 101(51C), respectively. *See* Motion ¶ 49. The Landlord thus contends that because the Debtor has re-filed within two years of the dismissal of a case in which it was in a small business case, the automatic stay does not apply, and it is entitled to an order declaring that the automatic stay does not apply to prevent it from taking actions to recover possession of the Premises. *Id.* ¶ 50.

---

[27] Section 362(n)(1)(B) states, as follows:

Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor—
(B) was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition.

11 U.S.C. § 362(n)(1)(B)

In the First Bankruptcy Case, the Debtor did not file its bankruptcy schedules (listing it assets

and liabilities) and did not check the box on the petition as a small business debtor.  There was

no determination in the First Bankruptcy Case that the Debtor filed that case as a "small business

debtor."  Indeed, this Court (Vyskocil, J.) rejected this same argument in overruling the

Landlord's Limited Objection to the dismissal of the First Bankruptcy Case.  Finally, it is too late

for the Landlord to argue that the First Bankruptcy Case was a small business debtor case.  *See*

*In re Display Grp., Inc.*, No. 10-75502, 2010 WL 4777550, at *5 (Bankr. E.D.N.Y. Nov. 16,

2010) ("The Federal Bankruptcy Rules are clear that a debtor which possesses the financial

attributes that fall within those circumscribed by Section 101(51D)(A) for a small business

debtor and for which no committee is appointed, but does not designate itself as a small business

debtor, and is never designated as a small business debtor by the court, may proceed through the

case as a non-small business debtor. Rule 1020(b) establishes a specific deadline to object to

debtor designation or non-designation at 'no later than 30 days after the conclusion of the

meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to

the statement, whichever is later.' Absent timely objection, the case proceeds as a non-small

business debtor case.").

<u>CONCLUSION</u>

Based upon the foregoing, the Landlord's request to dismiss this case pursuant to

§1112(b) of the Bankruptcy Code is denied, but the Landlord is granted relief from the automatic

stay pursuant to § 362(d)(1) of the Bankruptcy Code to move forward in the *Yellowstone* Actions

through final judgments.  As to that relief, the Court waives the 14-day stay of this Order under

Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.  The Court denies the Landlord's

request for a declaration that pursuant to § 362(b)(10) and/or § 362(n)(1)(B) of the Bankruptcy

Code, the automatic stay does not apply to acts by the Landlord to recover possession of the Premises.  Lastly, the Court defers its consideration of the Landlord's request for the appointment of a chapter 11 trustee pursuant to § 1104(a) or § 1104(c) of the Bankruptcy Code, or the conversion of the case to one under chapter 7 of the Bankruptcy Code, pursuant to § 1112(b), pending an evidentiary on those matters.  Counsel are directed to contact Chambers to schedule a pre-hearing conference with the Court on those matters.

The Landlord is directed to settle an order consistent with the foregoing.


Dated:  November 3, 2017
        New York, New York


        /s/  James L. Garrity, Jr.
        Honorable James L. Garrity, Jr.
        United States Bankruptcy Judge