**Hearing Date: December 12, 2017 at 10:00 a.m.**

**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Chester B. Salomon
csalomon@beckerglynn.com
Alec P. Ostrow
aostrow@beckerglynn.com

*Attorneys for 387 Park South L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ARTISANAL 2015, LLC,<br><br>            Debtor. | Chapter 11<br><br>Case No. 17-12319 (JLG) |

**OBJECTION OF 387 PARK SOUTH L.L.C. TO DEBTOR'S MOTION
TO EXTEND TIME TO ASSUME OR REJECT NON-RESIDENTIAL
<u>REAL PROPERTY LEASE</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii
Introduction.................................................................................................................................... 1
General Factors in Considering Extensions of Time to Assume or Reject
    Leases................................................................................................................................. 4
The Canard About the Alleged Improper Door and the First *Yellowstone*
    Action................................................................................................................................. 7
Conclusion ................................................................................................................................... 13
List of Exhibits............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Albemarle Paper Co. v. Moody*,
 422 U.S. 405 (1975) ................................................................................................... 2

*Artisanal 2015 LLC v. 387 Park South L.L.C.*,
 No. 653238/2017 (N.Y. Sup. Ct. N.Y. Cty. Aug. 10, 2017) .......................................... 1

*Caldor Corp. v. S Plaza Assocs, L.P. (In re Caldor, Inc. – NY)*,
 217 B.R. 116 (Bankr. S.D.N.Y. 1988) ......................................................................... 5

*Cherno v. Dutch Am. Mercantile Corp.*,
 353 F.2d 147 (2d Cir. 1965) ........................................................................................ 3

*In re Artisanal 2015, LLC*,
 No. 17-12319 (JLG), 2017 WL 5125545 (Bankr. S.D.N.Y. Nov. 3, 2017) ............... 1, 6

*In re Eastman Kodak Co.*,
 479 B.R. 280 (Bankr. S.D.N.Y. 2012) ......................................................................... 3

*In re Shea & Gould*,
 214 B.R. 739 (Bankr. S.D.N.Y. 1997) ......................................................................... 3

*In re Wedtech Corp.*,
 72 B.R. 464 (Bankr. S.D.N.Y. 1987) ........................................................................... 4

*Ivani Contracting Corp. v. City of N.Y.*,
 103 F.3d 257 (2d Cir.), *cert. denied*, 520 U.S. 1211 (1997) ........................................ 3

*Local Loan Co. v. Hunt*,
 292 U.S. 234 (1934) ..................................................................................................... 3

*Motorola Credit Corp. v. Uzan*,
 561 F.3d 123 (2d Cir. 2009) ........................................................................................ 3

*Norwest Bank Worthington v. Ahlers*,
 485 U.S. 197 (1988) ..................................................................................................... 3

*Pepper v. Litton*,
 308 U.S. 295 (1939) ..................................................................................................... 3

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
 507 U.S. 380 (1992) ..................................................................................................... 2

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
 324 U.S. 806 (1945) ..................................................................................................... 3

*S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*,
 94 F.3d 755 (2d Cir. 1996) .................................................................................. 2, 4, 6

*Theatre Holding Corp. v. Mauro*,
 681 F.2d 102 (2d Cir. 1982) ........................................................................................ 4

**Statutes**

11 U.S.C. § 1121 ................................................................................................................. 6

11 U.S.C. § 365(d)(3) ................................................................................................. 4, 5, 13

11 U.S.C. § 365(d)(4) ....................................................................................................... 3, 4

The objection of 387 Park South L.L.C. ("387 Park South" or the "Landlord") to the motion of Artisanal 2015, LLC (the "Debtor") for entry of an order extending the Debtor's time to elect to assume or reject a non-residential real property lease and granting related relief (the "Extension Motion"), by the Landlord's attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, respectfully sets forth and represents the following:

## Introduction

1. The Debtor asks this Court to grant it a 90-day extension of time to assume or reject a lease with the Landlord. The Landlord acted to terminate the Lease in question prior to the filing of the bankruptcy petition, and the state court twice refused to stay such termination. Significantly, this Debtor, which has not paid any rent since the filing of the petition, does not propose to pay any rent for the additional period for which it seeks an extension.

2. This is the same Debtor that this Court has already found to have filed its chapter 11 petition with subjective bad faith, *see* Memorandum of Decision [ECF No. 47] at 30, *electronically reported at In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *11 (Bankr. S.D.N.Y. Nov. 3, 2017), and that Justice Shirley Werner Kornreich of the Supreme Court of the State of New York described as having "unclean hands" based on "repeated bad acts and gamesmanship," *see* Memorandum of Decision at 13, *In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *6 (quoting Amended Order, *Artisanal 2015 LLC v. 387 Park South L.L.C.*, No. 653238/2017 (N.Y. Sup. Ct. N.Y. Cty. Aug. 10, 2017)).

*338763v2*

1

3. Moreover, having first raised its argument for being excused from the obligation to pay rent – an allegedly illegal door installed by the Landlord – in January of 2017, the Debtor has done nothing to advance the merits of this argument either in state court or in this Court.[1] Instead, the Debtor has actively delayed the state court from reaching the merits by switching lawyers several times in state court (with accompanying requests to stay the state court actions), filing bankruptcy petitions (and voluntarily dismissing the first one), opposing the Landlord's stay relief motion, and having lost, preventing the state court from proceeding by removing the state court actions. In this Court, the Debtor filed an adversary proceeding raising the same issue, and used its existence as the centerpiece of its opposition to the Landlord's motion to dismiss the bankruptcy case or for stay relief, but has not otherwise moved for substantive relief. Indeed, now that the Debtor has removed the two state court actions, it has informed the Landlord that it intends to withdraw its existing adversary proceeding.

4. Requests for extensions of time to assume or reject leases are addressed to this Court's discretion. *S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 760-61 (2d Cir. 1996). Because court discretion is equitable in nature, *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416 (1975); equitable principles ought to apply to the exercise of such discretion. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1992) (in chapter 11 reorganizations, "the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of

---

[1] As is discussed below, Justice Kornreich rejected the Debtor's arguments concerning the door, and in her February 8, 2017 order, directed the Debtor to deposit with the court "alleged rent owed until January 1, 2017" and pay ongoing use and occupancy to the Landlord, as a condition for the grant of a *Yellowstone* injunction. Based on the Debtor's repeated failure to comply with this requirement, the Landlord has moved to vacate this injunction. The hearing on such motion was initially stayed by the filing of the Debtor's chapter 11 petition. After this Court lifted the automatic stay, the hearing has again been delayed in light of the Debtor's latest procedural maneuver, the removal of the two state court actions.

*338763v2*

2

affected parties"); *see Pepper v. Litton*, 308 U.S. 295, 304 (1939) ("courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity") (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934)).[2] In this case, the relevant equitable principles include:

- "[H]e who seeks equity must do equity." *Cherno v. Dutch Am. Mercantile Corp.*, 353 F.2d 147, 155 (2d Cir. 1965); *In re Eastman Kodak Co.*, 479 B.R. 280, 297 (Bankr. S.D.N.Y. 2012). Here, because the Debtor does not propose to pay rent, it seeks to impose a continued inequitable burden on the Landlord.

- "[H]e who comes into equity must come with clean hands." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127 (2d Cir. 2009) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). Here, Justice Kornreich has already found that the Debtor has unclean hands, and this Court has already found that it filed its chapter 11 case with subjective bad faith.

- "[E]quity aids the vigilant, not those who sleep on their rights." *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 260 (2d Cir.), *cert. denied*, 520 U.S. 1211 (1997); *In re Shea & Gould*, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997). Here, the Debtor, having alleged an entitlement to be excused from the obligation to pay rent in January 2017, has done

---

[2] Although the Supreme Court has more recently stated that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); in this case the Bankruptcy Code itself grants the bankruptcy court the equitable discretion at issue. 11 U.S.C. § 365(d)(4) states that the court "may" extend the time to assume or reject a lease, and that permissive term is a conferral of equitable discretion.

*338763v2*

3

nothing to advance the merits of its position in a way that would allow a court of competent jurisdiction to decide it.

5.      As a result, the Landlord respectfully requests that the Court deny the Debtor's motion for an extension of time, or alternatively, grant it on the conditions that the Debtor (i) pay all past-due and ongoing post-petition rent, and (ii) consent to the remand of the removed actions back to the state court.

### General Factors in Considering Extensions of Time to Assume or Reject Leases

6.      The Second Circuit in *Burger Boys* listed four principal non-exclusive factors for courts to consider in determining requests for extensions of time under 11 U.S.C. § 365(d)(4):

> (1) whether the debtor was "paying for the use of the property"; (2) whether "the debtor's continued occupation . . . could damage the lessor[] beyond the compensation available under the Bankruptcy Code; (3) whether the lease is the debtor's primary asset; and (4) whether the debtor has had sufficient time to formulate a plan of reorganization.

94 F.3d at 761 (quoting *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105-06 (2d Cir. 1982)).  The court added three other factors, which may be relevant in particular cases: "the complexity of the case facing the debtor, the number of leases that the debtor must evaluate, and 'the need for a judicial determination of whether a lease exists.' *Id.* (quoting *In re Wedtech Corp.*, 72 B.R. 464, 471 (Bankr. S.D.N.Y. 1987).  An evaluation of these factors militates against the granting of the Debtor's motion.

7.      First and foremost, the Debtor has not paid rent, and does not propose to pay rent.  The Bankruptcy Code mandates that post-petition rent be paid.  11 U.S.C. § 365(d)(3).  There is no basis to excuse compliance with this provision.  *See Caldor Corp.*

338763v2

4

*v. S Plaza Assocs, L.P. (In re Caldor, Inc. – NY)*, 217 B.R. 116, 120 (Bankr. S.D.N.Y. 1988).  The Landlord has not sought an order directing the payment of rent, because it believes such a request would be a waste of time, effort and money.  The Debtor has acknowledged that it has no funds; and the Court lacks the power to compel a loan to or a borrowing by the Debtor.  Nevertheless, the Debtor can be incentivized to borrow money, if such borrowing is necessary to obtain the extension of time that the Debtor seeks.  In any event, this factor supports denial of the Debtor's motion.

        8.      Second, the Debtor's continued occupation of the premises damages the Landlord beyond the compensation available under the Bankruptcy Code.  The Bankruptcy Code offers the Landlord an administrative claim under 11 U.S.C. § 365(d)(3), but this is cold comfort if the Debtor has no funds.  As set forth in the accompanying declaration of Denisse Recinos, the Landlord has a security deposit of $545,866.96, including interest through October 31, 2017.  The following chart shows the unpaid rent and late opening fees for the pre-petition period (through August 20, 2017), the first 120 days of the post-petition period (through December 19, 2017), and the next 90 days of the post-petition period (through March 19, 2018):

|  | Rent | Late Open Fee | Total |
|---|---|---|---|
| Pre-Petition Balance thru 8/20/17 | $80,870.51 | $26,300.00 | $107,170.51 |
| Post-Petition Balance thru 12/19/17 | $445,563.65 | $38,400.00 | $483,963.65 |
| Post-Petition Balance thru 3/19/2018 | $337,279.92 | $47,400.00 | $384,679.92 |
|  |  |  | $975,814.08 |

Consequently, the security deposit will barely cover the rent and late opening fees through the first 120 days, and definitely will not cover the additional period of the requested 90-day extension.  Moreover, this chart does not show either unpaid

*338763v2*

5

mechanic's liens or the substantial and accruing legal fees that are payable by the Debtor under the Lease. This factor supports the denial of the Debtor's motion.

9. The Debtor has certainly had sufficient time to formulate a plan of reorganization. Indeed, in its Memorandum of Decision at 19, this Court has already observed, the Debtor's stated "strategy in filing this case is that it will assume and assign the Lease (at a premium) and distribute the Lease assignment proceeds in payment of the claims of its creditors, pursuant to a chapter 11 plan that will call for the Debtor to open a new restaurant at a different location." *In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *9.[3] The Landlord further observes that as of the submission of this objection, the Debtor has not sought an extension of the 120-day period during which it has the exclusive right to file a chapter 11 plan under 11 U.S.C. § 1121. Consequently, this factor supports the denial of the Debtor's motion.

10. In addition, the Debtor's case is not complex – rather it is essentially a two-party dispute; Memorandum of Decision at 27-28; *In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *11; and the Debtor does not have multiple leases to evaluate. These factors support the denial of the Debtor's motion.

11. The Landlord concedes that the Lease (assuming it has not already been validly terminated) would constitute the primary asset, and that in light of the pending litigation over such termination, there is a need for a judicial determination "whether a lease exists." *See Burger Boys*, 94 F.3d at 761. Nevertheless, these factors alone do not justify the granting of the Debtor's motion, when all the other *Burger Boys* factors

---

[3] The Landlord observes that this strategy requires that the Lease be substantially below market, especially in light of the cure costs partially indicated by the above chart. The Debtor has put forward no evidence to support the contention that the Lease is substantially below market, and the Landlord believes that this contention is without basis in fact.

*338763v2*

6

support its denial. Moreover, the *Burger Boys* factors are non-exclusive, and when the equitable principles stated above are superimposed onto the decision, the requested extension must be denied. In particular, the Debtor has been found to have "unclean hands" as well as subjective bad faith, and has not been vigilant in prosecuting the merits of its claims to avoid the termination of the Lease or its alleged excuse for not having to pay rent. That excuse – the alleged improper door – is the subject of the discussion below.

**The Canard About the Alleged Improper Door and the First *Yellowstone* Action[4]**

12.     In the First *Yellowstone* Action, the Debtor raised the improper door issue at the outset. In his affidavit in support of the Debtor's proposed order to show cause for a *Yellowstone* injunction on January 6, 2017, Mr. Sarid Drory, the Debtor's managing partner, submitted the following testimony:

> 6.     Plaintiff does not believe that it is in violation of its lease in any way because, among other things, it has been prevented by defendant from completing its construction and operating its restaurant as a result of defendant's failure to comply with its obligations under the Lease and applicable law. In particular plaintiff is advised by its architect that one of the Building's two principal entranceways located on Park Avenue South (as depicted on <u>Exhibit C</u> to the Lease) does not appear on the New York City Department of Building's records. As a result, plaintiff's architect and designer have been precluded from finalizing plans and obtaining permits to complete its multi-million dollar construction and open for business.
>
> 7.     Since June 2016, I have inquired with defendant as to when it would legalize this critical means of

---

[4] The following discussion is repeated largely verbatim from the Landlord's reply in support of its motion to dismiss the bankruptcy case and for other relief, which was filed on October 2, 2017 [ECF No. 34]. The exhibits referred to and attached hereto have been previously authenticated in declarations accompanying such reply or the original motion filed on August 31, 2017 [ECF No. 9].

*338763v2*

7

>   ingress/egress without receiving a meaningful response. Instead, I was told that the defendant had the appropriate documentation and simply had to locate it.
>
>   8. Pursuant to the Lease, Tenant is entitled to a day-for-day rent abatement as it is unable to open for business (*see* Exhibit A at § 9.1).
>
>   9. Additionally, defendant has deprived plaintiff of approximately 1,300 square feet of space that was demised under the Lease. This constitutes an actual partial eviction of plaintiff from a portion of the premises and, thus, I am advised that no rent is due.

A copy of Mr. Drory's affidavit is annexed hereto as Exhibit A.

13. The answer to the Debtor's allegation regarding the deferral of rent is contained in the Lease and the Commencement Date Agreement, copies of which are annexed hereto respectively as Exhibits B and C. Section 1.5 of the Lease defines the "Commencement Date" as the "date upon which possession of the Premises is delivered to Tenant, with all of Landlord's Work (as defined herein)[5] Substantially Completed (as defined herein)[6] . . . ." The Commencement Date Agreement, entered into as of November 25, 2015, contains a statement in Recital B that the "Commencement Date has occurred," and specifically provides:

>   1. The Commencement Date is 12/01/2015.
>
>   2. The Fixed Rent Commencement Date is 10/26/2016.

---

[5] Section 1.11 of the Lease defines "Landlord's Work" as the "work to be performed by Landlord as described in Exhibit B to this Lease. Exhibit B to the Lease lists the "Landlord's Work" as:

>   Delivery of Premises in broom clean condition,
>   Install new floor to ceiling glass storefronts, and
>   Furnish an ACP-5 to Tenant.

[6] Section 2.7 contains the definition of "Substantially Completed" and provides that it "shall mean the date when Landlord's Work then remaining to be done, if any, consists of minor 'punch list items' and shall have reached that stage of completion such that Tenant could either use or occupy the Premises for the uses permitted hereunder without substantial interference by reason of those items still required to complete Landlord's Work."

*338763v2*

8

14. The issue of the supposedly improper door is the Debtor's attempt to get around the Commencement Date Agreement that it had signed. Notably, in raising the issue of the improper door, the Debtor's submissions in support of its motion for a *Yellowstone* injunction in the First *Yellowstone* Action did not include an affidavit from the Debtor's architect. The Landlord, by contrast, did submit an affidavit from its architect, Laurence G. Jones, R.A., contradicting the Debtor's allegations. A copy of the Mr. Jones's affidavit, sworn to on January 26, 2017, is annexed hereto as Exhibit D.

15. Justice Kornreich heard the motion for the *Yellowstone* injunction in the First *Yellowstone* Action on February 8, 2017. A copy of the transcript of this hearing is annexed hereto as Exhibit E. Regarding the allegedly improper door issue, Justice Kornreich had the following colloquy with Hal N. Beerman, Esq., of Greenberg Traurig LLP, the Debtor's first counsel, in the context of the Landlord's Work under the Lease:

> THE COURT: I see. Delivery of premises in broom-clean condition, install new floor-to-ceiling glass storefronts, and furnish an ACP-5, whatever that is.
>
> MR. BEERMAN: That's for asbestos, your Honor.
>
> But the key is the second one: Install floor-to-ceiling glass storefronts.
>
> THE COURT: But the landlord turned over the premises, and your client signed off on this. What date was that? October of - -
>
> MR. BEERMAN: Of 2015.
>
> THE COURT: October 26th of 2016?
>
> MR. BEERMAN: 2015.[7]
>
> THE COURT: Okay. Even better.

---

[7] As set forth above, the Commencement Date Agreement was entered into as of November (not October) 25, 2015.

*338763v2*

9

      MR. BEERMAN:  So prior to the time when the tenant was aware of the door issue.

      THE COURT:  How was he not aware?  Didn't he have an architect?

      MR. BEERMAN:  He did, but no one knew until June that this storefront was not legalized.  It was landlord's responsibility - -

      THE COURT:  Okay.  Let me hear - - wait a second.

      First of all, your application, it's your client's hearsay statement.  There is absolutely nothing from an architect submitted by you, but that's number one.

      Number two, even if I buy your argument - - which is hearsay because there is nothing from an architect, to show that this is the case, from you, but I'll look at the other architect's letter from the landlord, which seems to indicate, maybe there is a problem and they have now signed off, although that doesn't indicate that that stopped any other work from going forward, and your client has said he's only done $1.2 million of work, there should have been $3.5 million of work done so far, but your client, did your client in June send a written notice?

      MR. BEERMAN:  Your Honor, my client in November sent a notice.

      THE COURT:  Your client didn't send a notice for six months.

      MR. BEERMAN:  Your Honor, the landlord was telling our client that they have the signoffs, they're in the drawer.

      THE COURT:  Wait a second.  But your client never did anything for six months, for what I see here, perhaps he continued to do work on the premises.

      MR. BEERMAN:  To the extent he could, he continued to do work.

> THE COURT: But he never sent the required written notice. The contract is clear here.[8]
>
> MR. BEERMAN: Your Honor, the substantial completion of landlord's work is the landlord's responsibility. If that is not done, the Commencement Date does not exist.
>
> THE COURT: If it's not done, the lease requires written notice.
>
> First of all, there's no support from an architect for your claim, plus your client never gave written notice, plus your architect - - there are mechanic's liens, which I don't know if they've been - - that's not part of this case, but there is - - there are mechanic's liens against your client, as well.
>
> MR. BEERMAN: Your Honor, there are, and that explains why there's no architect's affidavit,[9] all while we are trying to resolve that dispute.
>
> THE COURT: But that doesn't mean you couldn't have gotten another architect to submit an affidavit.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit E) at 7-9.

---

[8] Among the provisions of the Lease requiring the Tenant to notify the Landlord, two provisions in Section 9.1 are quoted below:

- Tenant shall promptly deliver to Landlord a copy of any notice, communication or other materials relating to the Premises, the Real Property (including the Building systems), Tenant's Property, Tenant's Work and/or Hazardous Substances (hereinafter defined) received by Tenant from, or sent by Tenant to any Authority.

- If Tenant is unable to obtain any required permit or approval required by Laws in order to commence Tenant's Initial Work or is unable to open for business in the Premises solely as a result of the existence of any violation issued by any Authority against the Premises or any other portion of the Building and not caused by Tenant or required to be discharged by Tenant or any subtenant of Tenant or any of their respective agents, employees or contractors and not required to be discharged by Tenant pursuant to any other provision of this Lease, Tenant shall immediately notify Landlord of any delay in obtaining any such permit or approval or opening for business and Landlord, at its expense, shall use commercially reasonable efforts to cause any such violation to be promptly discharged or to otherwise enable Tenant to lawfully obtain such permit or approval or open for business.

[9] The Debtor's own architect, Joseph Kleinmann Architect, filed a mechanic's lien on January 17, 2017, which is the subject of the Landlord's Second Notice to Cure – Mechanic's Lien, dated January 25, 2017 (Exhibit J to the Motion).

*338763v2*

11

16. Following the argument of the Landlord's counsel, Justice Kornreich has the following additional colloquy with counsel for the Debtor:

> MR. BEERMAN: Your Honor, under 2.7, landlord's work has be delivered substantially complete. There was nothing that we had to notify the landlord about that didn't substantially complete its work. Annexed to landlord's papers - -
>
> THE COURT: But the lease specifically says that if you have a problem, you notify the landlord. And instead of notifying them that they didn't substantially complete the work, and you had an architect at that point; instead, you accepted substantial completion back in October of 2015. Then you claim you found out about a problem in June. The lease requires that as soon as you become aware of the problem, in two days you send written notice. You did not send any written notice. Then you stopped paying the rent, you send a notice in November which - - and there are already mechanic's liens, there are all kinds of issues here. I mean, all of this really militates against granting this Yellowstone.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit E) at 14-15.

17. The final colloquy with the Debtor's counsel leading to Justice Kornreich's ruling is set forth below:

> THE COURT: This is supposed to be a summary proceeding when a landlord - -
>
> You know, your client has been in these premises for over a year. The landlord granted a build-out period but the build-out period has passed. There is no rent being paid.
>
> MR. BEERMAN: Your Honor, the build-out period has been stymied by the fact that there is, quote, irregularity which the landlord recognizes as an illegal door. Therefore, we respectfully request that, if anything, grant the Yellowstone subject to a bond. We'll put up a bond. We are willing to do that.

*338763v2*

12

> THE COURT:  You know what?  You want me to grant the Yellowstone?  I'll grant the Yellowstone subject to the tenant paying past rent and ongoing rent pursuant to paying you U & O, without - - this is without prejudice to either side.
>
> I am granting the Yellowstone subject - - this like a bond to your client paying the $114,000, or whatever is owed in rent, and paying ongoing rent to the landlord.

Transcript of February 8, 2017 Hearing in First *Yellowstone* Action (Exhibit E) at 17-18.

18. Justice Kornreich's order, dated February 8, 2017, granting a *Yellowstone* injunction is annexed hereto as Exhibit F.  It required the Debtor to "pay into court the alleged rent owed until January 1, 2017, and to pay to landlord defendant January and February rent (u&o) pursuant to the lease, and continue to pay this u&o throughout this proceeding without prejudice to either side."

19. It must be observed that by filing this bankruptcy case, the Debtor has evaded the requirements of Justice Kornreich's *Yellowstone* injunction, namely the payment of use and occupancy.  Post-petition, the Debtor has compounded the evasion by noncompliance with the requirements of 11 U.S.C. § 365(d)(3).  The Debtor proposes to continue to avoid any financial responsibility by not paying any rent during its requested extension period.

## Conclusion

20. The Debtor seeks this Court's sanction of a payment-free option to pursue litigation with the Landlord over both the termination of the Lease and its excuse for not paying rent, while it pursues a fanciful strategy of marketing the Lease as supposedly below market, even though the Lease has huge and mounting cure costs.  This Court

*338763v2*

13

should not indulge such continued inequitable gamesmanship, and reject the Debtor's request.

WHEREFORE, for the foregoing reasons, the Landlord respectfully requests that the Court deny the Debtor's motion for an extension of time, or alternatively, grant it on the conditions that the Debtor (i) pay all past-due and ongoing post-petition rent, and (ii) consent to the remand of the removed actions back to the state court; and that this Court grant the Landlord such other and further relief as is just.

Dated: New York, New York
December 5, 2017

        BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP

        By: */s/ Alec P. Ostrow*
           Alec P. Ostrow
           aostrow@beckerglynn.com
           299 Park Avenue, 16th Floor
           New York, NY 10171
           Telephone: (212) 888-3033
           Facsimile: (212) 888-0255

        *Attorneys for 387 Park South L.L.C.*

## List of Exhibits

| | |
|---|---|
| Exhibit A | Affidavit of Sarid Drory, sworn to January 6, 2017, submitted in First *Yellowstone* Action |
| Exhibit B | Retail Lease (without exhibits), dated October 5, 2015, with the First Amendment to Retail Lease, dated September 9, 2016 |
| Exhibit C | Commencement Date Agreement, dated November 25, 2015 |
| Exhibit D | Laurence G. Jones, R.A. sworn to January 26, 2017, submitted in First *Yellowstone* Action |
| Exhibit E | Transcript of February 8, 2017 Hearing in First *Yellowstone* Action |
| Exhibit F | Order Granting *Yellowstone* Injunction and Directing Payment of Use and Occupancy, entered February 9, 2017, in the First *Yellowstone* Action |